## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated, | ) ) ) | **Civil Action No. 20-cv-1213DHU/KRS** |
| Plaintiff, | ) ) | |
| **v.** | ) | |
| **DIESTEL TURKEY RANCH,** | ) ) | |
| Defendant. | ) ) | |

## DIESTEL TURKEY RANCH'S OPPOSITION TO PLAINTIFF'S FIRST MOTION TO COMPEL

I.    INTRODUCTION ....................................................................**Error! Bookmark not defined.**

II.   STATEMENT OF FACTS .....................................................**Error! Bookmark not defined.**

   A.   Diestel's Responses to Written Discovery and Plaintiff's Motion. .. **Error! Bookmark not defined.**

   B.   Diestel's Amended Responses and the Parties' Negotiation of ESI Protocols........... **Error! Bookmark not defined.**

III.   LEGAL ARGUMENT ...................................................................................... 6

   A.   Standard on Motion to Compel. ........................................................................... 6

   B.   Diestel's General Objections. ..................................................**Error! Bookmark not defined.**

   C.   Special Interrogatories. ..........................................................**Error! Bookmark not defined.**

      1.   Objections to Special Interrogatory Nos. 2, 3, 5, and 8. ........... **Error! Bookmark not defined.**

      2.   Special Interrogatory No. 4. ........................................**Error! Bookmark not defined.**

      3.   Special Interrogatory No. 5. ........................................**Error! Bookmark not defined.**

      4.   Special Interrogatory No. 6. ........................................**Error! Bookmark not defined.**

      5.   Special Interrogatory No. 8. ........................................**Error! Bookmark not defined.**

   D.   Requests for Production. .........................................................**Error! Bookmark not defined.**

      1.   Diestel Does Not Need to Create a Log of Withheld Documents. .. **Error! Bookmark not defined.**

      2.   Request for Production No. 1. ......................................**Error! Bookmark not defined.**

      3.   Request for Production No. 4. ......................................**Error! Bookmark not defined.**

      4.   Requests for Production Nos. 5 and 6. ........................**Error! Bookmark not defined.**

      5.   Request for Production No. 9. ......................................**Error! Bookmark not defined.**

      6.   Request for Production Nos. 19, 20, and 21. ..............**Error! Bookmark not defined.**

      7.   Request for Production No. 22. ....................................**Error! Bookmark not defined.**

IV.   CONCLUSION..................................................................**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Davis v. St. Anselm Expl. Co.*
2011 WL 13143891 (D.N.M. Sept. 2, 2011)............................................................. 7

*Deakin v. Magellan Health, Inc.*
340 F.R.D. 424 (D.N.M. 2022) ............................................................................... 14

*Franklin v. Unit ed States*
2013 WL 11336864 (D.N.M. Aug. 28, 2013)........................................................... 16

*Gomez v. Martin Marietta Corp.*
50 F.3d 1511 (10th Cir. 1995)................................................................................... 6

*Kennicott v. Sandia Corp.*
327 F.R.D. 454 (D.N.M. 2018) ................................................................................. 6

*Landry v. Swire Oilfield Servs.*, L.L.C.
323 F.R.D. 360 (D.N.M. 2018) ................................................................................. 6

*Michael Kors, L.L.C. v. Su Yan Ye*
2019 WL 1517552 (S.D.N.Y. Apr. 8, 2019)............................................................ 14

*Ochoa v. Bd. of Commissioners of Luna Cnty.*
2010 WL 11619159 (D.N.M. Sept. 28, 2010)............................................................ 7

*Price v. Takata Corp.*
2008 WL 11319692 (D.N.M. May 29, 2008) ............................................................ 7

*Punt v. Kelly Services*
862 F.3d 1040 (10th Cir. 2017)............................................................................. 7, 15

*Rivera v. DJO*, LLC.
2012 WL 3860744 (D.N.M. August 27, 2012) .......................................................... 6

*S2 Automation LLC v. Micron Tech., Inc.*
2012 WL 3656454 (D.N.M. Aug. 9, 2012)............................................................... 16

*Saenz v. City of Lovington*
2022 WL 3212232 (D.N.M. Aug. 9, 2022)............................................................ 7, 15

### OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1) .......................................................................................... 6

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................ 16

Fed. R. Civ. P. 33(d) ............................................................................................ 10

Fed. R. Civ. P. 34(b)(1)(A) .................................................................................... 8

Fed. R. Civ. P. 34(b)(2)(C) .................................................................................. 13

Fed. R. Evid. 401 .................................................................................................. 6

## I.      INTRODUCTION

Plaintiff Cynthia Wetzel ("Plaintiff") ignored this Court's order to meet and confer and prematurely moves to compel further responses to Plaintiff's Requests for Production ("RFP") and Interrogatories ("Interrogatories"), Set One even though Defendant Diestel Turkey Ranch ("Diestel") has already provided responsive information in detail and produced almost 9,000 pages of responsive documents in its possession.[1]

Plaintiff's motion largely relies on conjecture and speculation to contend that Diestel has not fully responded to the RFPs and Interrogatories.  Plaintiff, however, fails to make any argument showing why Diestel's already substantial discovery responses and document productions are insufficient to provide Plaintiff with the relevant and responsive information needed to make her case at trial.

Given Diestel's extensive document production, detailed responses, and willingness to meet and confer to address Plaintiff's contentions at every turn, it is evident that Plaintiff's true motive here is to manufacture a dispute and burden this Court and Diestel with unnecessary motion practice.  For instance, Plaintiff moves to compel production of ESI documents, even though she only just provided Diestel with proposed ESI protocols and ESI search terms on August 17, 2022, more than a week after this motion was filed, and almost a month after Plaintiff promised to provide these materials to Diestel.  Plaintiff knows full well that Diestel has not produced any ESI documents due to *Plaintiff*'s inactivity.

Plaintiff's rush to the courthouse is further evident in the myriad erroneous contentions Plaintiff raises in its motion.  For instance, contrary to Plaintiff's assertion, Diestel's general objections are common practice in this district and properly asserted with respect to each individual discovery response.  Similarly, Diestel is not required to explain or summarize its

---

[1] The Parties have also entered into a Stipulation (ECF No. 56) that gives Plaintiff's counsel access to the more than 121,880 pages of documents that Diestel produced in the earlier California false advertising case entitled *Direct Action Everywhere SF Bay Area v. Diestel Turkey Ranch*, Alameda County Superior Court, Case No. RG17847475 (the "DxE Action").

production of documents and information that have been produced in the form are maintained in the regular course of business.  Nor is Diestel required to provide a document log showing every document it withheld from its production based on its objections thereto.  Instead, Diestel is simply required to explain the scope of objections and documents it is willing to produce.  It has done so here.

Diestel has worked at every turn to provide the information and documents Plaintiff has sought and respond to every request brought by Plaintiff during the parties' meet and confer.  Yet, Plaintiff has repeatedly failed to provide Diestel with sufficient detail as to what exactly its problems were with Diestel's discovery responses and document productions.  Instead, Plaintiff simply filed this motion.  After reviewing Plaintiff's motion arguments, Diestel produced over 300 pages of additional documents on August 19, 2022, which address all Plaintiff's legitimate contentions in the present motion.  Had Plaintiff simply met and conferred as she was ordered to, she could have obtained the same result.

## II.    STATEMENT OF FACTS

### A.    Diestel's Responses to Written Discovery and Plaintiff's Motion.

Plaintiff served RFPs and Interrogatories to Diestel on February 8, 2022.  Following several stipulated extensions of time to respond, Diestel served its responses on April 7, 2022.  Diestel did not produce any documents at that time because the parties were negotiating a stipulated protective order.  On April 28, 2022, the Court issued an order extending Plaintiff's deadline to move to compel on the RFPs and Interrogatories and providing that "Plaintiff's deadline to file a motion to compel is extended to 21 days after the parties hold a meet-and-confer session, which will take place within 30 days of when Defendant produces documents responsive to Plaintiff's first set of discovery."  ECF No. 47, pp. 1-2.

On June 22, 2022, Plaintiff's counsel emailed Diestel's counsel asking to meet and confer regarding Diestel's discovery responses and asking when Diestel would produce documents.  Declaration of Brian Blackman ("Blackman Decl."), ¶2.   On June 27, 2022, Diestel's counsel replied stating he was available to meet and confer but that "it would be more productive if you

put in writing the issues that Plaintiff has with our discovery responses so that we are prepared to address them during the call. Otherwise, I don't expect we would make much progress." *Id.* at ¶2, Ex. A [April 25, 2022 through June 28, 2022 email chain], at p. 1.  Plaintiff's counsel agreed and stated in a reply the next day that, "Prior to the call we will circulate a list of the specific discovery requests we want to discuss and the general reasons why." *Ibid.*

On July 6, 2022, Diestel produced 8,547 pages of documents in a USB thumb drive. The documents were organized into twelve different labeled folders, many with further subfolder structures, to assist Plaintiff in understanding the contents of Diestel's production.  Blackman Decl., ¶3.  Diestel named each document file, providing information regarding the document's contents, applicable date and author information where available. *Ibid.*  The production included various statements issued by Diestel on its website and other platforms (DTR 000001-32), promotional videos produced in native form (DRT 000033-39), label approval documents for the products at issue in this litigation (DTR 000040-479), various documents concerning legal and administrative issues (DTR 000480-625), summaries of relevant media activity and 51 press releases, many of which list the date and contact information for the applicable media contact responsible for issuing the release (DTR 000626-797), vendor supply agreements (DTR 000780-804), 66 emails sent to Diestel Turkey's website mailing list (DTR 000805-1054), copies of all point of sale materials, including brochures and flyers (DTR 001055-1257), press releases and other miscellaneous promotional materials (DTR 001259-1314), archived images of Diestel's website (DTR 001318-1404), USDA correspondence and related materials (DTR 001405-5900), various power point presentations (DTR 005902-6011), correspondence and documents regarding Diestel's live operations (DTR 006012-8512), and a collection of corporate documents (including corporate structure information, responsive New Mexico sales and distribution information) (DTR 008513-46). *Ibid.*

That same day, Plaintiff's counsel emailed Diestel listing agenda items for a meet and confer call. *Id.* ¶4, Ex. B [July 6, 2022 through August 3, 2022 email chain], p. 6.  Contrary to Plaintiff's prior representation, Plaintiff did not provide Diestel with an explanation as to why

any of Diestel's discovery requests were improper. *Ibid.* Instead, Plaintiff's counsel simply stated he wished to discuss "Interrogatory Responses Nos. 2-6, 8." *Ibid.* The Parties met and conferred the following day, July 7th, and Diestel's counsel explained to Plaintiff where Diestel's New Mexico sales reports were located in Diestel's production, identifying the documents by Bates number in a subsequent email dated July 8th. *Id.* at ¶4, Ex. C [July 8, 2022 email].

The parties met and conferred again on July 18th to discuss Diestel's responses to Plaintiff's document requests and its document production. *Id.* at ¶5, Ex. B, p. 2. Plaintiff, again, did not provide Diestel with any written summary or information as to her issues with its document responses or production. *Ibid.* During the call, Plaintiff's counsel raised only a few issues. *First*, they asked whether Diestel had a document retention policy and explained why such a policy might be relevant. Defense counsel agreed to check with Diestel's client representative, who was out of the country at the time, and to produce the company's policy if it has one. *Id.* at ¶5. Diestel does not have a company document retention and destruction policy and will serve a supplemental response confirming this fact. *Ibid.*

*Second*, Plaintiff inquired whether Diestel possessed any further documents responsive to RFP No. 5 (seeking labels and packaging information sold alongside the products at issue). *Id.* at ¶6. Diestel's counsel explained that Diestel also possessed "Sell Sheets," which are product information sheets provided to distributors and retailers for use in ordering and purchasing Diestel branded products, and that Diestel would produce them if Plaintiff wished. *Ibid.* Plaintiff did not follow up or request these sheets. *Ibid.* Regardless, after further discussion with Diestel, it turns out Diestel already produced the Sell Sheets for 2018 forward in the subfolders of its production folder entitled "Sales Marketing." *Ibid.* Plaintiff's counsel also already has copies of the pre-2018 Sell Sheets from the DxE Action. *Ibid.*

*Third*, Plaintiff asked Diestel to look into certain information she thought might be missing from some of the sales reports that Diestel produced. In particular, Plaintiff wanted Diestel to look into: (i) the existence of certain customer contact information missing from

4

Diestel's online sales report for the years 2016 to April 2019; and (ii) sales data for sales to Albert's in 2018. *Id.* at ¶7. Diestel was able to locate Albert's 2018 sales data from its archives and produced an updated sales data report (Bates numbered DTR 008586) on August 19th. *Ibid.* Diestel will update the customer information previously produced if any is located. *Ibid.*

*Lastly*, Plaintiff noted that Diestel responded to several document requests by agreeing to meet and confer over ESI protocols and search terms for use in searching custodian email files to locate relevant and responsive information. Plaintiff's counsel agreed to send Diestel draft ESI protocols and proposed search terms for use in locating ESI responsive to RFP Nos. 7, 8, 9, 11, 12, 13, and 18. Blackman Decl., ¶8. On August 17, 2022, almost a month later and more than a week after filing this motion, Plaintiff provided Diestel with draft ESI protocols and proposed search terms. *Ibid.* Diestel is reviewing Plaintiff's proposed protocols and search terms and will respond as soon as practicable. *Ibid.*

Despite Diestel's agreement to produce further documents, Plaintiff's failure to provide any written detail as to her issues regarding Diestel's discovery responses, and the Court's order requiring the parties to meet and confer prior to filing a motion, Plaintiff filed the present motion on August 8, 2022.

**B.     Diestel's Amended Responses and the Parties' Negotiation of ESI Protocols.**

Diestel is working on Supplemental Responses to Plaintiff's Interrogatories (the "Supplemental Interrogatory Responses") and RFPs (the "Supplemental RFP Responses"). *Id.* at ¶9. Diestel's Supplemental Interrogatory Responses will update its responses to Interrogatory Nos. 2, 3, 5 and 8 to provide the Bates Nos. of the documents identified in its responses. *Ibid.*

In addition, on August 19, 2022, Diestel served Plaintiff with a further production of documents consisting of updated sales data to Diestel's southwest distributor that includes 2018 (DTR 008548), additional product label approvals (DTR 008549-8598) and the contracts and documents related to various brand strategy projects (DTR 008599-8927). *Id.* at ¶10, Ex. D.

### III.        LEGAL ARGUMENT

**A.    Standard on Motion to Compel.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Discovery, however, must be proportional to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ibid.*  Under Federal Rule of Evidence Rule 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Although the scope of discovery is broad, "A district court is not, however, 'required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.' [Citations]'Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" *Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360, 375–76 (D.N.M. 2018), quoting *Rivera v. DJO*, LLC, No. 11-1119, 2012 WL 3860744, at *1 (D.N.M. August 27, 2012). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Id.* at 356*.,* quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)

The scope of discovery under Rule 26 has been successively paired back by amendments in 2000 and 2015.  *Landry*, 323 F.R.D. at 378–81.  The most recent 2015 amendment "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Ibid,* quoting Chief Justice John Roberts, 2015 Year–End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx (2015).

A party moving to compel further responses to written discovery bears the burden

establishing the requested materials are relevant.  *Kennicott v. Sandia Corp.*, No. CV 17-188 JB/GJF, 2018 WL 2206880, at *2 (D.N.M. May 14, 2018), aff'd, 327 F.R.D. 454 (D.N.M. 2018). Ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair."  *Saenz v. City of Lovington*, No. 2:21-CV-687 MIS/KRS, 2022 WL 3212232, at *2 (D.N.M. Aug. 9, 2022), quoting *Punt v. Kelly Services*, 862 F.3d 1040, 1047 (10th Cir. 2017).

      **B.**      **Diestel's General Objections.**

      Plaintiff claims that Diestel's general objections to the Interrogatories and RFPs are improper and must be stricken.  Diestel's general objections, however, are proper for several reasons.

      First, "a list of general objections, with specific references to those objections where relevant, is general practice in this district."  *Ochoa v. Bd. of Commissioners of Luna Cnty.*, No. CV 09-0612 MV/WPL, 2010 WL 11619159, at *2 (D.N.M. Sept. 28, 2010); *accord Davis v. St. Anselm Expl. Co.*, No. CV 10-00883 JEC/WPL, 2011 WL 13143891, at *3 (D.N.M. Sept. 2, 2011) ("I do, however, recognize that a list of general objections, with specific references to those objections where relevant, is general practice in this district.").  "In order to invoke general objections, the responding party must specifically reference them in an individual response."  *Ochoa*, 2010 WL 11619159, at *2; *accord Davis*, 2011 WL 13143891, at *3 (same).  Here, Diestel incorporates its general objections into each applicable response and these general objections are, therefore, proper.

      Second, although Plaintiff contends that Federal Rule of Civil Procedure Rules 33 and 34 require that a responding party specifically reply to each interrogatory or request for production, "Rules 33, 34 and 36 do not unambiguously require separate objections to each discovery request."  *Price v. Takata Corp.*, No. CV 07-0760 JCH/WPL, 2008 WL 11319692, at *1–2 (D.N.M. May 29, 2008) (allowing general objections).  Regardless, Diestel's general objections are specifically asserted with regards to each applicable response, and even under a strict reading

of Rule 34 and 33, these objections therefore form part of Diestel's specific reply to each RFP
and Interrogatory.

Plaintiff's argument against Diestel's general objections is wholly inconsistent.  Most of
Diestel's general objections are simply objections to Plaintiff's vague and overly broad defined
terms used in the Interrogatories and RFPs.  *See generally* ECF Nos. 51-2, 51-2.  Just as Diestel
lists its general objections before its response to each discovery request, so too does Plaintiff list
its definitions of each defined term before its specific discovery requests.  Diestel has the right to
respond in kind to these preliminary definitions by employing preliminary objections.  Further,
just as Plaintiff contends that general objections are improper because they are not specifically
authorized by Rules 33 and 34, so too could Diestel contend that Plaintiff's list of defined terms
is improper because such definitions are not specifically authorized by Rules 33 and 34.  Indeed
Rule 34 states that each request for production "must describe with reasonable particularity each
item or category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A).  By Plaintiff's logic, any
RFP that incorporates defined terms from elsewhere is improper.  These inconsistencies in
Plaintiff's analysis of Rules 33 and 34 demonstrate that Plaintiff's true purpose is simply to
manufacture disputes to burden Diestel and this Court with unnecessary motion practice.

## C.    Special Interrogatories.

### 1.    Objections to Special Interrogatory Nos. 2, 3, 5, and 8.

Plaintiff claims that Diestel's objections to Special Interrogatory Nos. 2, 3, 5, and 8 are
improper without reprinting these objections or explaining why any given objection is improper
other than insisting without explanation that there is nothing "vague and ambiguous" about these
Interrogatories.  Diestel, on the other hand provided detailed objections to each interrogatory
with a substantive response where possible.  ECF No. 51-1, pp. 7-10, 11-12, 14-15.  Diestel did
not simply object saying these interrogatories were vague and ambiguous.  *Ibid.*  Instead, Diestel
identified each word or phrase in the interrogatories that rendered them vague and ambiguous,
and attempted to explain why further explanation was needed.  *Ibid.*  For example, in response to
Interrogatory No.2, Diestel asserted the following objection:

> DTR objects to this Interrogatory on the grounds that its use of the term "derived" and the phrases "your unit sales" and "total revenue" render it vague and ambiguous. DTR generally sells its turkey products by pound or case, not individual product units, to distributors and retailers. DTR also sells individual retail products through its ecommerce website.

*See* ECF No. 51-1, p. 7.  This is a valid objection and necessary to understanding both why Plaintiff's question is flawed and why Diestel's response is proper. The mere fact that Plaintiff uses defined terms in the interrogatories does not render them any more of less ambiguous; it simply renders them more complicated.

Plaintiff also contends that Diestel acted improperly by responding to Interrogatory Nos. 2, 3, and 8 under Federal Rule of Civil Procedure 33(d)(1) by producing spread sheets showing distribution and sales information related to New Mexico because Diestel did not identify these documents by Bates number in its responses and these documents are hard to understand.  As to Plaintiff's first contention, Plaintiff fails to mention serve key points.  *First*, Diestel had not yet produced its documents when it served its Interrogatory Responses because the parties were still working out a Protective Order to limit the use and disclosure of this confidential financial and sales information.  Thus, Diestel did not have the particular Bates numbers of these documents at the time to include in its response.  *Second,* when Plaintiff requested the Bates numbers during the parties' meet and confer on July 7th, Diestel agreed to lookup those Bates numbers and provide them.  *Third,* as agreed, Diestel identified the Whole Foods Market sales reports and Diestel's online sales report by Bates number in an email to Plaintiff's counsel on July 8, 2022. *See* Blackman Decl., ¶4, Ex. C.  Had Plaintiff bothered to meet and confer as to this issue prior to running to the courthouse to file the present motion, Diestel would gladly have identified any other responsive reports by bates number.  Regardless, Diestel will supplement its written responses to identify the responsive documents by Bates number.  *Id.* at ¶9.

As to Plaintiff's second contention, the fact that the spread sheets are "pulled from different programs" and are allegedly "difficult to follow" is of no consequence.  Diestel produced the information within its possession in the form it is accessible and can be reproduced. For example, Diestel produced sales data by product name, price and units from the Whole

Foods Market vendor portal.  Diestel has no control over the type of information Whole Foods Market makes available to its vendors or the format of the resulting report.  The fact that these reports come from different programs is because they are maintained in different databases (*e.g.*, Whole Foods Market's vendor portal, Diestel's archived sales data and Diestel's ecommerce platform).  That fact does not preclude Diestel from invoking its right to answer an Interrogatory by producing the documents that contain the responsive information.

Federal Rule of Civil Procedure 33(d) explains that, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by" producing documents.  Diestel did just that and is not bound to abstract or summarize its business records.  If Plaintiff has specific questions about the documents, she can raise them in deposition.

### 2.  Special Interrogatory No. 4.

Special Interrogatory No. 4 asks Diestel to describe "in detail any market analysis, industry analysis, competitive analysis, reverse engineering, testing results, customer or third-party surveys and related survey results and analysis, usability studies, and focus group studies" "relating to" Diestel's turkey products sold in New Mexico.  The scope of this interrogatory is vast and unbridled.  It is not limited to studies related to customer perception, product labels, or animal welfare.  It is not limited by time.  It is not limited to studies specific to New Mexico consumers or sales.  Instead, it seeks every conceivable type of study that could possibly relate to any of Diestel's more than 300 products in any way.  This is the type of wide net cast in an improper fishing expedition.  The majority of such materials are irrelevant to Plaintiff's claims and defenses and the subject matter of this action.  Plaintiff claims that it is possible that some such materials bear on New Mexico consumers' perception of the contested statements on Diestel's product labels and advertising in New Mexico.  The mere possibility, however, that a relevant needle exists in this discovery haystack does not justify the disproportionate burden

imposed on Diestel.  Diestel has already replied that it has no relevant studies regarding New Mexico consumers and products.  Further, Diestel has not conducted any marketing, advertising or consumer analyzes, surveys or focus groups specific to individual DTR branded products, which is the subject matter of Plaintiff's Interrogatory.  Thus, its response is sufficient.

Diestel, however, has worked with professionals in the marketing and public relations space on developing and communicating its brand strategy.  This work focuses on the overall brand of the company and is not specific to individual products.  While this information is not directly responsive to Interrogatory No. 4, Diestel produced on August 19, 2022 over 320 pages (DTR 008599-8927) of documents related to various brand strategy and public relations agreements and projects.  Blackman Decl., ¶10.  These documents contain the information in Diestel's possession relating to its brand strategy.  Although Diestel does not believe this information is directly responsive to Interrogatory No. 4, which is product focused, Diestel will supplement its written response to summarize the companies with whom it worked and when. The documents, however, contain the information specific to each project.  *Id.* at ¶9.

### 3.   Special Interrogatory No. 5.

Special Interrogatory No. 5 asks that Diestel identify how, when, and where each advertisement for each of Diestel's turkey products was "disseminated," the number of advertisements, and the identity and contact information for the individuals who disseminated it. In response, Diestel identified each potential source of advertising which could have potentially been shown to New Mexico customers.

Plaintiff claims Diestel's response is incomplete because Diestel fails to disclose how many product brochures it provided to Whole Foods to display in its grocery stores in New Mexico, and where Diestel's press releases were issued and by whom.  However, all this information is requested pursuant to Plaintiff's overbroad definition of "BASIC DISSEMINATION DATA."  Diestel specifically objected to the definition of "BASIC DISSEMINATION DATA" on the grounds that it was overly broad, unduly burdensome, sought irrelevant information, and exceeds Rule 26's proportionality requirements.  ECF No. 51-1, at

p.4, ¶12.  Diestel stands on these objections.  Plaintiff cannot use a web of defined terms to render otherwise straightforward requests compound, and thus overly broad and disproportionate to the needs of the case.  The number of brochures and who sent them is irrelevant.  If Plaintiff wants to know whether Whole Foods Market displayed these brochures and where, it can (and, indeed, already has[2]) issue a third-party subpoena seeking this information.

Similarly, Diestel has produced all relevant press releases to Plaintiff, and the production itself includes ample information regarding what materials exist and when they were created and used.  Indeed, many of Diestel's marketing documents were either produced in folders that identified the year of their production and use, or included that information in their file name.  Diestel will supplement its document production with further documents showing the structure of the file folders containing Diestel's responsive advertising and marketing statements, which will provide additional information as to when some of these materials were created and used.  Blackman Decl., ¶11.  This is a proper and complete response to the relevant portions of Interrogatory No. 5.

### 4.    Special Interrogatory No. 6.

Special Interrogatory No. 6 seeks the location where Diestel's turkey products were sold in New Mexico during the class period.  Diestel explained in its objections that it ships its products to distributors and retailers' distribution centers.  Thus, it only has limited data as to which specific retail locations it can *confirm* its products are sold.  Diestel then provided what information it had, listing several Whole Foods Market stores where it could confirm its products were sold.  Plaintiff, however, speculates that Diestel's response is incomplete because Diestel's website identifies other locations in New Mexico where consumers can likely purchase Diestel products.  Diestel, however, does not have the ability to confirm that any products have been purchased at these locations during the class period.  Diestel will not provide a sworn interrogatory response based on conjecture as Plaintiff desires.  Diestel has produced all the sales

---

[2] See ECF No. 52.

information regarding New Mexico sales that it was provided by its distributors and retailers and no further responses is required.

### 5.     Special Interrogatory No. 8.

Special Interrogatory No. 8 seeks the date range during which Diestel sold each of its Turkey Products in New Mexico.  Diestel responded pursuant to Federal Rule of Civil Procedure 33(d)(1) by referring Plaintiff to the available sales data in its possession which showed Diestel's direct sales to New Mexico consumers and what products Diestel sold to distributors and retailers serving New Mexico and when.  As with Special Interrogatory No. 6, Plaintiff speculates that Diestel likely has some way to determine what stores sell its products.  Not so. Diestel has provided a sworn interrogatory response stating that it has provided all the responsive information available.  If Plaintiff wants to ask follow up questions regarding the sources of Diestel's knowledge, it can do so in deposition.

### D.     Requests for Production.

### 1.     Diestel Does Not Need to Create a Log of Withheld Documents.

Plaintiff claims that Diestel's responses to its RFPs are improper under Federal Rule of Civil Procedure Rule 34(b)(2)(C) because Diestel does not provide a detailed log stating what documents it withheld on the basis of its objections.  This argument fails for two reasons.

First, Rule 34(b)(2)(C) was not intended to require responding parties to create the detailed log that Plaintiff envisions.  This provision is intended to:

> [E]nd the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."

*Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 435 (D.N.M. 2022), quoting Fed. R. Civ. P.

34(b)(2)(C), Advisory Committee Notes, 2015 amendments.  "In other words, 'Rule

34[(b)(2)(C)] imposes the responsibility on a responding party to state what it is withholding or

describe the scope of the production it is willing to make[.]'"  *Id.* at 436, quoting *Michael Kors,*

*L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8,

2019).

      Diestel's objections both expressly state the scope of documents withheld where possible,

and describe the scope of documents that are being produced.  For example, Diestel's objections

to RFP No. 5 explain that:

> This Request is not tailored in any way to the claims alleged against
> DTR in this action. It is not tied to the product(s) Plaintiff purchased,
> products DTR sold or were available for purchase in New Mexico,
> nor marketing or advertising DTR undertook in New Mexico.
> Further, it is not limited to advertising materials actually used in
> commerce or consumer facing. DTR will limit its response to
> consumer facing labels, product packaging and advertisements
> targeted at New Mexico consumers.

ECF No. 51-2, p.10.  Diestel then goes on to explain exactly what documents it will produce in

response to the request.  Diestel took this approach to responding to Plaintiff's Requests for

Production wherever possible.

      Second, in many cases the approach described above was not possible because Diestel

was unable to identify responsive materials subject to objections where the scope of Plaintiff's

RFPs itself was in doubt due to Plaintiff's vague and overbroad requests.  For instance, RFP No.

9 seeks, "For [*sic*] DOCUMENTS CONCERNING the reasons for, plans, proposals, and

motivations for any change to the LABEL or ADVERTISING of any PRODUCT."  ECF No. 51-

2, p.14.  Not only does this RFP make no sense grammatically, but its use of the words

"concerning" and "motivations" render the RFP's scope vague and overbroad.  Since Diestel is

unsure what documents are responsive, it cannot explain what documents are withheld.  The

same situation applies with regards to all of Plaintiff's vague and overbroad RFPs.

### 2.    Request for Production No. 1.

Plaintiff has moved to compel further responses to RFP No. 1 even though before filing this motion Diestel agreed to produce a responsive document retention policy if one existed. Blackman Decl., ¶5.  Diestel has since confirmed that the company does not have a specific document retention and destruction policy and will provide an amended response to RFP No. 1 confirming this.  *Ibid.*  There is no need to move to compel, and Plaintiff's overeager desire to involve the Court in undisputed issues is emblematic of this entire motion.

### 3.    Request for Production No. 4.

In a feat of revisionist history, Plaintiff's motion contends RFP No. 4 only seeks documents related to advertising and marketing Diestel products at issue in this matter.  Yet, the scope of this RFP is *far broader*.  RFP No. 4 actually seeks documents sufficient to show each third-party with whom Diestel contracted for "services RELATING TO the MARKETING, ADVERTISING, manufacture, development, distribution, or sale of the TURKEY PRODUCTS."

As Diestel's objections explain, this RFP functionally seeks documents showing every third-party that Diestel has ever contracted with, for any reason, related to all products (not just those sold in New Mexico), during any time period.  Moreover, Diestel's initial document production clearly identified responsive documents related to public relations in an organized subfolder and produced documents therein which identify relevant third parties contracted to perform services related to marketing and advertising.  Blackman Decl., ¶3.  Plaintiff contends that Diestel must take this vastly overbroad document request at face value and list documents withheld on any ground.  Yet, ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Saenz*, 2022 WL 3212232, at *2 quoting *Punt*, 862 F.3d at 1047.  Diestel is not required to undertake the burden of listing all documents withheld to this overbroad request and doing so exceeds the proportionality requirements of Rule 26.

Diestel also supplemented its document production on August 19, 2022 with the contracts

that identify the third parties with whom it has worked in developing and communicating its brand strategy and public relations.  Blackman Decl., ¶10, Ex. D.  Diestel has, thus, responded in full to RFP No. 4.

### 4.     Requests for Production Nos. 5 and 6.

In response to RFP Nos. 5 and 6, Diestel produced all labels, advertisements, packaging, package inserts and brochures relating to the consumer facing labels, product packaging and advertisements targeting New Mexico consumers.

Plaintiff contends that Diestel is required to list every responsive document to RFP No. 5 that it withheld based on its objections.  As explained in Section 3(b)(1) of this memo, that is not the case.

In response to RFP Nos. 5 and 6, Diestel refused to produce imaged print outs of its current website, or materials linked therein, on the grounds that it was unduly burdensome to require Diestel to do so when this information was equally available to Plaintiff.  In fact, during the parties' July 18th meet and confer, Plaintiff's counsel expressly told defense counsel they did not need to produce screen shots of the current website since it was equally available to both parties.  Blackman Decl., ¶12.  Regardless, Plaintiff now cites to *S2 Automation LLC v. Micron Tech., Inc.*, No. 11-cv-0884-JB, 2012 WL 3656454, at *35–37 (D.N.M. Aug. 9, 2012) for the proposition that a party may never object on the grounds that responsive documents are equally available to the requesting party.

Plaintiff ignores the fact that a court may limit the extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…"  Fed. R. Civ. P. 26(b)(2)(C)(i).  Here, the fact that documents are equally available to Plaintiff justifies limiting discovery under Rule 26(b)(C)(i).  *Franklin v. Unit ed States*, No. 12-1167 KBM/LFG, 2013 WL 11336864, at *3 (D.N.M. Aug. 28, 2013) (relying on Rule 26(b)(2)(C)(i) to limit discovery based on responding party's "equally available" objection).

Further, *S2 Automation LLC* concedes that objections based on material being equally

available are viable upon a showing of good cause. *S2 Automation LLC*, 2012 WL 3656454, at

*37.  Here, creating and producing screen shots of the contents of Diestel's current website to

Plaintiff, and all embedded materials therein, would take hours of attorney time to carefully map

and image each web page (not to mention hyperlinked materials) then process for production.

Blackman Decl., ¶12.  This burden is unjustifiable considering Plaintiff can undertake this work

herself.

### 5.      Request for Production No. 9.

Yet again, Plaintiff moves to compel prematurely.  In Response to RFP No. 9, Diestel

agreed to produce documents, but stated that it needed to conduct a search of electronically

stored information ("ESI") to locate responsive material and that the parties would have to

negotiate ESI protocols so that Diestel could locate and produce responsive documents.  During

the July 18th meet and confer conference, Plaintiff agreed to provide Diestel with draft ESI

protocols for locating and producing the information she wanted.  Plaintiff, however, did not

send defense counsel a draft of her proposed protocols and ESI search terms until August 17,

2022 – more than a week after filing this motion.  Blackman Decl., ¶8.  Diestel is reviewing

these protocols and search terms and will conduct a search for responsive documents as soon as

the parties reach an agreement. *Ibid.*

### 6.      Request for Production Nos. 19, 20, and 21.

RFP Nos. 19 through 21 essentially seek every financial and accounting record relating to

any Diestel product sold in New Mexico or across the United States from 2017 forward,

including those summarizing the cost of Diestel's products and Diestel's profits, losses and

revenues.  Diestel objected to the overly broad and burdensome nature of these requests and the

fact that much of the sensitive financial information requested is irrelevant to class certification

and Plaintiff's claim of damage (i.e., the purchase price paid by consumers or that portion of the

purchase price attributable to the allegedly false or misleading representations). *See* ECF No. 1

[Complaint], ¶129.

These RFPs ignore the fact that, aside from its online ecommerce sales, Diestel does not sell direct to consumers.  It sells to distributors (none of whom are located in New Mexico) and tracks its sales by pounds.  Thus, Diestel's financial records will not show what New Mexico consumers were charged for the Diestel products they purchased.  Still, in an effort to comply with the relevant portions of these requests, Diestel produced its national wholesale sales data (Bates numbered DTR 008545) that is sortable by state, including New Mexico, for the period of 2016 to 2022.  Diestel also produced the following sales data:  1) the sales data accessible through Whole Foods Market's vendor portal showing sales to New Mexico consumers during the relevant period (DTR 008546); 2) sales data relating to sales to distributors whose distribution centers likely sell into New Mexico (DTR 008542, 008547 and 008548); and (3) the sales data covering Diestel's ecommerce sales direct to New Mexico consumers (DTR 008543).  Blackman Decl., ¶3.  Plaintiff makes no effort at explaining how or why the information and data contained in these reports does not satisfy the relevant portions of RFP Nos. 19-21.  Thus, it remained unclear exactly what Plaintiff contends is wrong with Diestel's production other than that Diestel does not provide a log showing documents withheld based on its objections.  However, as explained in Section 3(d)(1) of this motion, such a log is not required.

**7.      Request for Production No. 22.**

Request for Production No. 22 seeks sales information regarding Diestel's sales in New Mexico.  As discussed above, Diestel produced numerous spread sheets containing responsive information.  Blackman Decl., ¶3.

Plaintiff contends this production was flawed because the spreadsheet showing products sold to one of Diestel's distributors (Albert's), who may sell into New Mexico, did not contain sales data for 2018 or data showing the price per-pound of Diestel's products.  Diestel, however, supplemented its production to include the missing 2018 Albert's sales data (DTR 008548).[3] Blackman Decl., ¶10, Ex. D.  Further, Diestel will supplemental its sales reports to include

---

[3] This 2018 sales data was omitted because it had to be pulled from the archives.  Blackman Decl., ¶10.

pricing where it is available.  *Id.* at ¶10.  Diesel, however, tracks its sales by pounds.  Plaintiff's contentions are thus moot.

Finally, although Plaintiff contends that Diesel did not produce its contract with "its distributor," such a document is not responsive to RFP No. 22, and it is unclear which distributor Plaintiff is talking about.  Plaintiff also assumes that a single contract exists, as opposed to purchase orders or similar sales documents, which would likely occur weekly, and does not explain the relevance of this information to either class or merit issues.

### IV.    CONCLUSION

For the reasons stated herein, Diesel asks that this Court deny Plaintiff's motion to compel.

Dated:  August 22, 2022

BLAXTER | BLACKMAN LLP


*Brian R. Blackman*

BRIAN R. BLACKMAN
610 Montgomery Street, Suite 1110
San Francisco, California 94111
Tel: (415) 500-7704
Email:  bblackman@blaxterlaw.com

*Attorneys for Defendant Diesel Turkey Ranch*