# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**DIESTEL TURKEY RANCH,**<br><br>Defendant. | **Civil Action No. 20-cv-1213DHU/KRS** |

## DECLARATION OF BRIAN BLACKMAN IN SUPPORT DIESTEL TURKEY RANCH'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

I, Brian R. Blackman, declare:

1.     I am an attorney licensed to practice law in the State of California, have been admitted *pro hac vice* in the present matter and am a member of Blaxter | Blackman LLP, attorneys of record for defendant Diestel Turkey Ranch ("DRT") in this action. As to the facts set forth below, I know them to be true of my own personal knowledge. If sworn as a witness, I could and would testify competently to the truth of these matters.

2.     On June 22, 2022, Plaintiff's counsel emailed me asking to meet and confer regarding Diestel's written discovery responses and asking when Diestel would produce documents. A true copy of the email chain containing Plaintiff's June 22, 2022 email is attached as **Exhibit A**. On June 27, 2022, I replied stating I was available to meet and confer but that "it would be more productive if you put in writing the issues that Plaintiff has with our discovery responses so that we are prepared to address them during the call. Otherwise, I don't expect we would make much progress." Plaintiff's counsel agreed and stated in a reply the next day that, "Prior to the call we will circulate a list of the specific discovery requests we want to discuss and the general reasons why."

3.     On July 6, 2022, Diestel produced 8,547 pages of documents in a USB thumb drive. The documents were organized into twelve different labeled folders, many with further subfolder structures, to assist Plaintiff in understanding the contents of Diestel's production. Diestel named each document file, providing information regarding the document's contents, applicable date and author information where available. The production included various statements issued by Diestel on its website and other platforms (DTR 000001-32), promotional videos produced in native form (DRT 000033-39), label approval documents for the products at issue in this litigation (DTR 000040-479), various documents concerning legal and administrative issues (DTR 000480-625), summaries of relevant media activity and 51 press releases, many of which list the date and contact information for the applicable media contact responsible for issuing the release (DTR 000626-797), vendor supply agreements (DTR 000780-804), 66 emails sent to Diestel Turkey's website mailing list (DTR 000805-1054),

copies of all point of sale materials, including brochures and flyers (DTR 001055-1257), press releases and other miscellaneous promotional materials (DTR 001259-1314), archived images of Diestel's website (DTR 001318-1404), USDA correspondence and related materials (DTR 001405-5900), various power point presentations (DTR 005902-6011), correspondence and documents regarding Diestel's live operations (DTR 006012-8512), a collection of corporate documents (including corporate structure information) (DTR 008513-41), national wholesale sales data (Bates numbered DTR 008545), the sales data accessible through Whole Foods Market's vendor portal showing sales to New Mexico consumers during the relevant period (DTR 008546), sales data relating to sales to distributors whose distribution centers likely sell into New Mexico (DTR 008542, 008547 and 008548), and sales data covering Diestel's ecommerce sales direct to New Mexico consumers (DTR 008543).

4. On July 6th, Plaintiff's counsel emailed me listing agenda items for a meet and confer call the following day. A true copy of Plaintiff Plaintiff's July 6, 2022 email is contained in the email chain attached as **Exhibit B**. Contrary to Plaintiff's prior representation, Plaintiff did not provide Diestel with an explanation as to why any of Diestel's discovery requests were improper. Instead, Plaintiff's counsel simply stated he wished to discuss "Interrogatory Responses Nos. 2-6, 8." I met and conferred with Plaintiff's counsel on July 7, 2022, and explained where Diestel's New Mexico sales reports were located in Diestel's production, identifying the documents by Bates No. in a subsequent email dated July 8th. A true copy of my July 8, 2022 email to Plaintiff's counsel providing these Bates Nos. is attached as **Exhibit C**.

5. The parties met and conferred again on July 18th to discuss Diestel's responses to Plaintiff's document requests and its document production. Plaintiff, again, did not provide Diestel with any written summary or information as to her issues with its document responses or production. During the call, Plaintiff's counsel raised only a few issues. *First*, they asked whether Diestel had a document retention policy and explained why such a policy might be relevant. I agreed to check with Diestel's client representative, who was out of the country at the time, and to produce the company's policy if it has one. I am informed by Diestel's President

that it does not have a company document retention and destruction policy.  Diestel will serve a supplemental response confirming this fact.

6.      *Second*, Plaintiff inquired whether Diestel possessed any further documents responsive to RFP No. 5 (seeking labels and packaging information sold alongside the products at issue).  I explained that Diestel also possessed "Sell Sheets," which are product information sheets provided to distributors and retailers for use in ordering and purchasing Diestel branded products, and that Diestel would produce them if Plaintiff wished.  Plaintiff did not follow up or request these sheets.  Regardless, after further discuss with Diestel, I am informed that Diestel already produced the post 2018 Sell Sheets in the subfolder entitled "Flyers" which can be located within the subfolder entitled "Point of Sale" in the folder entitled "Sales Marketing." Diestel also separately produced the pre-2018 Sell Sheets as part of its document production in the action entitled *Direct Action Everywhere SF Bay Area v. Diestel Turkey Ranch*, California Superior Court, Alameda County, Case No. RG17847475 (the "DxE Action").  Plaintiff's counsel already has these documents because Plaintiff's counsel, Ms. Elsner, served as counsel for plaintiff Direct Action Everywhere SF Bay Area in the DxE Action.  Further, these Sell Sheets were not marked as "Confidential" so there was no restriction on their disclosure to all of Plaintiff's counsel in this action.  Regardless, the parties have entered into a Stipulation (ECF No. 56) that, among other things, confirms Plaintiff's access to the documents and that Diestel does not need to reproduce all of the documents it produced in the DxE Action.

7.      *Third*, Plaintiff asked Diestel to look into certain information she thought might be missing from some of the sales reports that Diestel produced.  In particular, Plaintiff wanted Diestel to look into: (i) the existence of certain customer contact information missing from Diestel's online sales report for the years 2016 to April 2019; and (ii) sales data for sales to Albert's in 2018.  Diestel was able to locate Albert's 2018 sales data from its archives and produced an updated sales data report (Bates numbered DTR 008586) on August 19th.  Diestel will update the customer information previously produced if any is located.

8.      *Lastly*, Plaintiff noted that Diestel responded to several document requests by

3

agreeing to meet and confer over ESI protocols and search terms for use in searching custodian email files to locate relevant and responsive information. Plaintiff's counsel agreed to send Diestel draft ESI protocols and proposed search terms for use in locating ESI responsive to RFP Nos. 7, 8, 9, 11, 12, 13, and 18. On August 17, 2022, almost a month later and more than a week after filing this motion, Plaintiff provided Diestel with draft ESI protocols and proposed search terms. Diestel is reviewing Plaintiff's proposed protocols and search terms and will respond as soon as practicable.

9. Diestel is working on Supplemental Responses to Plaintiff's Interrogatories (the "Supplemental Interrogatory Responses") and RFPs (the "Supplemental RFP Responses"). Diestel's Supplemental Interrogatory Responses will update its responses to Interrogatory Nos. 2, 3, 5 and 8 to provide the Bates Nos. of the documents identified in its responses. Diestel will also supplement its written response to Special Interrogatory No. 4 to summarize the companies with whom it worked and when. The documents, however, contain the information specific to each project.

10. In addition, on August 19, 2022, Diestel served Plaintiff with a further production of documents consisting of updated sales data to Diestel's southwest distributor that includes 2018 (DTR 008548), additional product label approvals (DTR 008549-8598) and the contracts and documents related to various brand strategy projects (DTR008599-8927). The 2018 sales data in DTR 008548 was omitted from the original production because it had to be pulled from archives. Diestel will supplemental its sales reports to include pricing where it is available. A true copy of the production letter accompanying the August 19, 2022 production as attached as **Exhibit D**.

11. Further, Diestel will supplement its document production with further documents showing the structure of the file folders containing Diestel's responsive advertising and marketing statements, which will provide additional information as to when some of these materials were created and used.

12. Producing the contents of Diestel's website to Plaintiff, and all embedded

materials therein, would take hours of attorney time to carefully map and image each web page (not to mention hyperlinked materials) then process a production.  Indeed, during the parties' July 18, 2022 meet and confer call, Plaintiff's counsel expressly told me Diestel did not need to produce screen shots of the current website.

    I declare under the penalty of perjury under the laws of the State of California that the above statements are true.  Executed this 22nd day of August 2022 in San Rafael, California.

                                                                    BRIAN R. BLACKMAN