**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated, | ) ) ) | **Civil Action No. 20-cv-1213DHU/KRS** |
| Plaintiff, | ) ) | |
| **v.** | ) ) | |
| **DIESTEL TURKEY RANCH,** | ) ) | |
| Defendant. | ) ) | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIESTEL**</u>
<u>**TURKEY RANCH'S MOTION TO COMPEL**</u>

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 2

   A.  Diestel's Requests for Production and Plaintiff's Responses. ....................... 2

      i.  The Parties' Meet and Confer and Plaintiff's Refusal to Provide Amended
Responses. ................................................................................................... 4

      ii.  Plaintiff's Admissions at Deposition and Diestel's Subsequent Meet and Confer. ......... 6

III. LEGAL ARGUMENT ....................................................................................... 8

   A.  Plaintiff Must Produce Correspondence Between Ms. Schimkat and Plaintiff. .............. 8

      i.  Plaintiff Waived Any Claim of Privilege by Failing to Assert it In Response to the
RFPs. ........................................................................................................... 9

      ii.  Plaintiff is Unable to Establish a Privilege Claim Over Her Correspondence with
Ms. Schimkat. ............................................................................................. 9

      iii.  The Attorney-Client Privilege Does Not Apply Because There is No Attorney-
Client Relationship. .................................................................................. 10

      iv.  Plaintiff Waived any Privilege Claim by Directly Relying on the Materials Provided
by Ms. Schimkat to Substantiate the Allegations in Her Complaint. ............... 11

      v.  Plaintiff Has Waived Her Claim by Failing to Provide a Privilege Log. ...................... 12

   B.  Plaintiff Must Identify What Documents Are Responsive to Each RFP. ..................... 12

      i.  Plaintiff Has Not Produced Documents as Maintained in the Regular Course of
Business. .................................................................................................... 13

      ii.  Plaintiff is Required to Identify the Documents that Respond to Each RFP. ............... 15

   C.  Plaintiff Must Provide Amended Responses Withdrawing Objections. ....................... 17

   D.  Plaintiff Must Provide Amended Responses Confirming That All Responsive
Documents Have Been Produced. ................................................................. 18

IV. CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Anaya v. CBS Broad., Inc.*
2007 WL 2219394 (D.N.M. Apr. 30, 2007) ............................................................ 10

*Anderson v. Chapman*
2009 WL 10696437 (D.N.M. Aug. 26, 2009) .......................................................... 17

*CooperVision Inc. v. Ciba Vision Corp.*
2007 WL 2264848 (E.D.Tex. Aug. 6, 2007) ............................................................ 13

*Deakin v. Magellan Health, Inc.*
340 F.R.D. 424 (D.N.M. 2022) ................................................................................ 17

*Duran v. Home Depot USA, Inc.*
2015 WL 13666480 (D.N.M. Mar. 12, 2015) .......................................................... 10

*Haughton v. D.C.*
161 F. Supp. 3d 100 (D.D.C. 2014) ......................................................................... 15

*In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*
2009 WL 152495 (M.D. Ga. Jan. 22, 2009) ....................................................... 12, 13

*JM through Foley v. New Mexico Dep't of Health*
2009 WL 10698414 (D.N.M. Aug. 20, 2009) .......................................................... 11

*Lucero v. Valdez*
240 F.R.D. 591 (D.N. M 2007) .................................................................................. 9

*Michael Kors, L.L.C. v. Su Yan Ye*
2019 WL 1517552 (S.D.N.Y. Apr. 8, 2019) ............................................................ 17

*Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*
270 F.R.D. 698 (S.D. Fla. 2010) ......................................................................... 13, 14

*Pass & Seymour, Inc. v. Hubbell Inc.*
255 F.R.D. 331 (N.D.N.Y. 2008) ............................................................................. 12

*Richmark Corp. v. Timber Falling Consultants*
959 F.2d 1468 (9th Cir. 1992) ................................................................................... 9

*Rikoon v. Silver*
2011 WL 13223901 (D.N.M. Aug. 8, 2011) .............................................................. 9

*Rivera v. Fast Eddies, Inc.*
2012 WL 12910618 (D.N.M. Aug. 29, 2012) ............................................................ 9

*Rothman v. Emory Univ.*
   123 F.3d 446 (7th Cir. 1997) ................................................................................. 15

*S.E.C. v. Collins & Aikman Corp.*
   256 F.R.D. 403 (S.D.N.Y. 2009) ...................................................................... 12, 13

*Strobel v. Rusch*
   2020 WL 8079786 (D.N.M. Jan. 23, 2020) ................................................. passim

*Super Film of Am., Inc. v. UCB Films, Inc.*
   219 F.R.D. 649 (D. Kan. 2004).............................................................................. 17

*T.N. Taube Corp. v. Marine Midland Mortg. Corp.*
   136 F.R.D. 449 (W.D.N.C. 1991) .......................................................................... 14

*Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.*
   2009 WL 1803216 (E.D. Mich. 2009).................................................................... 13

*Vazquez–Fernandez v. Cambridge College, Inc.*
   269 F.R.D. 150 (D.P.R. 2010) ............................................................................... 19

## STATE CASES

                                                                        **Page**

*Bhandari v. Artesia Gen. Hosp.*
   2014-NMCA-018 ................................................................................................... 10

*Gingrich v. Sandia Corp.*
   2007-NMCA-101 ................................................................................................... 11

*Pub. Serv. Co. of New Mexico v. Lyons*
   2000-NMCA-077 ................................................................................................... 11

*S.F. Pac. Gold Corp. v. United Nuclear Corp.*
   2007-NMCA-133 ................................................................................................... 10

## <u>OTHER AUTHORITIES</u>

**Page**

Fed. R. Civ. Proc. 26(b)(5) .................................................................................. 12

Fed. R. Civ. Proc. 34(b)(2)(B) ............................................................................. 18

Fed. R. Civ. Proc. 34(b)(2)(C) ............................................................................. 17

Fed. R. Civ. Proc. 34(b)(2)(E)(i) ..................................................................... 5, 12

Fed. R. Civ. Proc. 37(a)(3)(iv) ............................................................................... 8

Fed. R. Evid. 501 ................................................................................................... 9

N.M. R. Evid. Rule 11-503 .................................................................................. 10

N.M. R. Evid. Rule 11-511 .................................................................................. 11

## I.      INTRODUCTION

Plaintiff Cynthia Wetzel ("Plaintiff") has unilaterally withheld responsive documents from production (some under a waived and improper privilege claim), produced responsive documents mingled with non-responsive documents in a disorganized manner, and generally failed to provide code-compliant responses to discovery making it impossible for defendant Diestel Turkey Ranch ("Diestel") to determine whether the responsive documents Plaintiff agreed to produce have actually been produced or what, if anything, else may exist.  Diestel brings the present motion to compel further responses and production to its Requests for Production, Set One (the "RFPs") to remedy these deficiencies.

*First,* Plaintiff should be ordered to produce all email correspondence between herself and any third-party relating to her claims against Diestel, including her email communications with her friend Ms. Helga Schimkat that formed the foundation of her claims against Diestel. Plaintiff testified at deposition that it was the information and materials Ms. Schimkat provided to her via email that led Plaintiff to bring this lawsuit.  Plaintiff never identified these communications in her discovery responses and unilaterally withheld them from production. Diestel only learned of the documents during Plaintiff's deposition on September 13, 2022. Although Ms. Schimkat appears to be an attorney, Plaintiff admitted at her deposition that she is not represented, and never has been, by Ms. Schimkat.  Regardless, Plaintiff never objected to Diestel's RFPs on privilege grounds, never provide a privilege log, and has waived any privilege by directly relying on these documents to assert her claims.  Plaintiff refusal to produce these documents is wholly unjustified.  These communications and any others like them must be produced.

*Second,* Plaintiff should be ordered to serve amended responses to Diestel's RFPs stating under oath that all responsive documents within her possession, custody or control have been produced or whether such documents have been lost or never existed.  Plaintiff's current responses to Diestel's RFPs merely state "[r]esponsive documents will be produced" or "exemplars" of responsive documents will be produced.  Given Plaintiff's willingness to hide the

1

ball during discovery, these responses are deficient in several respects.  Plaintiff's responses do not:  1) agree to produce "all" responsive documents; 2) identify what responsive document(s) might exist and are being produced; nor 3) identify which documents (by Bates number or otherwise) are being produced in response to a particular request.  Plaintiff's vague and equivocal responses leave open the possibility that something is being withheld and deprive Diestel of the information necessary to figure that out.

*Third*, Plaintiff should be ordered to a serve amended responses that remove her boilerplate objections. These objections are not only unsubstantiated, but further obfuscate whether responsive materials exist or are being withheld.

*Finally,* Plaintiff is required to either produce documents as maintained in the usual course of business, or identify which document(s) is responsive to each RFP.  Plaintiff has done neither.  Instead, Plaintiff produced thousands of documents from a previous litigation that were organized by the previous case's production volume.  Common sense and case law show that these production volumes are not organized as maintained in the usual course of business, instead they are organized pursuant to the *ad hoc* manner of production in a previous case, involving different requests for production, different parties, and different issues.  Importantly, it is unclear whether many of these documents are responsive at all.  Diestel should not be forced to guess at which documents are actually at issue in this case, and Plaintiff must provide an index showing what documents in her sprawling disorganized production are responsive to each RFP.

## II.    STATEMENT OF FACTS

**A.    Diestel's Requests for Production and Plaintiff's Responses.**

On July 12, 2022, Diestel served its first set of RFPs on Plaintiff.  Declaration of Brian Blackman ("Blackman Decl."), ¶2, Ex. 1 [Requests for Production].  The RFPs contained a series of requests asking Plaintiff to produce and identify the documents at the heart of this litigation – e.g., copies of Diestel's statements which Plaintiff contends are misleading (*Id.* at Ex.

1, RFP Nos. 11-16)[1] and documents supporting Plaintiff's claims these statements are false or misleading. *Id.* at Ex. 1, RFP Nos. 5, 20-26, and 28-31.[2]

Plaintiff served responses to the RFPs on August 11, 2022. *See* Blackman Decl. at ¶3, Ex. 2 [Plaintiff's Responses]. Although Plaintiff agreed to produce documents in response to many of Diestel's RFPs, Plaintiff did not produce any documents on August 11, 2022. *Id.* at ¶3. In response to RFP Nos. 11-12, and 15-16, Plaintiff stated, "Responsive documents will be

---

[1] RFP No. 11 ("A copy of each of DEFENDANT's representations YOU contend are false or misleading."); RFP No. 12 ("A copy of each PRODUCT label YOU contend are false or misleading."); RFP No. 13 ("All website excerpts, statements or images RELATING TO the PRODUCTS and/or DEFENDANT that YOU contend are false or misleading."); RFP No. 14: ("All social media posts, statements or images RELATING TO the PRODUCTS and/or DEFENDANT that YOU contend are false or misleading."); RFP No. 15 ("All videos RELATING TO the PRODUCTS and/or DEFENDANT that you contend are false or misleading."); RFP No. 16 ("All flyers, brochures or other point of sale materials RELATING TO the PRODUCTS and/or DEFENDANT that YOU contend are false or misleading.")

[2] RFP Nos. 5 ("All non-privileged communications between YOU and any PERSON RELATING TO DEFENDANT or its PRODUCTS."); RFP No. 20 ("All DOCUMENTS RELATING TO any consumer expectations REGARDING DEFENDANT's PRODUCTS."); RFP No. 21 ("All DOCUMENTS RELATING TO YOUR contention that DEFENDANT representations indicate to consumers that its turkeys are not raised on typical factory farms."); RFP No. 22 ("All DOCUMENTS RELATING TO any investigation of DEFENDANT or any of its turkey raising operations."); RFP No. 23 ("All photographs, images and videos of DEFENDANT, its operations or any of its facilities."); RFP No. 24 ("All DOCUMENTS RELATING TO the animal welfare conditions at any of DEFENDANT's facilities."); RFP No. 25 ("All DOCUMENTS RELATING TO YOUR contention that DEFENDANT knew its marketing and/or advertising was false or misleading."); RFP No. 26 ("All DOCUMENTS RELATING TO YOUR contention that DEFENDANT knew its conduct RELATING TO the PRODUCTS was false or misleading."); RFP No. 28 ("All DOCUMENTS RELATING TO YOUR contention, as set forth in paragraphs 3-4 of YOUR Complaint, that DEFENDANT raises a large portion of its turkeys in a manner that fails to meet even the lowest tier of the Global Animal Partnership's ("GAP") certification standards."); RFP No. 29 ("All DOCUMENTS RELATING TO YOUR contention, as set forth in Paragraph 4 of YOUR Complaint, that DEFENDANT's turkeys are raised in large, overcrowded metal sheds that lack sufficient space to engage in natural behaviors and are often mired in manure and slaughterhouse waste."); RFP No. 30 ("All DOCUMENTS RELATING TO YOUR contention, as set forth in paragraph 22 of YOUR Complaint, that DEFENDANT's turkeys are raised under typical factory farm conditions."); RFP No. 31 ("All DOCUMENTS RELATING TO YOUR contention, as set forth in paragraph 46 of YOUR Complaint, that DEFENDANT's turkeys are "rarely, if ever, allowed outside the agro-industrial barns where they spend their lives.").

produced." *Id.* at Ex. 2, RFP Nos. 11-12, 15-16.  In response to RFP Nos. 13-14, Plaintiff

objected "that 'all' social media posts, statements or images is overly broad, unduly burdensome

and duplicative. Exemplars of responsive documents will be produced." *Id.* at Ex. 2, RFP Nos.

13-14.  In response to RFP Nos. 20-24, Plaintiff provided the following response: "Plaintiff

objects that "all" documents relating to any consumer expectations regarding defendant's

products is overly broad, unduly burdensome and not proportional to the needs of the case.

Subject to and without waiving the objection, Plaintiff will produce non-privileged responsive

documents." *Id.* at Ex. 2, RFP Nos. 20-24.  Plaintiff never produced a privilege log. *Id.* at ¶3.

**i.      The Parties' Meet and Confer and Plaintiff's Refusal to Provide Amended Responses.**

On August 23, 2022, Diestel sent a meet and confer letter to Plaintiff's counsel asking

when Plaintiff intended to produce responsive documents, asking Plaintiff to withdraw her

boilerplate objections to RFP Nos. 20-24, state that all responsive documents have been

produced, and demanding that Plaintiff produce all documents responsive to RFP Nos. 13 and 14

– not just "exemplars" as indicated by Plaintiff's responses. *Id.* ¶4, Ex. 3 [August 23, 2022 Meet

and Confer Letter].

On August 25, 2022, Plaintiff's counsel responded, stating that the documents Plaintiff

intended to produce in this action in response to RFP Nos. 1. 7-9, 11-18, and 20-33 were

produced by the plaintiff in a separate action to which Diestel was a party: *Direct Action

Everywhere SF Bay Area v. Diestel Turkey Ranch,* Superior Court of California for the County

of Alameda, Case No. RG17847475 (the "DxE Materials"). *Id.* at ¶5, Ex. 4 [Parties' Meet and

Confer Email Chain], at p.16.  Since Diestel's counsel still has access to the DxE Materials from

the previous case, Plaintiff suggested that the parties enter into a stipulation allowing the parties

to use the DxE Materials in this case and offered to meet and confer regarding the remaining

issues in Diestel's August 23rd letter in the coming days. *Ibid.*

The parties met and conferred by telephone on August 31, 2022, and Diestel's counsel

sent a follow-up email that same day confirming that "all responsive documents [Plaintiff] intend

to produce [in response to RFP Nos. 13-14] are in the DxE production.  And that, while [Plaintiff] cannot confirm this production contains an exhaustive list of every time one of the six challenged statements in the Complaint was used on the website or in social media, Plaintiff is aware of no statements on Diestel's website or social media that are false or misleading other than the six challenged statements in the Complaint."  *Id.* at ¶6, Ex. 4., at p.13.

On September 6, 2022, Plaintiff's counsel produced five pages of documents related to Plaintiff's purchases of Diestel products, and sent an email disputing whether she said during the meet and confer call that "Plaintiff is aware of no statements on Diestel's website or social media that are false or misleading other than the six challenged statements in the Complaint" as Diestel's counsel had summarized in the previous email.  *Id.* at ¶7, Ex. 4, pp.11-12.

Diestel's counsel responded in an email on September 7, 2022 stating, "If Plaintiff is aware of statements she claims are misleading, other than the 6 challenged statements, then they need to be identified and produced."  *Id.* at ¶8, Ex. 4, pp.10-11.  Diestel's counsel also inquired when Plaintiff intended to provide supplemental responses to RFP Nos. 13-14 and 20-24.  *Ibid.*

On September 8, 2022, Diestel's counsel wrote again to Plaintiff, provided a revised stipulation and explained that:

> after reviewing the documents from the DxE production and the five documents Plaintiff produced herself, we did not find any documents responsive to several of the requests to which Plaintiff responded that she would produce responsive documents.
>
> First, it is unclear what documents in the DxE production Plaintiff identifies as responsive to RFP Nos. 11-16 (generally seeking copies of products, statements, videos, website and social medial statements, labels, and brochures that Plaintiff contends are misleading).  Plaintiff has a duty to identify what documents in her production are responsive to these RFPs. See Fed. R. Civ. Proc. R. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request").

*Id.* at ¶9, Ex. 4, p.9.  Diestel's counsel also explained that the DxE materials contained no documents responsive to RFP No. 20 ("All DOCUMENTS RELATING TO any consumer expectations REGARDING DEFENDANT's PRODUCTS"), but that Diestel was aware that

Plaintiff's counsel possessed written materials from the DxE action that were likely responsive – e.g., a report written by Dr. Sanjay Hukku related to consumer perception of Diestel's marketing. *Ibid.* Diestel's counsel asked that Dr. Hukku's materials be produced in this case. *Ibid.* [3]

Plaintiff wrote back that same day, refusing to list by Bates number the DxE Materials that would be covered by the proposed stipulation. *Id.* at ¶10, Ex. 4, at p.8. Plaintiff did offer to either produce Dr. Hukku's report in response to RFP No. 20 or address it in the stipulation. *Ibid.* Plaintiff, however, did not address Diestel's request that Plaintiff identify the documents responsive to RFP Nos. 11-16. *Ibid.*

Diestel's counsel responded on September 9, 2022, and once again explained that Diestel needed Plaintiff to identify which DxE Materials were being produced in the present action (since Plaintiff indicated some were not being produced), but also explaining "Plaintiff does not necessarily need to list responsive documents [to RFP Nos. 11-16 and 20] in the Stipulation. Plaintiff can either identify the documents by Bates Number in an Amended Response or some other signed writing to satisfy her obligation under Fed. R. Civ. Proc. R. 34(b)(2)(E)(i). One way or another, Plaintiff has an obligation to identify such documents, and doing so will save the parties from wasting time at Plaintiff's deposition next week." *Id.* at ¶11, Ex. 4, p.7.

Plaintiff responded that same day and identified documents DxE 2-8293 as the DxE Materials, insisting an email (as opposed to in the stipulation itself) was sufficient. *Id.* at ¶12, Ex. 4, pp.6-7. Plaintiff did not address Diestel's request for her to identify responsive documents to RFP Nos. 11-16 and 20. *Ibid.*

### ii.     Plaintiff's Admissions at Deposition and Diestel's Subsequent Meet and Confer.

Diestel took Plaintiff's deposition on September 13, 2022. Blackman Decl., ¶13. During Plaintiff's deposition, Plaintiff admitted that her belief that Diestel is operating typical argo-

---

[3] Diestel's counsel also confirmed that "Per our meet and confer last week, the parties agree that Diestel's 21-day motion to compel deadline under Local Rule 26.6 will run from execution of this stipulation because that is the date that Plaintiff will "produce" responsive documents." *Id.* at ¶9, at Ex. 4, p.9.

industrial or factory farms and raising its turkeys in cramped metal sheds is entirely based on information (videos, reports and news articles) she received from her friend, Ms. Schimkat, who she believes is a member of DxE. *Ibid.* Plaintiff also testified that, although Ms. Schimkat was an attorney, she never retained her to provide legal advice in this matter and is not represented by her. *Ibid.* Plaintiff also testified that she has never reviewed Diestel's websites, press releases, blogs, social media posts, flyers or videos and therefore cannot identify what, if anything, she alleges is misleading in that marketing. *Ibid.* This testimony compounds the need for Plaintiff to produce or specifically identify each item of Diestel's marketing she contends is false or misleading.

On September 15, 2022, Diestel's counsel wrote to Plaintiff, again providing a revised stipulation, explaining that Diestel would move to compel the week of September 19th if the parties could not resolve their disputes on the following issues: (1) production of Plaintiff's correspondence with Helga Schimkat, for which privilege was waived; (2) Plaintiff's obligation to identify which documents in production are responsive to each RFP and though Diestel "previously only pressed for Plaintiff to do so with regards to RFP Nos. 11-16 and 20, Plaintiff's deposition testimony identifying responsive but undisclosed documents withheld from production leads Diestel to the conclusion that Plaintiff must comply with her obligations to identify responsive documents to each RFP"; (3) Plaintiff's duty to "provide amended responses to RFP Nos. 13-14 and 20-24 withdrawing objections and stating that all responsive documents in Plaintiff's possession custody or control have been produced"; and (4) that Plaintiff's duty to "produce the Huku report, and any other materials responsive to RFP No. 20, by Bates No. in this case." *Id.* at ¶14, Ex. 4, pp.4-5.

Plaintiff's counsel replied on September 20, 2022 but did not address the issue points raised in Diestel's email. *Id.* at ¶15, Ex. 4, pp.3-4. Instead, Plaintiff's counsel simply asserted that "Ms. Schimkat is an attorney who has worked with my firm. That has been known to Diestel since at least early 2000." *Ibid.* Plaintiff's also informed Diestel that she would not stipulate to use the DxE Materials and instead produced thousands of documents *en mass* to Diestel in files

that were not organized by RFP request, or production category, but were instead organized in the six volumes they were produced in the DxE matter. *Ibid*. The responsiveness of many of these documents is unclear. *Ibid.*

That same day, Diestel's counsel wrote back informing Plaintiff that her privilege claim as to Ms. Schimkat was waived and asking Plaintiff to reproduce a volume of her production that Diestel was unable to open. *Id.* at ¶16, Ex. 4, p.3. Plaintiff's counsel resent the production volume, but it was still unviewable, and Diestel was forced to ask again that Plaintiff send this production volume in a usable form. *Id.* at ¶17, Ex. 4, pp.1-2. Plaintiff's counsel also contended that she need not produce Ms. Schimkat's correspondence because the parties had agreed that attorney-client communications made during this case need not be listed on a privilege log. *Ibid.* Diestel's counsel responded that, no privilege existed, and that although the parties had agreed that litigation communications need not be listed on a privilege log, "Diestel does not agree, and has not agreed, that pre-litigation communications are exempt from privilege log requirements under FRCP 26(b)(5)." *Id.* at ¶18, Ex. 4, p.1-2.

### III.   LEGAL ARGUMENT

A party may move for an order compelling further production of documents and responses to written discovery when "a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." Fed. R. Civ. Proc. 37(a)(3)(iv). For purposes of this section "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* at subd. (4).

### A.   Plaintiff Must Produce Correspondence Between Ms. Schimkat and Plaintiff.

Plaintiff testified at her deposition that she possessed communications with her friend, Ms. Schimkat, and these documents formed basis of Plaintiff's understanding that Diestel's challenged advertising and labeling statements were false and misleading. Blackman Decl., at ¶13. These documents are thus responsive to RFP Nos. 5, 21, 22, 24-26, and 28-31 and must be produced.

Plaintiff's assertion that her communications with Ms. Schimkat are privileged fails because Plaintiff waived any claim of privilege by failing to assert it as part of her response and because Plaintiff cannot establish that these communications were ever subject to a claim of attorney-client privilege.

### i.    Plaintiff Waived Any Claim of Privilege by Failing to Assert it In Response to the RFPs.

"It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Rikoon v. Silver*, No. 10CV0934 BB/DJS, 2011 WL 13223901, at *2 (D.N.M. Aug. 8, 2011), quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Lucero v. Valdez*, 240 F.R.D. 591,593 (D.N. M 2007) ("It is well established that all objections to discovery requests must be timely or they are waived....").

Plaintiff did not assert an attorney-client or work product privilege objection as to any of Diestel's RFPs. *See generally* Blackman Decl., ¶3, Ex.2. Nor did Plaintiff list the Schimkat correspondence on a privilege log allowing Diestel to assess Plaintiff's now-waived privilege claim. *Ibid.* Instead, Plaintiff simply hoped that the existence of these documents would never be discovered and that she would never have to address this issue. Plaintiff's inactivity, however, is a waiver. Plaintiff must produce all of her correspondence with Ms. Schimkat and anyone else about this case or her claims against Diestel, and provide an amended response to RFP 5, confirming that responsive documents *do exist* and that all responsive documents within Plaintiff's possession custody or control have been produced.

### ii.    Plaintiff is Unable to Establish a Privilege Claim Over Her Correspondence with Ms. Schimkat.

Even if this Court were to find Plaintiff had not waived her privilege claim, the attorney-client privilege still does not apply. Under New Mexico law,[4] the attorney-client privilege

---

[4] "In a diversity action, such as this, the substantive law of New Mexico on attorney-client privilege applies." *Rivera v. Fast Eddies, Inc.*, No. CIV 11-827 WJ/LFG, 2012 WL 12910618, at *3–4 (D.N.M. Aug. 29, 2012), citing Fed. R. Evid. 501.

protects from disclosure "a confidential communication made for the purpose of facilitating or providing professional legal services to that client… between the client and the client's lawyer or representative…"  N.M. R. Evid. Rule 11-503; *See also Anaya v. CBS Broad., Inc.*, No. CIV 06-476 JB KBM, 2007 WL 2219394, at *4 (D.N.M. Apr. 30, 2007).  "The elements of attorney-client privilege ... are ... a communication ... made in confidence ... between privileged persons ... for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 11, 317 P.3d 856, 860, quoting *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14,143 N.M. 215, 175 P.3d 309.  "The party resisting discovery has the burden of establishing the existence of the privilege." *Duran v. Home Depot USA, Inc.*, No. CV 13-0608 WPJ/SCY, 2015 WL 13666480, at *4 (D.N.M. Mar. 12, 2015).

Plaintiff is unable to establish a claim of privilege as to her communications with Ms. Schimkat because she testified that she was not in, nor ever contemplated entering into, an attorney-client relationship with Ms. Schimkat at the time the communications were made, and because Plaintiff has waived any privilege claim by relying on these communications to substantiate the allegations in her Complaint.

### iii.    The Attorney-Client Privilege Does Not Apply Because There is No Attorney-Client Relationship.

The "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege*." Duran*, 2015 WL 13666480, at *4, quoting *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D 645, 650 (D.N.M. 2007).  Instead, the communication must be "for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Bhandari,* 317 P.3d at 860.  Thus, communications with an attorney, if made for business or other purposes are not privileged*.  Ibid*.  ("The privilege protects communications generated or received by an attorney giving legal advice but does not protect communications derived from an attorney giving business advice or acting in some other capacity.")

Plaintiff testified that she never entered into, nor contemplated entering into, an attorney-client relationship with Ms. Schimkat, and therefore her communications with Ms. Schimkat do not relate to the rendition of professional legal services, and are not subject to the attorney-client privilege.  Instead, Plaintiff simply engaged in email correspondence with her friend who happened to be an attorney.  No privilege applies.

iv.   **Plaintiff Waived any Privilege Claim by Directly Relying on the Materials Provided by Ms. Schimkat to Substantiate the Allegations in Her Complaint.**

"A person who possesses a privilege against disclosure of a confidential matter or communication waives the privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is a privileged communication." N.M. R. Evid. Rule 11-511.  Applying this rule, a party waives the attorney-client privilege where "direct use [of the alleged privileged materials] is anticipated because the holder of the privilege must use the materials at some point in order to prevail [on their claim]…" *Pub. Serv. Co. of New Mexico v. Lyons*, 2000-NMCA-077, ¶ 22, 129 N.M. 487, 494, 10 P.3d 166, 173; *Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶ 14, 142 N.M. 359, 364, 165 P.3d 1135, 1140 (defendant waived privilege claim by relying on privileged communications to support defense).

Plaintiff testified the evidence she relied on to allege the falsity of Diestel's labeling and advertising claims was provided to her by Ms. Schimkat via email.  Blackman Decl., at ¶13.  These materials are key evidence relating to Plaintiff's claim, and will undoubtedly be directly used by her going forward.  Plaintiff has thus waived any claim of privilege as to these documents and communications.[5]

---

[5] Even if this Court finds the substance of Plaintiff's email communications with Ms. Schimkat are privileged, this privilege does not apply to the underlying facts and documents which Ms. Schimkat shared with Plaintiff. *JM through Foley v. New Mexico Dep't of Health*, No. CV 07-604 RB/ACT, 2009 WL 10698414, at *5 (D.N.M. Aug. 20, 2009) ("The attorney-client privilege protects from discovery communications made in confidence between a client and the attorney, but it does not protect the underlying facts contained within those communications."). Therefore, even if this Court were to hold Plaintiff's communications with Ms. Schimkat are

11

v.      **Plaintiff Has Waived Her Claim by Failing to Provide a Privilege Log.**

Plaintiff failed to provide a privilege log as required under Federal Rule of Civil Procedure Rule 26(b)(5).  Diestel is thus unable to evaluate Plaintiff's anticipated privilege claim.  Plaintiff will likely argue that Diestel agreed no privilege logs were required for communications between counsel and client during the case.  Not so.  Although Diestel agreed no log was required as to attorney communications directly resulting from the filed litigation, Diestel and Plaintiff never agreed that pre-litigation communications were similarly exempt.  If this Court finds that Plaintiff has not waived her privilege claim, it should, at the very least, order Plaintiff to produce a privilege log allowing Diestel to evaluate this claim.

**B.      Plaintiff Must Identify What Documents Are Responsive to Each RFP.**

"A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).  This provision "was born out of the disfavor shown by courts to the dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary [Citation] [and] to prevent parties from "deliberately ... mix[ing] critical documents with others in the hope of obscuring significance." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008), quoting Advisory Committee Note for 1980 Amendment to Rule 34; *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409–10 (S.D.N.Y. 2009) ("The provision prohibits 'simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought.'"), quoting 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice & Procedure, § 2213 (2008).

"Underlying this provision is the assumption 'that production of records as kept in the usual course of business ordinarily will make their significance pellucid.'" *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004, 2009 WL 152495, at *1

---

privileged, the documents and information provided to Plaintiff by Ms. Schimkat (i.e., the facts which support Plaintiff's claims in this case), are not.

(M.D. Ga. Jan. 22, 2009), quoting *CooperVision Inc. v. Ciba Vision Corp.*, No. 2:06CV149, 2007 WL 2264848, at *4 (E.D.Tex. Aug. 6, 2007).

Here, not only has Plaintiff failed to carry her burden to show that the DxE Materials were produced as maintained in the usual course of business, but the circumstances of this case require her to identify by Bates number the documents that respond to each RFP.

### i.     Plaintiff Has Not Produced Documents as Maintained in the Regular Course of Business.

"The responding party [] bears the burden of demonstrating that the documents were in fact produced as they were kept in the usual course of business, [Citation] and a bald assertion that documents were produced in such manner is not sufficient to carry that burden." *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 2009 WL 152495, at *1.

"A party demonstrates that it has produced documents in the usual course by revealing information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files." *See Strobel v. Rusch*, No. CV 18-656 RB/JFR, 2020 WL 8079786, at *4 (D.N.M. Jan. 23, 2020), quoting *Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.*, No. 08-cv-12486, 2009 WL 1803216 at *2 (E.D. Mich. 2009).

A party cannot satisfy their obligation to produce documents maintained in the usual course of business by producing an unorganized batch of documents from a previous litigation or other investigative matter. *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010); *Collins & Aikman Corp.*, 256 F.R.D. at 13 (holding that ESI produced in the course of an investigation, "which is by its very nature not routine or repetitive[,] cannot fall within the scope of the 'usual course of business,' " and requiring the SEC to label their responsive ESI by category).

For instance, in *Mizner Grand Condo. Ass'n, Inc.,* the responding party produced a batch of files that accumulated during a related litigation in state court. *Mizner Grand Condo. Ass'n, Inc,* 270 F.R.D. at 700. The responding party argued "that since these litigation documents have

always been maintained in this fashion, these documents were produced as they have been kept in the normal course of business." *Ibid.* The court disagreed, and explained that, "Unless [responding party] habitually keeps all documents it receives in storage with its attorneys, the documents [responding party] acquired during the underlying litigation were simply not maintained in the 'usual course of business.' Instead, these documents were accumulated during a specific, non-routine occurrence, and by their very nature are not business records under Rule 34(b)(2)(E)(i)." *Id.* at 701. The court further explained that:

> Even if [responding party]'s litigation files could somehow be construed as "documents kept in the usual course of business," [Responding party]'s record-keeping in this case would not pass muster under Rule 34(b)(2)(E)(i). Courts typically require the producing party to provide "some modicum of information" regarding how documents are ordinarily kept in the course of business, which would ideally include "the identity of the custodian or person from whom the documents were obtained, ...,assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered."

*Ibid.* The court concluded that there was no way for the requesting party to determine whether production was complete, or which documents responded to which request, and thus ordered the responding party to organize the production showing which document responded to which request. *Ibid.*

Plaintiff has provided no facts to Diestel during the parties' meet and confer showing that the DxE Materials are organized as maintained in the usual course of business. They are not. Instead, they are organized under inapplicable California state law, in the sequence they were haphazardly produced (in six different production volumes) in another matter in response to different requests for production, and as maintained by Plaintiff's attorneys during that litigation – i.e., not in the usual course of business. Plaintiff must, therefore, identify what documents in the production are responsive to each RFP. *See Strobel,* 2020 WL 8079786, at *3–5 (party ordered to identify which documents correspond to each RFP when Party failed to meet its burden to show documents were produced as maintained in usual course of business); *see also T.N. Taube Corp. v. Marine Midland Mortg. Corp.,* 136 F.R.D. 449. 456 (W.D.N.C. 1991) (The

14

appropriate remedy for failing to produce documents organized as ordinarily maintained is requiring the producing party to produce the documents again, this time organized to correspond to categories of the request).

### ii.      Plaintiff is Required to Identify the Documents that Respond to Each RFP.

Regardless of whether this Court finds Plaintiff produced documents as organized under the usual course of business, the circumstances of this case require Plaintiff to identify which document is responsive to each RFP.

"Although Defendant is permitted to refer Plaintiff to documents as they are kept in the usual course of business, this does not permit Defendant to provide Plaintiffs with unnecessary documents so as to be unduly burdensome." *Haughton v. D.C.*, 315 F.R.D. 424, 429–30 (D.D.C.), objections overruled, 161 F. Supp. 3d 100 (D.D.C. 2014*); Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997) (affirming trial court's sanction of responding party for producing three boxes or documents without organizing them under Rule 34 or removing unresponsive documents.)

For instance, in *Haughton,* "Defendant provided Plaintiff with over 1,000 pages of documents, many of which were unresponsive to the particular requests for which they were provided." *Ibid.* The court held that, "[a]lthough the documents Plaintiff requested were likely contained within these pages, Plaintiff should not have to sort through all of Defendant's records to find the responsive documents." *Ibid.* Accordingly, the court ordered "that Defendant supplement its responses to these requests by designating a specific page range in which to find the responsive documents." *Ibid.*

Further, Courts have ordered parties to organize their responses to correspond to particular RFPs when the facts of the case and claims at issue warrant it. For instance, in *Strobel*, plaintiff propounded requests for production to two defendants that sought documents establishing which defendant owned disputed copyright and trademark rights. *Strobel,* 2020 WL 8079786, at *3. The defendants produced a batch of 1400 documents without attempting to organize them as maintained in the usual course of business, indicate to which RFP each

document was responsive, or show which defendant produced what document.  *Id*. at *3.  The court held that information regarding how the documents were maintained, who produced them, and to which RFP they corresponded was key to establishing the disputed issue of copyright ownership in the case and ordered that each "Defendant shall serve amended discovery responses identifying the Bates Stamps that are responsive to each discovery request." *Id.* at *4.

Here, as in *Strobel*, the nature of (1) Plaintiff's claims, (2) Diestel's RFPs, and (3) Plaintiff's indiscriminate production of thousands of pages of documents (many of which are of unclear responsiveness in the present matter), requires Plaintiff to identify the RFP to which each document responds.

Plaintiff's claims in this case are simple – Diestel allegedly deceived the public by making certain statements in the packaging, marketing, and advertising of its products.  Diestel's RFPs seek foundational, relevant information regarding these claims – the documents showing what statements Plaintiff believes are deceptive or misleading (RFP Nos. 11-16) and documents supporting Plaintiff's claims these statements are misleading (RFP Nos. 5, 20-26, and 28-31).

Plaintiff's sprawling and unorganized production of documents prevents Diestel from learning the relevant and essential information sought in the RFPs.  Plaintiff's production was assembled in another matter and is organized by the volumes of production in that former case, not by content or RFP. Importantly, though this production does contain many printouts and screenshots of allegedly deceptive statements made by Diestel, these documents were assembled and produced to respond to RFPs in another case, and reflect the statements which a different plaintiff believed were deceptive. The same holds true as to those documents which may support a claim of deception. Plaintiff has evidently made no effort to sort out documents that Plaintiff *in this case* considers responsive. These documents are the most important evidence in this case, and Plaintiff has not provided Diestel with the tools or information to determine which documents they are.  Instead, Diestel was provided with a disorganized mass of documents from another case and forced to guess at their responsiveness.

The need for Plaintiff to respond and provide this information in response to written

discovery is imperative considering Plaintiff testified that she has never reviewed Diestel's websites, press releases, blogs, social media posts, flyers or videos and therefore cannot identify what, if anything, she alleges is misleading in that marketing.  Blackman Decl., ¶13.  Diestel is, thus, only left with written discovery to understand Plaintiff's contentions in this case.  Plaintiff's failure to abide by Rule 34 thus prejudices Diestel's ability to adequately prepare its defense in this matter, and Plaintiff must be ordered to identify which documents in its production correspond to which RFP.

## C.    Plaintiff Must Provide Amended Responses Withdrawing Objections.

"In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome." *Anderson v. Chapman*, No. CV 08-0859 JEC/DJS, 2009 WL 10696437, at *1–6 (D.N.M. Aug. 26, 2009). "This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."  *Ibid.,* quoting *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D. Kan. 2004).  "Thus, an objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Ibid.*

Further, "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. Proc. 34(b)(2)(C). "In other words, 'Rule 34[(b)(2)(C)] imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make[.]'" *Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 436 (D.N.M. 2022), quoting *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019).

Here, Plaintiff asserts boilerplate objections to RFP Nos. 13-14 and 20-24. Plaintiff must withdraw these objections.  RFP Nos. 13 and 14 seek website and social medica statements made by Diestel which Plaintiff contends are false or misleading.  Plaintiff responded: "Plaintiff objects that "all" [website excerpts/social media posts], statements or images is overly broad,

unduly burdensome and duplicative.  Exemplars of responsive documents will be produced."
Blackman Decl. Ex. 2, at RFP Nos. 13-14.  Plaintiff provides no details of why this is the case,
and no explanation as to what documents are being withheld based on this objection.  Contrary to
Plaintiff's assertion, these RFPs are not overly broad or burdensome in the slightest.  Diestel
does not ask that Plaintiff comb through Diestel's website and social media posts and produce
back to Diestel every instance of a misleading statement.  Diestel only seeks documents *within
Plaintiff's possession custody or control* that she contends are false or misleading.  Plaintiff fails
to articulate any burden associated with producing such materials that she already has within her
possession, custody, or control.  Thus, Plaintiff's objections are improper and must be
withdrawn.

      RFP Nos. 20-24 seek documents related to consumer expectations regarding Diestel's
products (RFP No. 20), documents regarding Plaintiff's contention that Diestel misrepresents
that its turkeys are not raised on factory farms (RFP No. 21), documents related to investigations
of Diestel (RFP No. 22), photos images and videos of Diestel's facilities (RFP No. 23), and
documents related to animal welfare conductions on Diestel's farms (RFP No. 24). Blackman
Decl., Ex. 1, RFP Nos. 20-24.  Plaintiff objected on the grounds these RFPs were "overly broad,
unduly burdensome and not proportional to the needs of the case." *Id.* at Ex. 2, RFP Nos. 20-24.
Again, Plaintiff's boilerplate objections provide Diestel with no information as to *why* these
RFPs are overbroad, *how* complying with them is burdensome, and *why* they are not proportional
to the needs of the case.  Plaintiff had an opportunity to do so during the parties' extensive meet
and confer but chose not to.  Plaintiff must withdraw these objections and certify that all
documents have been produced.

**D.**    **Plaintiff Must Provide Amended Responses Confirming That All Responsive
        Documents Have Been Produced.**

      Typically, a party need only respond to a request for production stating "that inspection
and related activities will be permitted as requested or state with specificity the grounds for
objecting to the request, including the reasons." Fed. R. Civ. Proc. 34(b)(2)(B).

However, when, as here, a responding party produces an organized mass of documents and it is unclear whether documents were produced in response to each request, the responding party should be ordered to provide supplemental responses stating under oath either that (1) after a reasonable search and diligent inquiry the responding party has no responsive documents within their possession custody or control, or (2) that following a diligent search and reasonable inquiry all responsive documents in the responding party's possession, custody, or control have been produced. *Strobel*, 2020 WL 8079786, at *4; *Vazquez–Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 154 (D.P.R. 2010) (supplemental response to request for production, which stated that all documents had been produced, was "an answer" that required signature under oath by party).

For instance, in *Strobel*, the defendants produced a batch of 1400 documents without attempting to organize them as maintained in the usual course of business or indicate to which RFP each document was responsive. *Id.* at *3. The court not only ordered the defendants to reorganize the production but also ordered that, "If a Defendant does not have any documents responsive to a request, that Defendant shall provide a sworn statement that despite a diligent search, no responsive documents were found. Alternatively, if documents have been produced in response to a request, each Defendant shall provide a sworn statement that after a diligent search, all responsive documents have been produced." *Id.* at *4.

Here, the Court should require Plaintiff to provide supplemental responses to the RFPs that both confirm that a reasonable and diligent inquiry was undertaken, and confirm that Plaintiff has either produced all documents within her possession custody or control or confirm that Plaintiff has no responsive documents within her possession custody or control.

This is necessary for several reasons. First, Plaintiff's large and unorganized document production leaves it unclear as to what RFPs plaintiff has actually responded. Second, Plaintiff's current agreements to produce documents are ambiguous and leave it unclear whether *all* responsive documents will be produced, as opposed to just some responsive documents. For instance, Plaintiff's responses to RFP Nos. 1-2, 7-9, 11-12, 15-18, and 25-33 all state that

19

"Responsive documents will be produced."  Blackman Decl., Ex. 2, at RFP Nos. 1-2, 7-9, 11-12,

15-18, and 25-33.  Plaintiff notably fails to confirm that *all* responsive documents in Plaintiff's

possession, custody, or control will be produced.  Similarly, in response to RFP Nos. 13 and 14,

Plaintiff only agrees to produce "exemplars" of responsive documents.  *Id.* at Ex. 2, at RFP Nos.

13-14.  Again, Plaintiff offers something less than an agreement to produce all responsive

documents.  Finally, in response to RFP Nos. 20-24, Plaintiff agrees to produce "non-privileged

responsive documents" but fails to assert a privilege objection.  *Id.* at Ex. 2, at RFP Nos. 20-24.

Diestel is, again, left wondering if Plaintiff has withheld any documents based on some

unasserted illusory privilege claim.

Finally, revised compliance statements given under oath are crucial in this case given

Plaintiff's evident willingness to hide the ball during discovery.  Plaintiff has thus far failed to

produce key pieces of evidence, such as Plaintiff's email(s) with Ms. Schimkat, or only produced

documents after Diestel pointed out that Plaintiff possessed responsive documents such as Dr.

Hukku's report in response to RFP No. 20.  In both cases, documents were withheld from

production and Diestel was only made aware of this fact due to fortunate circumstances.  Diestel

and this Court should not have to rely on mere fortune to ensure that Plaintiff produces all

responsive documents in this case, and Plaintiff must provide sworn amended responses to the

RFPs.

## IV.    CONCLUSION

For the reasons stated herein, Diestel asks that this Court to grant the present motion

Dated:  September 22, 2022

BLAXTER | BLACKMAN LLP


_/s/ Brian R. Blackman_

BRIAN R. BLACKMAN (Admitted _Pro Hac Vice_)
610 Montgomery Street, Suite 1110
San Francisco, California 94111
Tel: (415) 500-7704
Email:  bblackman@blaxterlaw.com

_Attorneys for Defendant Diestel Turkey Ranch_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on September 22, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Gretchen Elsner
ELSNER LAW & POLICY, LLC
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
Email: gretchen@elsnerlaw.org

Timothy L. Sifers
Nathaniel K. Scearcy
THE POTTS LAW FIRM, LLP
1901 W. 47th Place, Suite 210
Westwood, KS 66205
Telephone: (816) 931-2230
Email: tsifers@potts-law.com
nscearcy@potts-law.com

I declare under penalty of perjury under the laws of the United States of America that the above it true and correct. Executed on September 22, 2022 in San Francisco, California.

/s/ Brian R. Blackman
BRIAN R. BLACKMAN