UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**DIESTEL TURKEY RANCH,**<br><br>Defendant. | Case No.: 20-cv-1213 DHU-KRS<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff Wetzel opposes Defendant Diestel Turkey Ranch's Motion to Compel (ECF 65) production of an email exchange between Plaintiff and an attorney working on this case because the communication between Plaintiff and an attorney working on the case are privileged. For the other matters raised by Diestel, Plaintiff proposes a resolution.

Plaintiff Wetzel is a consumer class action representative in a case against Diestel Turkey Ranch (Diestel) for violating New Mexico's Unfair Practices Act, NMSA 1978 § 57-12-1 and the False Advertising Law, § 57-15-1, ECF 1. Plaintiff seeks to enforce New Mexico's truth in advertising and fair play in business laws for a Thanksgiving turkey that she bought to feed to her family. ECF 1, ¶ 11. She paid a premium to purchase from a company that promised high standards. In reality, less than 1% of Diestel's birds are raised the way that Diestel promises. Id. ¶¶ 45, 68, 84. In fact, the turkeys are raised in ways that, instead of nourishing the soul, turns the stomach. Id. ¶ 51 (photos).

**DISCOVERY BACKGROUND**

Defendant served Requests for Production on July 12, 2022, ECF 67-1. Plaintiff served discovery responses on August 11, 2022, without seeking an extension, ECF 67-2. The parties met and conferred via telephone regarding the responses and continued the conversation over email, ECF 67-4. Plaintiff Wetzel sat for a deposition on September 13, 2022.

An ongoing meet and confer topic is the logistics of using, in this case, documents produced by the parties in a previous lawsuit in California state court in 2017-2020. In that previous case, a public interest organization named Direct Action Everywhere SF Bay Area, sued Defendant Diestel for violating California consumer protection statutes. After discovery, the case proceeded to an 8-day bench trial. Thus, Diestel is well aware of the claims and defenses from the previous years of discovery and trial. After completing the trial, the trial judge became unavailable and the matter was reassigned. The newly assigned judge said, "Although it appears dubious that Diestel is a 'small' family farm or that its birds receive 'individual' care or live 'twice as long' as other commercial turkeys, because plaintiff [Direct Action] lacks standing, this court is without jurisdiction to adjudicate those claims." Whether the public interest organization had standing is currently on appeal with the California Court of Appeals. The entirety of the record on appeal, which includes 11 volumes of the record below, the trial exhibits, and 8 volumes of court reporters' trial transcripts, has also been served on Diestel in the appellate action and served as discovery in this case in a searchable format.

The California public interest organization was represented by several attorneys, including Elsner Law & Policy, LLC. Diestel was represented by Blaxter Blackman LLP. In the pending case, Plaintiff Wetzel is represented by Elsner Law & Policy and The Potts Law Firm, LLP and Diestel is represented by Blaxter Blackman LLP.

For the documents previously produced by Diestel in the public interest case, the parties stipulated that Diestel did not need to reproduce them. ECF 56. Diestel marked many of its documents confidential and the parties' stipulation allowed The Potts Law Firm, who is new to this case, to review Diestel's previously produced documents that were marked confidential. For the documents previously produced by the public interest organization to Diestel, the parties have not been able to agree on stipulation terms, so Plaintiff Wetzel simply reproduced all the non-confidential documents to Diestel. The public interest organization had marked only some documents confidential and those documents have not yet been reproduced and may not be responsive to any RFP served by Diestel in the Wetzel v. Diestel matter.

Plaintiff served Wetzel Set One on September 6, and Wetzel Set Two on September 9. These were documents specific to Plaintiff Wetzel and produced before her deposition. Plaintiff served Wetzel Set Three on September 19, which were documents responsive to third-party subpoenas and documents from the previous public interest litigation (expert witness materials, 8-day trial transcript, and appendix of all trial court documents shared with the appellate court). Plaintiff served Wetzel Set Four on September 19, which were documents produced by the public interest plaintiff to Diestel in 2018. Plaintiff served Wetzel Set five on September 20, which were documents produced by the public interest plaintiff to Diestel in 2019.

On September 22, 2022, this Court ordered discovery extended and adopted the longer period requested by Diestel (ECF 64 for order; ECF 63 for joint motion). The order extended the deadline to file discovery motions to February 10, 2023. Even though the deadline was extended to more than four months in the future, allowing the parties plenty of time to address the logistics of incorporating the previous production into this case or to resolve other issues, Diestel moved to compel on September 22, 2022 (ECF 65).

# ARGUMENT

### I. Plaintiff Wetzel's Communications About the Case With Attorneys Working on the Case Are Privileged.

Plaintiff has produced thousands of (very familiar) documents related to the false advertising claims in this matter. Despite having relevant documents in hand, Diestel moves to compel production of one email exchanged between the Plaintiff and an attorney representing plaintiffs in cases against Diestel, Attorney Helga Schimkat. This is simply an attempt to distract from Diestel's failure to meet its own discovery obligations to produce documents relevant to the truth or falsity of its own advertising (ECF 51, Plaintiff's motion to compel pending with the court). While Diestel's own documents about its operations and its advertising are highly relevant to the unfair practices and false advertising claims, the consumer class representative's attorney-client communications do not have any probative value for any element of any claim.

### A. Attorney-Client Privilege

Attorney-client privilege protects from disclosure "a confidential communication made for the purpose of facilitating or providing professional legal services to that client...between the client and the client's lawyer or representative." NMRA Rule 11-503. The communication in question fits squarely within that rule.

Diestel seeks an email between Plaintiff, the client, and Attorney Schimkat, who worked with Elsner Law & Policy on the cases involving Diestel. The fact that Attorney Schimkat worked with Elsner Law on litigation against Diestel was made known to Diestel four ways. One, on January 22, 2021, Attorney Schimkat's timesheet was served on Diestel and submitted to the California trial court in *Direct Action v. Diestel*. Two, the timesheet was submitted again

to the California Court of Appeals in May 20, 2022, and again served on Diestel. Attorney Schimkat's timesheet is attached as Ex. 1. The Bates stamp in the lower right corner relate to appellant's appendix with the California Court of Appeals. Three, Diestel knew from deposing Plaintiff Wetzel on September 13, 2022 that Wetzel understood Schimkat was an attorney, Wetzel knew Schimkat worked with Elsner Law on a case involving Diestel, and Schimkat discussed litigation against Diestel with Wetzel. Four, after the deposition, Plaintiff's counsel again confirmed on September 20 and 22 that "Ms. Schimkat is an attorney who has worked with my firm." ECF 67-4 at 4, 5. Counsel pointed out that this was already known to Diestel. Counsel made a typographical error in the email and said since 2000; it should have been 2021. No other meet and confer occurred before Diestel moved to compel. Despite knowing that Attorney Schimkat worked on this litigation, Diestel's motion to this court misleadingly refers to Attorney Schimkat solely as Plaintiff's friend.

   NMRA Rule 11-503 applies here:

   A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made for the purpose of facilitating or providing professional legal services to that client,

   (1)   between the client and the client's lawyer or representative;
   (2)   between the client's lawyer and the lawyer's representative;
   (3)   between the client or client's lawyer and another lawyer representing another in a matter of common interest;
   (4)   between representatives of the client or between the client and a representative of the client; or
   (5)   between lawyers representing the client.

Plaintiff Wetzel is a client who consulted with a lawyer or a lawyer's representative and retained the professional services of a lawyer. Rule 11-503(A)(1). Both Attorney Schimkat and Attorney Elsner meet the definition of a lawyer. Rule 11-503(A)(2). In this instance, Attorney Schimkat also meets the definition of "representative of a lawyer" because she assisted Elsner

Law in providing professional legal services. Rule 11-503(A)(3). The Wetzel-Schimkat communication was made privately and was not intended for further disclosure, meeting the definition of confidential in Rule 11-503(A)(4). Confidential communication "includes the act of contacting or retaining a lawyer for the purpose of seeking professional legal services if not intended to be disclosed to third person." Rule 11-503(A)(4).

Diestel argues that privilege does not apply because Plaintiff Wetzel did not hire Attorney Schimkat, but instead hired Elsnre Law, the entity for which Attorney Schimkat was working. Diestel cites no case for this proposition and there is no support for such idea. Plaintiff Wetzel also did not hire Elsner Law's paralegal, yet any client-staff communications are also privileged under the Rule.

The fact that Plaintiff Wetzel and Attorney Schimkat knew each other before Plaintiff retained Elsner Law does not negate any lawyer-client privilege. Attorneys who are consulted by friends and acquaintances are still bound by NMRA Rule 16-106 to maintain confidentiality. Under Rule 16-106, "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent. . ." Even if Plaintiff Wetzel had not retained Elsner Law, attorneys are bound to maintain confidentiality of information obtained by prospective clients. Rule 16-118 requires that, "Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information. . ." An attorney's obligation to maintain confidentiality of communications is not lessened if the individual seeking legal services is also a friend.

Diestel asserts that the email between Plaintiff and Attorney Schimkat must be produced in response to RFP 5, which sought, "All non-privileged communications between YOU and any PERSON RELATING TO DEFENDANT or its PRODUCTS." Diestel demanded that

Plaintiff amend her respond to RFP 5, ECF 67-4 at 6. Because the email exchange between the client and the attorney working on the litigation is privileged, and the request specifically excludes privileged communications, the plaintiff's email with the attorney is not even responsive to this request. Nor is the attorney-client communication responsive to any other request.

Diestel argues that Plaintiff Wetzel waived the privilege by not objecting when responding to RFP 5. Diestel is correct the communication is privileged. But given that the request specifically excluded privileged communications, there was not any reason to object on the basis of any privilege and there is not any waiver regarding non-responsive documents.

Diestel incorrectly claims that Plaintiff waived the privilege she holds by not logging the email with Attorney Schimkat. Again, Diestel is correct that the communication is privileged, but there is not any waiver. First, since the communication was not responsive to the RFP, which specifically excluded privileged communications. Therefore, there was not any responsive communication to log. Nothing in Fed. R. Civ. Proc. 26(b)(5) provides support for Diestel's position that a log is required for non-responsive communications. Second, Diestel's own previous agreement undoes its argument that litigation counsel should be logging its communications with clients about the litigation. As early as August 30, Plaintiff's counsel asked defense counsel, "For any privileged documents that might exist, from what time period are you suggesting the parties log any privileged documents?" ECF 67-4 at 15. On August 31 and September 19, the parties met and conferred via phone and agreed that it did not make sense to log attorney-client communications with attorneys working on the litigation, documented at ECF 67-4 at 4. Attorney Blackman's declaration ¶ 18 confirms this agreement: "although the parties had agreed that litigation communications need not be listed on a privilege

log. . ." ECF 67. Diestel's only argument is that it contends that "pre-litigation communications" are different, without citing any factual or legal support for the idea that the communication between Plaintiff and an attorney working on the litigation could be deemed "pre-litigation." If Wetzel's counsel not producing a privilege log of their communications with Wetzel constitutes a waiver of attorney-client privilege, then Diestel has also waived its privilege for failure to produce a privilege log.

Diestel is incorrect that Plaintiff Wetzel has relied upon any information from counsel to substantiate the complaint. The information that the consumer class case relied upon to make the allegations against Diestel are well detailed in the Complaint, ECF 1. Plaintiff is not planning to prove her case on behalf of the consumer class by saying "an attorney sent me a news article about the birds being raised in dirty sheds instead of clean pastures, therefore I win." At the proof stage, the consumer class action anticipates relying on documents exchanged between the parties and on deposition testimony. Plaintiff Wetzel does not anticipate relying on any information obtained from counsel, nor would it be normal to do so.

Diestel also loses sight of the fact that Plaintiff Wetzel is a class representative. She purchased Diestel's products in the grocery store, and like most consumers and class action representatives, does not have any research file on the company from which she purchased products. In fact, defendant companies often mark their documents "attorneys' eyes only" so consumers like Wetzel are not even allowed to see underlying documents produced. Consumer class representatives rely on counsel to have investigated the claims and defenses. There is not any expectation that she is individually responsible for marshalling evidence to prove Diestel's deceit. As Diestel well knows from the years of litigation that preceded the New Mexico consumer class action that bears Plaintiff Wetzel's name, the evidence of deception is not

within the personal knowledge of an individual grocery shopper. The evidence is largely drawn from other materials, including materials produced by Diestel in the previous suit, and produced to or by Diestel in the Wetzel matter.

### B. Work-Product Privilege

Plaintiff Wetzel is the holder of the privilege for any communication with an attorney in the pursuit of legal services. Rule 11-503. However, Attorney Schimkat and the firm for whom she worked is the holder of the work-product privilege or immunity related to the email in question. As the New Mexico appellate courts have determined:

> {38}    The work-product doctrine is separate and distinct from attorney-client privilege. Richmond, supra, at 390; see also Rule 1-026(B)(4) (providing that "a party may obtain discovery of documents and tangible things *otherwise discoverable* . . . and prepared in anticipation of litigation" only upon a showing of substantial need and inability to obtain the substantial equivalent by other means without undue hardship (emphasis added)). **The work-product rule is an immunity that protects documents and tangible things prepared in anticipation of litigation by or for a party or its representative, including materials prepared by the attorney's agents and consultants. Rule 1-026(B)(4)**; Richmond, supra, at 391 ¶ n.69 (citing In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003); see also Hartman, 1997-NMCA-032, ¶ 19. Broader protection is afforded by the work-product doctrine because it is not limited to confidential communications between an attorney and a client. Richmond, supra, at 390-91. The protection of an attorney's work product is important because it protects the attorney's privacy "in doing whatever is necessary to properly prepare his case." Carter, 85 N.M. at 31, 508 P.2d at 1328.

*Santa Fe Pacific Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 38 (emphasis added). Unsurprisingly, attorneys representing consumers have often investigated and commenced work on a case before communicating with the individual who becomes a named class representative. Work-product privilege is an independent basis for denying Diestel's motion to compel production of the email between Attorney Schimkat and Plaintiff Wetzel.

## II.     Amended Responses to Requests for Production

### A.     Identification of Responsive Documents

Plaintiff Wetzel suggests that the Court resolve this aspect of the discovery dispute by setting a timeframe for both parties to supplement their respective responses to RFPs and Interrogatories to identify by Bates stamp the documents responsive to each request. Plaintiff previously requested that Diestel supplement its responses and when Diestel failed to do so, Plaintiff moved to compel by the deadline consistent with the Court's order in place at that time, ECF 51, filed August 8, 2022.

When Diestel asked Plaintiff to supplement Plaintiff's responses to identify responsive documents by Bates stamp, Plaintiff's counsel responded on September 9 to say, "I see that you are asking for Wetzel to supplement RFP responses. Since we've also asked DTR [Diestel] to do that, how about we agree on a date that the parties will get that done?" ECF 67-4 at 8. Diestel did not respond to that offer to resolve the dispute short of court involvement, so Plaintiff's counsel asked again on September 20, "Since we've also asked DTR [Diestel] to do that, how about we agree on a date that the parties will get that done?" ECF 67-4 at 4. Diestel instead moved to compel on an issue that need not consume court resources. Claiming that Plaintiff "refused" to supplement mischaracterizes the communication.

Identifying by Bates stamp documents responsive to each RFP was not possible on August 11, 2022 when Plaintiff served responses (ECF 67-2) but had not yet served any responsive documents. Now that documents have been Bates stamped and served, it is possible to amend the responses and supplement with Bates stamps. Plaintiff proposed that the Court set a deadline of approximately 30 days for Plaintiff to amend her responses with Bates stamps.

Regarding the previous production in the California public interest case, Diestel

concedes that the previous production in *Direct Action v. Diestel* was made under California state law. Mot. at 14. Plaintiff Wetzel has produced them the same way they were produced in 2018 and 2019 and Diestel used these materials for depositions and trial in 2019. Complaining in 2022 that they need to organized in some other way is simply too late. Plaintiff Wetzel does not have any ability to re-organize the documents produced by a public interest organization in another matter. She can, however, identify by Bates stamp documents that are responsive to Diestel's RFPs in this matter.

### B. Plaintiff's Objections

Plaintiff has the burden of proof in this matter and does not have any incentive to withhold any relevant documents. As such, Plaintiff objected very sparingly to Diestel's 33 RFPs. ECF 67-2. For 20 of the 33 requests, Plaintiff responded, "Responsive documents will be produced," and made no further objection. For six of the requests, Plaintiff responded, "Plaintiff is not aware of any responsive documents," and made no further objection. Diestel takes issue with six responses to which Plaintiff objected or qualified her response.

**RFP 13** sought "All website excerpts, statements or images RELATING TO the PRODUCTS and/or DEFENDANT that YOU contend are false or misleading." **RFP 14** sought "All social media posts, statements or images RELATING TO the PRODUCTS and/or DEFENDANT that YOU contend are false or misleading." For both, Plaintiff responded that "all" in this context is overly broad, unduly burdensome and duplicative and stated that exemplars of responsive documents will be produced. The parties met and conferred on these points. From that meet and confer, Plaintiff's counsel understood Diestel was seeking only what Plaintiff Wetzel as an individual has and not an exhaustive search of anything that could be on

the internet available to other class members, and Plaintiff's counsel confirmed that Wetzel did not have anything more to produce. Not surprisingly, Plaintiff Wetzel as an individual grocery shopper has not saved website excerpts or social media posts about a previous grocery store purchase. Plaintiff's counsel thought this was resolved after the meet and confer. In fact, in documenting the telephonic meet and confer via an email dated August 31, ECF 67-4 at 14, defense counsel stated, "You confirmed that Plaintiff has no responsive documents in her possession with regards to RFP Nos. 13-14 and 20-24 and all responsive documents are contained in the DxE production," referring to the previous case. When supplementing RFP responses, Plaintiff can confirm in writing that she does not have any website excerpts or social media posts to produce.

**RFP 20-24** sought "all" documents relating to consumer expectations regarding defendant's products, "all" documents relating to contentions that Diestel's representations indicate to consumers that its turkeys are not raised on typical factory farms, "all" documents relating to any investigation of Diestel, "all" photos or videos of Diestel or its operations, and "all" documents relating to animal welfare at Diestel's facilities. Plaintiff objected that "all" documents was overly broad, unduly burdensome and not proportional to the needs of the case, but for each said, "Plaintiff will produce non-privileged responsive documents." Since August 11, Plaintiff has produced thousands of responsive documents and this issue may be moot. As Diestel knows, counsel for both Wetzel and Diestel are in possession of documents marked confidential from the previous litigation in California state court, and to the extent that Diestel is seeking for Plaintiff Wetzel's counsel to produce another client's privileged documents, the Court should deny the request.

## CONCLUSION

For the above reasons, the Court should deny Defendant's Motion to Compel in its entirety and set a timeframe for both parties to supplement their respective responses to RFPs.

Dated: October 6, 2022                    Respectfully submitted,

**ELSNER LAW & POLICY, LLC**              **THE POTTS LAW FIRM, LLP**

By: /Gretchen Elsner/                     By: /s/ *Timothy L. Sifers*
Gretchen Elsner                           Timothy L. Sifers
Gretchen@ElsnerLaw.org                    Nathaniel K. Scearcy
314 South Guadalupe Street                1901 W. 47th Place, Suite 210
Santa Fe, New Mexico 87501                Westwood, KS 66205
Telephone: (505) 303-0980                 Telephone: (816) 931-2230
                                          Facsimile: (816) 931-7030
                                          Email: tsifers@potts-law.com
                                          nscearcy@potts-law.com

*Counsel for Plaintiff & the Proposed Class*