## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CYNTHIA WETZEL, on behalf of herself and
all other New Mexico consumers similarly situated,

      Plaintiff,

v.                                No. 1:20-cv-1213 DHU/KRS

DIESTEL TURKEY RANCH

      Defendant.

### ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL (Doc. 51)

THIS MATTER is before the Court on Plaintiff's Motion to Compel, (Doc. 51), filed August 8, 2022. Defendant Diestel Turkey Ranch filed a response on August 22, 2022, and Plaintiff filed a reply on September 6, 2022. (Docs. 57, 58, 59, and 62). Having considered the parties' briefing, record of the case, and relevant law, the Court grants in part Plaintiff's Motion to Compel, (Doc. 51), as set forth below.

### I.    Background

Plaintiff brings a putative class action against Defendant (referred to below as ("Defendant," "DTR," or "Diestel") for violations of the New Mexico Unfair Practices Act, New Mexico's False Advertising Law, and common law unjust enrichment, based on allegations that Defendant provided false and misleading statements and advertising about its turkey products. (Doc. 42) at 2; (Doc. 51) at 1. In her Motion to Compel, Plaintiff contends that Defendant's reference to its general objections in response to discovery requests is improper because it fails to set forth the specific grounds on which Defendant is objecting. *Id.* at 5 and 12. Plaintiff also argues that Defendant's responses to Interrogatory Nos. 2, 3, 4, 5, 6, and 8, and Request for Production ("RFP") Nos. 1, 4, 5, 6, 9, 19, 20, 21, and 22, are insufficient and should be

supplemented, and that Defendant has failed to state whether it is withholding documents pursuant to its objections.  *Id.* at 5-21.

In response, Defendant states that it has produced almost 9,000 pages of responsive documents, its general objections are common practice in this district, and it is not required to provide a document log showing documents it withheld based on its objections.  (Doc. 57) at 5-6; 11-12.  Defendant states it produced over 300 pages of additional documents on August 19, 2022, which address Plaintiff's Motion to Compel, and that it will continue to provide supplemental responses to the disputed interrogatories and RFPs.  *Id.* at 7 and 9.  Defendant contends that it has sufficiently responded to each disputed discovery request.  *Id.* at 12-23.

In its reply, Plaintiff maintains that Defendant's general objections are improper and should be overruled.  (Doc. 62) at 3-4.  For some of the disputed interrogatories and RFPs, Plaintiff states that Defendant has not yet produced responsive documents as it stated it would, and the Court should order Defendant to do so.  *Id.* at 4-10.  Plaintiff also argues that Defendant must state whether it is withholding any responsive documents and produce a privilege log.  *Id.*

## II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  However, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad

discovery privileges."). Nonetheless, the Court is not required to permit the parties to engage in fishing expeditions in the hope of supporting their claims or defenses. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018).

Key considerations in determining the scope of permissible discovery include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Punt v. Kelly Services*, 862 F.3d 1040, 1047 (10th Cir. 2017).

### III.   Discussion

#### A.   General Objections

Plaintiff first argues that Defendant's general objections to Plaintiff's interrogatories and RFPs are improper because they fail to set forth the specific grounds on which Defendant is objecting. (Doc. 51) at 5, 12. Defendant responds that its general objections are proper because it incorporates them into each applicable response and they are largely objections to Plaintiffs' defined terms. (Doc. 57) at 11-12.

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Where the responding party objects, the grounds for such objection "must be stated with specificity" and objections that are not timely made are waived. Fed. R. Civ. P. 33(b)(4). Similarly, Rule 34 provides that a proper response to a request for production of documents "must either state that inspection and related activities will be permitted as requested or state

with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). In doing so, the party must also "state whether any responsive materials are being withheld" on the basis of the objection. Fed. R. Civ. P. 34(b)(2)(C).

In its General Objections, Defendant objects to several of Plaintiff's definitions used in the discovery requests, as well as to the interrogatories and RFPs to the extent they seek privileged information, are unduly burdensome or overly broad, or seek information that is protected from disclosure. (Doc. 51-1) at 2-5; (Doc. 51-2) at 2-6. Defendant incorporates its General Objections into its responses to each discovery request. However, Defendant also provides specific objections in each response, including the grounds for its objections and what information it is withholding on the basis of those objections. For example, in response to Interrogatory No. 4, Defendant states that it "incorporates its General Objections into this response," but continues to explain that it objects to Plaintiff's use of certain phrases, and that the request is "overly broad in scope and time, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Federal Rule of Civil Procedure 26(b)(1)" because it "is not limited to products Plaintiff purchased, nor products DTR actually sold or were available for purchase in New Mexico in the last six years." (Doc. 51-1) at 10-11. Defendant states that it is limiting its response to New Mexico and that it objects to the extent the request seeks privileged information or trade secret, proprietary commercial, or other highly confidential and competitively sensitive business information. Finally, Defendant answers the interrogatory.

The Court finds that Defendant's responses are proper under Rules 33 and 34, despite its use of general objections. Instead of merely relying on boilerplate or generalized objections,

Defendant provides specific grounds for its objections to each discovery request and puts

Plaintiff on notice of what type of information is being withheld and why.  While the Court will

consider each disputed discovery request below, Defendant's use of general objections is not

itself improper because Defendant did not rely solely on those objections, and set forth the

specific grounds for its objections and tailored those objections to each response.  *Cf. Heuskin v.*

*D&E Transp., LLC*, 2020 WL 1450575, at *2 (D.N.M.) ("Boilerplate, generalized objections are

inadequate and tantamount to not making any objection at all."); *King v. Gilbreath*, 2015 WL

12866984, at *1 (D.N.M.) (explaining that "the use of general, reserved objections is disfavored"

because Rules 33 and 34 "require that the grounds for objecting to an interrogatory or request for

production be particularized to that request") (citations omitted).

### B.  Defendant's Objections and Answers to Interrogatory Nos. 2, 3, 5, and 8

Next, Plaintiff asks the Court to strike Defendant's general objections to Interrogatory

Nos. 2, 3, 5, and 8 because the interrogatories are not vague or ambiguous and each contains

defined terms and the scope of the discovery sought by Plaintiff.  (Doc. 51) at 5-6.  Plaintiff also

argues that Defendant improperly directed Plaintiff towards numerous spreadsheets in response

to Interrogatory Nos. 2, 3, and 8, but did not identify the spreadsheets by Bates numbers, and the

spreadsheets are unorganized, difficult to follow, and missing information.  *Id.* at 6-7.

First, because Defendant proceeded to answer each interrogatory and explain the reasons

for each objection in its responses, the Court will not strike Defendant's objections to these

interrogatories.  *See* (Doc. 51-1) at 7-12, 14-15.  Second, regarding the spreadsheets, Defendant

states that the parties agreed to a protective order after it served its interrogatory responses, so it

did not have Bates numbers at the time to include in its response.  Defendant states it has now

provided Plaintiff with the Bates numbers for the Whole Foods market sales reports and Diestel's

5

online sales report.  (Doc. 57) at 13.  Additionally, Defendant states it will supplement its written responses to identify the responsive documents by Bates numbers.  *Id.*  Plaintiff, however, replies that Defendant has not yet produced a supplement that identifies documents by Bates number. (Doc. 62) at 4.  Plaintiff also asks the Court to order Defendant "to actually answer the Interrogatories in narrative form, and under oath on behalf of DTR, instead of pointing to a mix of spreadsheets drawn from different databases."  *Id.*

Interrogatory Nos. 2, 3, and 8 ask Defendant to identify unit sales and total revenue of its turkey products (Interrogatory No. 2); all products Defendant has made, used, sold, offered for sale, advertised, or manufactured containing certain statements about its turkey products (Interrogatory No. 3); and the dates each product became available for sale in New Mexico and when Defendants stopped selling them (Interrogatory No. 8).  (Doc. 51-1) at 7-8, 14.  Defendant answered by explaining how the information Plaintiff seeks is reflected in various sales reports and data Defendant can access from its ecommerce website and from its distributors and retailers, and states it will produce these sales reports.  *Id.*

Rule 33(d) allows a party to answer an interrogatory by producing documents if the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records …, and if the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).  Defendant states that it "produced the information within its possession in the form it is accessible and can be reproduced," and explains that it produced reports responsive to these interrogatories from different programs because they are maintained in different databases.  (Doc. 57) at 14.  The Court finds that Defendant sufficiently complied with Rule 33 by producing the reports that reflect the information sought by Plaintiff because the burden would be substantially the same for either

party to compile or summarize the data from the reports.  However, while Defendant states it has produced the Bates numbers for the Whole Foods market sales reports and Diestel's online sales report, it also states that it will supplement its written responses to identify responsive documents by Bates numbers, and Plaintiff states that Defendant has not yet done so.  Therefore, the Court will grant Plaintiff's motion to compel in part as to these interrogatories, and Defendant shall provide supplemental responses containing Bates numbers for all responsive reports and any other responsive documents.

### C. Clarification of Withheld Documents

Plaintiff also moves the Court to compel Defendant to specify whether it is withholding any responsive documents on the basis of its objections to the RFPs.  (Doc. 51) at 13.  Defendant responds that the rules do not require it to provide a log of documents it withheld on the basis of its objections and that it properly stated the scope of documents that were produced.  (Doc. 57) at 17-18.

Rule 34(b)(2)(C) provides that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."  In response to Plaintiff's RFPs, Defendant states its objections and the bases for them, explains the parameters of what Defendant will produce subject to its objections, and states what it is producing.  *See*, (Doc. 51-2) at 7-30.  The Court finds that most of Defendant's RFP responses comply with Rule 34 because Defendant describes the parameters of what is being produced.  *See Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 436 (D.N.M. 2022) ("Rule 34[(b)(2)(C)] imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make[.]") (quoting *Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552 at *3 (S.D.N.Y.)).  Therefore, the Court denies Plaintiff's Motion to Compel as to this general request

for Defendant to supplement every RFP to clarify whether it is withholding responsive

information on the basis of its objections.

Regarding Defendant's objections on the basis of privilege, however, Rule 26 requires

that:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial-preparation material, the party must:
> (i)      expressly make the claim; and
> (ii)     describe the nature of the documents, communications, or
> tangible things not produced or disclosed—and do so in a manner
> that, without revealing information itself privileged or protected,
> will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  Accordingly, if Defendant withheld any otherwise discoverable

information on the basis of privilege, it must produce a privilege log with the required

information.  The Court will consider Plaintiff's arguments regarding Defendant's responses to

specific discovery requests below.

**D.  Interrogatory No. 4**

This interrogatory asks Defendant to describe its market analyses and consumer surveys

regarding its products.  (Doc. 51) at 7.  Defendant objected on several grounds, and responded

that it has not conducted any analyses or surveys specific to New Mexico or New Mexico

consumers.  *Id.* at 7-8.  Plaintiff argues that national analyses or surveys are relevant to Plaintiff'

claims because those studies inform Defendant about how New Mexico consumers understood

Defendant's marketing.  *Id.* at 8.

In response to the Motion to Compel, Defendant argues that this interrogatory is overly

broad because it is not limited to studies relating to customer perception, product labels, or

animal welfare, and is not limited by time or to New Mexico consumers or sales.  (Doc. 57) at

14-15.  Defendant states that it has no relevant studies regarding New Mexico consumers and

8

products, and it "has not conducted any marketing, advertising or consumer analy[s]es, surveys or focus groups specific to individual DTR branded products." *Id.* at 15.  Defendant then states that it has worked with professionals in marketing and public relations relating to its brand strategy, and that on August 19, 2022 it produced over 320 pages of documents related to those agreements and projects.  Defendant further states it "will supplement its written response to summarize the companies with whom it worked and when." *Id.*  In reply, Plaintiff states that Defendant has not yet provided this supplemental response. (Doc. 62) at 5.

Since Defendant has now explained that it has not conducted market analyses or consumer surveys specific to its individual DTR branded products, and produced documents related to its brand strategy marketing and public relations, the Court finds that Defendant's response to this interrogatory is adequate.  Defendant shall produce the summary of companies it that it agreed to produce as a supplemental response.

**E.  Interrogatory No. 5**

Interrogatory No. 5 asks for "BASIC DISSEMINATION DATA for each unique ADVERTISEMENT for each TURKEY PRODUCT disseminated throughout the CLASS PERIOD." (Doc. 51) at 8.[1]  Defendant objected on several grounds, including that the interrogatory is overly broad because it is not limited to "consumer facing advertising, DTR branded products Plaintiff purchased, nor products DTR actually sold or were available for purchase in New Mexico in the last six years." *Id.* at 8-9.  Defendant limited its response to consumer facing advertising to New Mexico consumers, and stated that "it operates a website located at 'diestelturkey.com' that consumers can access through the Internet," "DTR branded

---

[1] Each term in capital letters is defined by Plaintiff in the "Definitions and Instructions" portions of the discovery requests.  *See* (Doc. 51-4) at 1-17.  Plaintiff defines the class period as "November 19, 2016 to the present." *Id.* at 3.

products are packaged in USDA approved labels and labeling," "DTR branded products sold through its ecommerce store are shipped in DTR labeled boxes that include inserts about the brand and company," and "DTR provides sales brochures to Whole Foods Market for its use at its stores," but "DTR does not know if Whole Foods Market stores in New Mexico actually displays its brochures." *Id.* Defendant further stated that consumers can follow it on social media, it will occasionally issue press releases about its business, and it has been featured in news articles, but it does not know whether those articles reached consumers in New Mexico. *Id.* at 9.

Plaintiff explains that she seeks information about each advertisement used by Defendant, including how, when, and where they were disseminated, the total number disseminated, and the identity and contact information of the entities that disseminated the advertisements. *Id.* Plaintiff states the request is relevant because her claims are based on Defendant's advertising of its turkey products to the public at large, and contends that Defendant failed to identify the quantity of brochures it has sent out, where they were sent, and who is responsible for sending them, as well as where press releases were published or who published them.

Defendant states in response to the Motion to Compel that it has "identified each potential source of advertising which could have potentially been shown to New Mexico customers," and that it produced all relevant press releases, which "includes ample information regarding what materials exist and when they were created and used." (Doc. 57) at 15-16. Defendant explains that its marketing documents were either produced in folders identifying the year of their production and use, or that relevant information is in the documents' file names. *Id.* Defendant argues that Plaintiff's request for the number of brochures it provided to Whole Foods to display in its grocery stores in New Mexico, and where its press releases were issued and by

whom, is overly broad, unduly burdensome, and seeks irrelevant information, and that Plaintiff

can seek information from Whole Foods about how the brochures were displayed. *Id.* at 16.

Nevertheless, Defendant states it "will supplement its document production with further

documents showing the structure of the file folders containing Defendant's responsive

advertising and marketing statements." *Id.*

In reply, Plaintiff states that Whole Foods has informed Plaintiff that it does not keep

archives of the marketing material Plaintiff seeks and they do not have any of the materials.

(Doc. 62) at 6.  Therefore, Plaintiff still seeks an answer from Defendant that describes where

Defendant sent marketing brochures during the class period.  The Court finds that this request is

not overly broad, unduly burdensome, or irrelevant because the information pertains to Plaintiff's

claim regarding Defendant's marketing of its turkey products, it is limited to the relevant time

period, and Defendant has not supported its claim that it would be burdensome to produce

information relating to the brochures.  However, the Court agrees with Defendant that the request

should be limited to information that was directed to New Mexico consumers.  Therefore, the

Court grants Plaintiff's Motion to Compel as to this request, and Defendant shall supplement its

response to Interrogatory No. 5 and disclose the number of brochures it provided for advertising

in New Mexico and where they were sent.

### F.  Interrogatory No. 6

Interrogatory No. 6 asks Defendant to "IDENTIFY every store, facility, or location

within New Mexico where at least one of the TURKEY PRODUCTS was sold during the

CLASS PERIOD."  (Doc. 51) at 10.  In response, Defendant explains that "it does not sell DTR

branded turkey products directly to consumers from physical locations in New Mexico," and it

"sells its DTR branded products to distributors and retailers, and ships those products to the

distributors' or retailers' depots or distribution center." *Id.* It further states that none of the depots or distribution centers are located in New Mexico, so "DTR does not know every store or location within New Mexico where its distributors may have sold a DTR branded turkey product." Defendant then provides a list of where it "is informed and believes" that its products have been sold in New Mexico between November 2016 and the date of its response. *Id.*

Plaintiff argues that this response is deficient because it does not include the stores listed on Defendant's website's store locator. *Id.* at 11. Defendant responds that "it only has limited data as to which specific retail locations it can *confirm* its products are sold," and explains that its website's store locator only identifies "other locations in New Mexico where consumers can likely purchase Diestel products," but Defendant "does not have the ability to confirm that any products have been purchased at these locations during the class period." (Doc. 57) at 16. Plaintiff, however, argues that "DTR has not provided any supplemental and sworn interrogatory response to explain why there are more New Mexico stores listed as selling Diestel products on its website than in its current sworn interrogatory response." (Doc. 62) at 6. Plaintiff further asserts that Defendant has an obligation to seek responsive information from its distributors to fully respond to this interrogatory.

The Court agrees that Defendant must seek this information from its distributors or explain why it is unable to do so. Defendant must also provide a supplemental interrogatory response explaining the discrepancy between the number of stores listed on its website and the list of stores it provided in response to the interrogatory. The Court grants Plaintiff's Motion to Compel as to this interrogatory.

**G.  Interrogatory No. 8**

Interrogatory No. 8 asks Defendant to state the dates each of its products became available for sale in New Mexico, and, if applicable, the dates Defendant stopped selling them. (Doc. 51) at 11.  Defendant objected for several reasons, and then stated that "it does not sell DTR branded turkey products directly to consumers from physical locations in New Mexico," it "sells its DTR branded turkey products to distributors and retailers, and ships those products to the distributors' or retailers' depots or distribution center," "[s]ome of those depots or distribution centers service the New Mexico area," but it "does not know when a particular DTR branded turkey product is shipped to a physical location in New Mexico for resale to a New Mexico consumer, nor when a consumer purchases a DTR branded product[] from a physical location in New Mexico." *Id.* at 11-12.  Defendant further stated it can ship directly to customers in New Mexico who order from its ecommerce website, and that it will produce sales reports from November 2016 to February 2022 that include sales data from its website, distributors, and retailers, and that this data identifies the turkey products Defendants sold in New Mexico.  *Id.* at 12.

Plaintiff argues that Defendant's response is deficient because Defendant did not identify when its products became available for sale in New Mexico.  (Doc. 51) at 12; (Doc. 62) at 8. The Court finds that Defendant sufficiently responded to this interrogatory by providing sales reports and identifying sales data from Defendant's website, distributors, and retailers that identify the turkey products Defendants sold in New Mexico.  Plaintiff does not explain why identification of specific dates Defendant's products became available for sale in New Mexico is relevant to its claims or defenses, especially since the data Defendant provided would

13

demonstrate which products were available for sale in New Mexico during the relevant time period.  Therefore, the Court denies the Motion to Compel as to this interrogatory.

**H.  RFP No. 1**

Plaintiff seeks Defendant's written document retention policies and procedures.  (Doc. 51) at 13.  In response to the RFP, Defendant did not state whether it had such policies or procedures.  *Id.*  In response to Plaintiff's Motion to Compel, Defendant states that it "does not have a specific document retention and destruction policy and will provide an amended response to RFP NO. 1 confirming this."  (Doc. 57) at 19.  Plaintiff indicates it her reply brief that Defendant has not yet provided this supplemental response, so the Court will grant Plaintiff's Motion to Compel as to this RFP and order Defendant to provide a supplemental response.

**I.  RFP No. 4**

Plaintiff asked Defendant to provide documents "sufficient to show all third parties with whom YOU contracted for services RELATING TO the MARKETING, ADVERTISING, manufacture, development, distribution, or sale of the TURKEY PRODUCTS."  (Doc. 51) at 14. Defendant objected that the RFP was overly broad in scope and time and seeks irrelevant information because it is not tailored to the parties' claims or defenses, the applicable time period, or the products that were made available for purchase in New Mexico.  *Id.*  In response to the Motion to Compel, Defendant explains that it has "clearly identified responsive documents related to public relations in an organized subfolder and produced documents therein which identify relevant third parties contracted to perform services related to marketing and advertising."  (Doc. 57) at 19.  Defendant also supplemented its document production on August 19, 2022 with "the contracts that identify the third parties with whom it has worked in developing and communicating its brand strategy and public relations."  *Id.* at 19-20.

14

Plaintiff argues this response is not sufficient because the RFP sought distribution and sales contracts of the products in question, not just marketing and advertising contracts, and the request "is not limited to New Mexico because Plaintiff has no reason to believe that a company that sells nationwide has any marketing contracts limited to New Mexico."  (Doc. 62) at 9.  The Court first finds that Defendant reasonably limited its production in response to this request to information relating to its products sold in New Mexico.  However, it does not appear that Defendant fully responded to the RFP because it did not include documents relating to the manufacture, development, distribution, or sale of its products.  The Court will grant Plaintiff's Motion to Compel as to this request in part, and Defendant shall provide a supplemental response that includes any contracts for manufacture, development, distribution, or sale of products it sold in New Mexico.

**J.  RFP Nos. 5 and 6**

Request for Production No. 5 seeks "[e]xemplars of all LABELS, ADVERTISEMENTS, packaging, package inserts, and brochures RELATING TO the PRODUCTS during the CLASS PERIOD."  (Doc. 51) at 15.  Subject to its objections, Defendant produced "exemplars of its turkey product labels, packaging, package inserts and consumer facing brochures for products sold in New Mexico for the period of November 2016 to the present that can be obtained through a reasonable search," and an "archived copy of the web pages from its prior website that are in its possession, custody or control."  *Id.* at 15-16.  Defendant stated it would not reproduce copies of its current website, documents linked to its website, or any YouTube videos "because they are equally available to Plaintiff on public websites."  *Id.* at 16.

Request for Production No. 6 seeks all "DOCUMENTS showing the periods of time during which each PRODUCT LABEL or ADVERTISEMENT was introduced, used or

discontinued." *Id.* at 17.  Similar to RFP No. 5, subject to its objections, Defendant produced "copies of its product flyers, product labels, product packaging, package inserts and consumer facing brochures for products sold in New Mexico for the period of November 2016 to the present that can be obtained by a reasonable search," as well as an "archived copy of the web pages from its prior website that are in it possession, custody or control." *Id.* at 17.  Defendant again stated it would not reproduce copies of its current website, documents linked to its website, or any YouTube videos, as they are equally available to Plaintiff on public websites.  *Id.*

Plaintiff argues that it is not clear whether Defendant is withholding any documents subject to its objections, and that Defendant is not exempt from producing documents that are "equally available" Plaintiff, especially since Defendant has not produced or identified the URLs for its current websites or YouTube videos.  (Doc. 51) at 16-17; (Doc. 62) at 9.  The Court finds that Defendant reasonably limited the parameters of its responses to these RFPs to the relevant time period and to products sold in New Mexico.  The Court also finds that Defendant is not required to provide Plaintiff with copies of its current website, documents linked to the current website, or YouTube videos that are currently available to Plaintiff online.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that courts may limit the extent of discovery if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").  However, Defendant's statement that it is producing documents responsive to these RFPs "that can be obtained by a reasonable search" does not sufficiently inform Plaintiff about what search Defendant performed or how Defendant defined what a "reasonable search" is.  In addition, Defendant should produce the URLs for its current websites and YouTube videos.  Accordingly, the Court will grant the Motion to Compel in part

as to these RFPs and Defendant shall state what search or searches it performed to obtain its responsive documents, and provide the URLs for its current websites and YouTube videos.

**K.  RFP No. 9**

Plaintiff asks Defendant to produce "DOCUMENTS CONCERNING the reasons for, plans, proposals, and motivations for any change to the LABEL or ADVERTISING of any PRODUCT."  (Doc. 51) at 17.  Subject to its objections and appropriate search and ESI protocols, Defendant agreed to produce relevant, non-privileged communications relating to advertising in New Mexico from November 2016 to the present.  *Id.* at 18.  Plaintiff argues that Defendant improperly limited its response to advertising in New Mexico, because Defendant sells nationwide, does not have any state-specific advertising campaign, and cannot limit what New Mexico consumers see on the internet.  (Doc. 62) at 10.  The Court will grant the Motion to Compel as to this RFP in that Defendant shall produce information responsive to the RFP that relates to advertising that reached New Mexico consumers, not just advertising that was specifically targeted at New Mexico.

**L.  RFP Nos. 19, 20, and 21**

These RFPs seek information and documents related to the cost of goods and revenue or losses Defendant experienced related to its turkey products that carried the challenged advertising.  (Doc. 51) at 18-20.  In response, Defendant produced its national wholesale sales data that is sortable by state, including New Mexico, for the period of 2016 to 2022.  Defendant additionally produced the following sales data: (1) sales data accessible through Whole Foods Market's vendor portal showing sales to New Mexico consumers during the relevant period; (2) sales data relating to sales to distributors whose distribution centers likely sell into New Mexico; and (3) sales data covering Defendant's ecommerce sales direct to New Mexico consumers.

(Doc. 57) at 22.  Nevertheless, Plaintiff states "it is still unclear if DTR is withholding any responsive documents pursuant to its objections."  (Doc. 62) at 10.  The Court finds that Defendant has sufficiently explained what data it produced and that the information Defendant produced is adequate to respond to these RFPs.  The Court denies the Motion to Compel as to these requests.

**M. RFP No. 22**

Finally, Plaintiff seeks: "All DOCUMENTS sufficient to show during the CLASS PERIOD YOUR sales of PRODUCTS where the end purchasers are in New Mexico; YOUR costs of production, MARKETING, and distribution, and YOUR profit from sale of the PRODUCTS, in such a form as may be distinguished by point-of-sale to the consumer."  (Doc. 51) at 21.  Defendant produced "copies of the sales reports and data DTR is able to access from its ecommerce website and from its distributors and retailers whose areas cover New Mexico for products sold in New Mexico for the period of November 2016 to the present."  *Id.*

Plaintiff contends the information Defendant produced is missing all sales data for 2018, the contract with its distributor, email addresses for New Mexico consumers for the entire class period, and does not outline the price per pound at which the products were sold.  *Id.*  Defendant responds that it supplemented its production to include the missing 2018 sales data, and that it will further supplement its sales reports to include pricing where it is available.  (Doc. 57) at 22.  Defendant argues that a contract with a distributor is not relevant to this RFP, it is not clear what distributor Plaintiff is referring to, and a single contract may not exist because, instead, there may be weekly purchase orders or similar sales documents.  *Id.* at 23.  In her reply, Plaintiff states that because "DTR contends that it does not sell directly to retailers but instead sells through a distributor, the contract with the distributor and any accompanying pricing information such as

18

purchase orders or similar sales documents is included within Request No. 22." (Doc. 62) at 10.

Plaintiff also states that Defendant provided email addresses for online sales directly to New

Mexico consumers for some years but not others, and asks the Court to compel Defendant to

provide complete information for each year of the class period. *Id.*

First, Plaintiff did not clearly request Defendant's contracts with its distributors in this

RFP, and she does not explain why the data provided by Defendant is an insufficient response to

this RFP. Therefore, the Court will deny the Motion to Compel as to Plaintiff's request for

Defendant's contracts with its distributors.[2] Second, since Defendant did not object to Plaintiff's

request for email addresses for online sales directly to New Mexico consumers in each year of

the class period, the Court will grant the Motion to Compel as to that request. Defendant shall

supplement its response to this RFP with those email addresses if they are available.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel, (Doc. 51), is

GRANTED in part as set forth above. Defendant shall provide the supplemental responsive

information by **November 16, 2022**.

IT IS SO ORDERED.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court granted Plaintiff's Motion to Compel as to RFP No. 4, above, and ordered
Defendant to provide contracts for manufacture, development, distribution, or sale of products it
sold in New Mexico, which appears to moot Plaintiff's request here for Defendant's distributor
contracts.