# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**DIESTEL TURKEY RANCH,**<br><br>    Defendant. | **Civil Action No. 20-cv-1213DHU/KRS** |

## DIESTEL TURKEY RANCH'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ESI DISCOVERY

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS .............................................................................................. 2

    A. Plaintiff's Allegations. ......................................................................................... 2

    B. The Present Discovery Dispute. ........................................................................... 3

III. LEGAL ARGUMENT ..................................................................................................... 9

    A. Courts Have Broad Discretion to Limit the Scope of Discovery. ....................... 9

    B. The Court Should Deny Plaintiff's Motion in its Entirety Because Plaintiff's Requested ESI Document Production Is Burdensome, Oppressive, and Irrelevant to Plaintiff's Claims. ............................................................................................. 10

    C. In the Alternative, Diestel's ESI Review Should be Limited to Diestel's Proposed Search Terms and Custodians. ............................................................................ 13

IV. CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Amaya v. Bregman*
   2016 WL 10516103 (D.N.M. Mar. 7, 2016) ............................................................. 15

*Gomez v. Martin Marietta Corp.*
   50 F.3d 1511 (10th Cir. 1995) ................................................................................. 12

*In re Ohio Execution Protocol Litigation*
   845 F.3d 231, 236 (6th Cir. 2016) ............................................................................ 9

*Kennicott v. Sandia Corp.*
   327 F.R.D. 454 (D.N.M. 2018) ................................................................................ 10

*Lee v. Gallup Auto Sales, Inc.*,
   1998 WL 36029906 (D.N.M. Dec. 18, 1998) .......................................................... 11

*Rogers v. Regents of University of New Mexico*
   2004 WL 7337534 (D.N.M., Oct. 22, 2004) ........................................................ 9, 12

*Scales v. J.C. Bradford and Co.*
   925 F.2d 901 (6th Cir. 1991) ............................................................................. 11, 12

*Tanner v. McMurray*
   405 F. Supp. 3d 1115 (D.N.M. 2019) .................................................................. 9, 10

*Tolbert v. Gallup Indian Medical Center*
   555 F.Supp.3d 1207 (D.N.M. 2021) ........................................................................ 10

## RULES

Page

Fed. R. Civ. P. 26 (b)(1) ............................................................................................. 9, 12

Fed. R. Civ. P. 26(b) ...................................................................................................... 10

Fed. R. Civ. P. 26(b)(2)(B) ............................................................................................ 10

## STATUTES

Page

N.M.S.A. § 57-12-10 ..................................................................................................... 10

New Mexico False Advertising Law, §57-15-1 *et seq.* ................................................... 3

New Mexico Unfair Practice Act, §57-12-1 *et seq.* ........................................................ 3

I.     INTRODUCTION

In this action, Plaintiff Cynthia Wetzel alleges that Defendant Diestel Turkey Ranch ("DTR") violated the New Mexico Unfair Practices Act ("NMUPA") by making alleged misrepresentations about its turkeys and farming practices.  She challenges a variety of DTR's marketing statements across several different advertising mediums, including statements on DTR's website, product labels, brochures, customer emails, social media posts and more.  Plaintiff, however, never reviewed many of those marketing statements nor engaged with DTR through different marketing mediums.  For example, she never visited or reviewed the DTR website, did not follow DTR in the media or on social media, was not subscribed to DTR's email list and does not recall ever reviewing a DTR brochure.  As such, those marketing statements could not have caused Plaintiff's alleged injury and cannot serve as the basis for Plaintiff's alleged misrepresentation claims under the NMUPA.

The present discovery dispute concerns Plaintiff's demand that DTR review and produce irrelevant, overly broad, burdensome, and costly electronically stored information ("ESI") related to DTR's website and social media advertising in response to Plaintiff's Request for Productions of Documents, Set One ("RFP, Set One").[1]  In particular, Plaintiff demands DTR process and review 152,674 ESI documents which were located by running Plaintiff's proposed overly broad ESI keyword searches on the email files of several DTR employees.

DTR has already produced thousands of documents in response to Plaintiff's document requests.  The marginal relevance, if any, of documents that might be located through the ESI searches Plaintiff seeks to compel does not justify this discovery nor the burden and expense of undertaking it.  Plaintiff admitted in her September 13, 2022 deposition that she never viewed DTR's website and social media advertising.  Instead, she testified she went to Whole Foods

---

[1] In the present motion, Plaintiff seeks to compel DTR to run Plaintiff's proposed search terms to locate documents responsive to Plaintiff's RFP Nos. 7, 9, and 11.  On the same day Plaintiff filed this motion, DTR filed a motion for protective order largely addressing these same issues, but with an expanded scope. DTR's motion seeks to prevent any ESI discovery in response to Plaintiff's RFP, Set One, or, in the alternative, to allow ESI discovery pursuant to DTR's proposed search terms and custodians with respect to the specific RFPs which the parties had met and conferred: RFP Nos. 7-9, 11-13, and 18.  ECF No. 78.

1

Market to purchase her Thanksgiving turkey based on her belief that Whole Foods Market sold humanely raised meat products. She further testified that she selected a DTR turkey based on in-store signage about the Global Animal Partnership ("GAP") rated meat products sold in Whole Foods Market's meat department. Since the retailer's signage, not DTR's advertising or labeling, caused Plaintiff to make her purchase, the burden and expense of locating, reviewing and producing the ESI regarding DTR's website and social media advertising is disproportionate to the needs of the case and outweighed by any benefits of such searches.

Importantly, DTR has already produced over 9,000 pages of non-ESI discovery in this case, much of which concerns DTR's advertising and labeling. Thus, DTR has not denied Plaintiff discovery on these issues; rather, DTR seeks to cut short Plaintiff's fishing expedition now that the expense and cost of this review is no longer justified in light of Plaintiff's admissions at her deposition. Accordingly, DTR respectfully requests that the Court deny Plaintiff's Motion to Compel. In the alternative, DTR seeks an order limiting any remaining ESI discovery to relevant and responsive documents located in the documents returned by DTR's proposed ESI search terms.

## II.    STATEMENT OF FACTS

**A.    Plaintiff's Allegations.**

Plaintiff's Complaint alleges that DTR's labels and advertising statements communicate to consumers that DTR's products are from its "family run turkey ranch in Sonora, California," "thoughtfully raised," "range grown," "slow grown," "thoughtfully raised on sustainable family farms," raised without antibiotics or chemicals and in conformance with the highest animal welfare standards under the GAP 5-Step Animal Welfare Program ("GAP"). *See e.g.,* ECF No. 1, ¶¶2-3, 32-35, 46, 52-55, 58-60, 63-66, 69-70, 72, 74. Plaintiff asserts that these advertising statements are false and misleading because they mislead consumers as to the origin of DTR's turkeys and suggest to consumers that DTR's turkeys are raised in a manner more humane than typical factory farms or agro-industrial conditions. *Id.*, ¶¶2-4, 36, 44, 47, 61-62, 67-68, 71, 73, 75.

2

Plaintiff alleges DTR communicates these supposedly deceptive statements to consumers across several advertising media, including product labels, product packaging, website pages, brochures, social media posts and online videos.  *See e.g.,* ECF No. 1, ¶¶2, 19, 32-35, 53- 60, 63-66, 69, 72, 74.

Plaintiff claims that in November 2018, she went to a Whole Foods Market grocery store in Santa Fe to purchase a Thanksgiving turkey.  ECF No. 1, ¶11.  At the store, Plaintiff viewed signs regarding the store's commitment to animal welfare standards and GAP's animal welfare ratings.  *Id.*, ¶¶12, 16.  Plaintiff alleges that she selected a DTR turkey "because of the rating system number applied to the turkey." *Id.*, ¶16.  Plaintiff claims she "relied on both Whole Foods and [DTR's] representations regarding high animal welfare standards in deciding which turkey product to purchase and how much to pay."  *Id.*, ¶18.  Plaintiff further claims she "was misled and deceived by the representations made by Whole Foods and [DTR] regarding the rating system, for animals sold at Whole Foods and rating on the actual product."  *Id.*, ¶20.  "If Plaintiff had known the truth about Whole Foods animal rating system and [DTR] turkeys, Plaintiff would not have bought [a DTR turkey] at all or would not have paid as much as she did."  *Id.*, ¶21.

Based on DTR's alleged misrepresentations, Plaintiff has brought a consumer class action for violation of the New Mexico Unfair Practice Act, §57-12-1 *et seq.*, New Mexico False Advertising Law, §57-15-1 *et seq*. ("NMFAL") and common law unjust enrichment.  DTR has a pending motion to dismiss Plaintiff's claims.  *See* ECF Nos. 1, 8, and 9.

**B.    The Present Discovery Dispute.**

On February 8, 2022, Plaintiff served her RFP, Set One.  *See* Declaration of David Adams ("Adams Decl."), ¶2.  In her RFP, Set One, Plaintiff requests production of *all documents*, including ESI, related to DTR's labels and advertising.  *Ibid.*  On April 7, 2022, DTR objected and responded to Plaintiff's RFP, Set One, agreeing to produce certain relevant and responsive documents.  *Id.* ¶3; ECF No. 77-1 [DTR's Objections to RFP, Set One].  On July 6, 2022, DTR Produced 8,000 pages of documents, including statements issued by DTR on its

3

website and other platforms (DTR 000001-32), promotional videos produced in native form (DRT 000033-39), label approval documents for the products at issue in this litigation (DTR 000040-479), various documents concerning legal and administrative issues (DTR 000480-625), summaries of relevant media activity and 51 press releases, many of which list the date and contact information for the applicable media contact responsible for issuing the release (DTR 000626-797), vendor supply agreements (DTR 000780-804), 66 emails sent to Diestel Turkey's website mailing list (DTR 000805-1054), copies of all point of sale materials, including brochures and flyers (DTR 001055-1257), press releases and other miscellaneous promotional materials (DTR 001259-1314), archived images of DTR's website (DTR 001318-1404), USDA correspondence and related materials (DTR 001405-5900), various power point presentations (DTR 005902-6011), correspondence and documents regarding DTR's live operations (DTR 006012-8512), and a collection of corporate documents (including corporate structure information, responsive New Mexico sales and distribution information) (DTR 008513-46). *Id.* ¶3.

Despite DTR's production, on August 8, 2022, Plaintiff filed a motion to compel contending that some of DTR's responses were insufficient. *Id.* ¶4. On August 19, 2022, DTR served Plaintiff with a further production of documents consisting of updated sales data relating to DTR's southwest distributor that included 2018 (DTR 008548), additional product label approvals (DTR 008549-8598) and the contracts and documents related to various brand strategy projects (DTR 008599-8927). *Ibid*.

That same day, the parties entered into a Stipulation (ECF No. 56) that gives Plaintiff's counsel access to the more than 121,880 pages of documents that DTR produced in the earlier California false advertising case entitled *Direct Action Everywhere SF Bay Area v. Diestel Turkey Ranch*, Alameda County Superior Court, Case No. RG17847475 (the "DxE Case"). *Ibid*. These documents include substantial ESI discovery regarding the same issues, timeframe, and ESI custodians at issue in this motion. *Ibid*.

4

On November 16, 2022, Magistrate Judge Kevin Sweazea ruled on Plaintiff's Motion, granting it in limited parts. *Id.* ¶5. On November 16, 2022, pursuant to the Court's order, DTR supplemented its responses to Plaintiff's RFP, Set One and made an additional production of documents bringing the total number of pages produced in the case to over 9,000 (excluding the additional documents produced from the DxE Case). *Ibid.*

The present discovery dispute concerns Plaintiff's demand that DTR process, locate, review and produce non-privileged, relevant and responsive documents from almost 152,674 ESI documents located using Plaintiff's search terms in response to her RFP Nos. 7, 9, and 11. This is no small task, as the 152,674 documents concern DTR's confidential business operations and will need to be carefully reviewed to ensure that Plaintiff does not gain cart blanch access to sensitive business documents that are not relevant or responsive to Plaintiff's RFPs, and to screen for privielged documents. *Id.* ¶6. DTR thus contends that Plaintiff's ESI discovery demands are burdensome and oppressive and not proportional to the needs of the case.

Although DTR initially agreed to conduct reasonable ESI discovery regarding these RFPs, it became apparent that the burden and expense of this review was no longer justified given Plaintiff deposition testimony, taken on September 13, 2022, that she that she selected a DTR turkey because it was sold at Whole Foods Market grocery stores and Natural Grocer grocery stores and because it had a GAP rating. *See* Exhibit 1 [Deposition of Cynthia Wetzel] at 72:7-73:10, attached to the Adams Decl.[2] Plaintiff also testified that she has never seen DTR's website, videos, social media posts nor mailings. *Id*. at 136:12-138:7. Plaintiff also testified that she could not recall whether she reviewed any brochures regarding DTR's products. *Id*. at 100:21-101:5.

Plaintiff provided DTR with a list of search terms that she demands DTR use to search its ESI for documents responsive to her RFP, Set One. *See* Adams Decl., ¶7; Ex. 2, [Parties meet

---

[2] Plaintiff did testify that once she had decided to purchase a DTR turkey based on the retailer's reputation and the product's GAP rating, that she also reviewed the product's label in making her purchase. *Id*.at 100:21-101:5. Plaintiff, however, was clear that the ultimate reason she walked in to buy a turkey from Whole Foods Market in November of 2018 was because she trusted the GAP rating system. *Id.,* 110:13-111:25.

5

and confer email chain setting for Plaintiff's proposed search terms], pp.4-6. Plaintiff's search terms are uniformly overbroad and include search terms for "PR", "media," "Brochure" and "Pamphlet" statements which Plaintiff did not review, and searches for customer complaints that are not limited to New Mexico consumers. *Ibid.* Plaintiff's search terms for all the disputed RFPs yield 152,674 documents with families, which is approximately 102.81 gigabytes of data. *Id.* ¶8. DTR's ESI vendor estimates that processing costs necessary to upload these documents into DTR's review platform are approximately $17,991 with additional hosting costs of $1,542 per month. *Ibid.*[3]

While DTR believes that no ESI discovery on these issues is appropriate, it offered to search its ESI using more relevant and restrictive search terms that would more closely target the hit results to Plaintiff's claims. Adams Decl., ¶ 9, Ex. 2, pp.1-3 [Parties' email chain correspondence setting for DTR's proposed search terms]. For example, DTR's search terms, in contrast to Plaintiff's search terms, do not include the terms "advertise," "PR," "media," "brochure," or "pamphlet" because Plaintiff testified that she has never viewed these media. DTR initially proposed to Plaintiff that all searches for the RFPs be limited to documents that contained search hits for the specific label advertising statements that Plaintiff testified she relied on in making her purchase. *Id.*, ¶9, Ex. 2, pp.3-6 (proposing search terms all containing the limitation that responsive documents must contain a search hit for one of the following: "Thoughtfully Raised on Sustainable Family Farms" or "Raised Without Antibiotics" or (slow /2 grow) or "Family Secrets" or "Family Farms" or "Sonora California"). These search terms returned zero document hits for RFP Nos. 7-9, and 11. *Id.* ¶9. As such, in an effort to reach a fair compromise with Plaintiff, DTR worked with its ESI vendor on ways to revise the search terms

---

[3] DTR stated in its Motion for Protective Order that that 469,820 document hits returned by Plaintiff's search terms for RFP Nos. 7-9, 11-13, and 18 (i.e., the search terms at issue in DTR's Motion for Protective Order) comprised approximately 94 gigabytes of data. ECF No. 78-2, ¶8. This figure was provided before these documents had been uploaded and analyzed by DTR's discovery vendor, and thus the approximate gigabyte amount was arrived at by employing the industry standard assumption that there are 5,000 documents per gigabyte. Adams Decl., ¶8. After having uploaded and analyzed the documents returned by Plaintiff's proposed search hits, DTR's vendor has determined that the 152,674 documents returned by Plaintiff's search terms for RFP Nos. 7, 9, 11 (i.e., the search terms at issue in this motion) comprised approximately 102.81 gigabytes of data. *Ibid.* Contrastingly, the 469,820 documents that are the subject of DTR's Motion for Protective Order actually comprise 268.14 gigabytes. *Ibid.*

to locate potentially responsive information without limiting the searches by using terms based on the specific label statements Plaintiff reviewed. *Ibid.*

Plaintiff's motion only seeks to compel DTR to search documents returned by Plaintiff's proposed search terms to RFP Nos. 7, 9, and 11. The parties' respective proposed search terms, and the number of document hits returned, for these RFPs are as follows:

> **REQUEST NO. 7:** All DOCUMENTS CONCERNING any contemplated, potential, or actual changes, revisions or modifications to the PRODUCTS' LABELS or ADVERTISEMENTS during the CLASS PERIOD, including drafts of such DOCUMENTS.
>
> **Plaintiff's Search Terms** - [label! or advertis! or packag! or box! or "PR" or Public Relations or media or Brochure! or Pamphlet! or message! Or sell sheet!] /7 [change! or new or update or alter or modify or correct or fix]; Centric; Moxie; Concentra; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations
>
> **Plaintiff's Custodians** – Heidi Diestel; Jared Orrock; Amber Baily
>
> **Plaintiff's Document Hits** – Total (124,655); Heidi Diestel (60,031); Jared Orrock (35,350); Amber Baily (29,274).
>
> **Diestel's Search Terms** – [label! or packag! or box! or message!] /7 [change! or new or update or alter or modify or correct or fix] /7 [Centric or Moxie]
>
> **Diestel's Custodians** – Heidi Diestel; Jared Orrock
>
> **Diestel's Document Hits** – Total (68); Heidi Diestel (40); Jared Orrock (28); Amber Baily (0).
>
> **REQUEST NO. 9:** For DOCUMENTS CONCERNING the reasons for, plans, proposals, and motivations for any change to the LABEL or ADVERTISING of any PRODUCT.
>
> **Plaintiff's Search Terms** -[label! or advertis! or packag! or box! or "PR" or Public Relations or media or Brochure! or Pamphlet! or message!] /7 [change! or new or update or alter or modify or correct or fix or plan!]; Centric; Moxie; Concentra; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations
>
> **Plaintiff's Custodian** – Heidi Diestel; Jared Orrock; Amber Bailey.
>
> **Plaintiff's Document Hits** – Total (135,883); Heidi Diestel (65,353); Jared Orrock (39,114); Amber Baily (31,416).
>
> **Diestel's Search Terms** – [label! or or packag! or box! or message!] /7 [change! or new or update or alter or modify or correct or fix or plan!] /7 [Centric or Moxie]

      **Diestel's Custodian** – Heidi Diestel; Jared Orrock

      **Diestel's Document Hits –** Total (106); Heidi Diestel (56); Jared Orrock (50); Amber Baily (0).

      <u>REQUEST NO. 11:</u> All DOCUMENTS CONCERNING YOUR strategy for MARKETING, ADVERTISING, or selling the TURKEY PRODUCTS in the United Sates and New Mexico during the CLASS PERIOD.

      **Plaintiff's Search Terms** - [consumer* or ads or media or pitch or press or press release or public relations or facebook or Instagram or twitter or news or TV or television or brochure! or pamphlet!] /5 [strategy or approach or plan or message or convey or presence or reflect]; market!; advertis!; Centric; Moxie; Concentra; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations

      **Plaintiff's Custodians** – Heidi Diestel; Jared Orrock; Amber Bailey.

      **Diestel's Search Terms** – [consumer* (and label or package)] /5 [strategy or approach or plan or message or convey or presence or reflect] /5 [market! or advertis! or Centric or Moxie]

      **Diestel's Custodians** – Heidi Diestel; Jared Orrock

      **Diestel's Document Hits –** Total (15); Heidi Diestel (15); Jared Orrock (0); Amber Baily (0).

Adams Decl., at ¶10, Ex. 2, pp.3-6.

    DTR's counsel estimates that locating non-privileged, relevant and responsive documents within the 152,674 documents returned by Plaintiff's search terms for RFP Nos. 7, 9, and 11 would take approximately 1,520 hours of review time. Adams Decl., ¶11. In contrast, the review of the documents from DTR's search terms for RFP Nos. 7 (68 documents), 9 (106 documents), and 11 (15 documents) is far less burdensome. *Ibid*.

    Plaintiff's counsel and DTR's counsel met and conferred by telephone on December 9, 2022, and discussed the burdens and costs of accessing, retrieving, and producing ESI. Adams Decl., ¶12. Counsel further conferred over email on December 16, 2022. *Ibid.* The parties, however, were unable to resolve their dispute. *Ibid.* Plaintiff filed the present motion on December 20, 2022 seeking to compel DTR to apply Plaintiff's search terms and custodians to RFP Nos. 7, 9, and 11. *Ibid.* That same day, DTR filed a motion for protective order seeking to prevent any ESI discovery in response to Plaintiff's RFP, Set One, or, in the alternative, to limit

8

the ESI discovery to DTR's proposed search terms and custodians with respect to RFP Nos. 7-9, 11-13, and 18.  *Ibid.*; ECF No. 78.

### III.     LEGAL ARGUMENT

**A.     Courts Have Broad Discretion to Limit the Scope of Discovery.**

Discovery's proper scope is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1).  In determining whether the requested discovery is *proportional* the court evaluates the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (b)(1).  *See Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1177–78 (D.N.M. 2019); *Rogers v. Regents of University of New Mexico* (D.N.M., Oct. 22, 2004, No. CV 04-216 JC/LFG) 2004 WL 7337534, at *2.

A court has broad discretion to limit discovery: "district courts have discretion to limit the scope of discovery when the information sought is overbroad or unduly burdensome." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016).  The amendments to the discovery rules have given judges more discretion to limit overly broad and burdensome discovery:

> Due to abusive, unchecked litigation practices that significantly increase the costs of litigation, congest court dockets, and contribute to the delays in the final disposition of lawsuits, Congress enacted the CJRA [Civil Justice Reform Act]. Subsequently, the Federal Rules of Civil Procedure were modified to dovetail with this Act. Since the adoption of the CJRA and the revision of the Federal Rules of Civil Procedure, discovery has been significantly limited. Indeed, the Advisory Notes to Fed. R. Civ. P. 26 indicate that the change in the procedural rules serve as a signal to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses not already identified in the pleadings. The revised rules of procedure, specifically Fed. R. Civ. P. 26, vest the court with broad discretion in narrowly tailoring discovery and in dictating the sequence of discovery." *Rogers v. Regents of University of New Mexico, supra,* 2004 WL 7337534, at *2.

9

Indeed, "[a] district court is not . . . required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim. Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (Internal citations omitted.) *Tanner,* 405 F. Supp. 3d at 1178

Courts should be especially attentive to the burdens of producing ESI: "[c]omputer-based methods of searching such information continue to develop, particularly for cases involving large volumes of electronically stored information. Courts and parties should be willing to consider the opportunities for reducing the burden or expense of discovery as reliable means of searching electronically stored information become available." *Tolbert v. Gallup Indian Medical Center* 555 F.Supp.3d 1207, 1233–1234 (D.N.M. 2021), quoting Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. Moreover, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). A party moving to compel further responses to written discovery bears the burden of establishing the requested materials are relevant. *Kennicott v. Sandia Corp.*, No. CV 17-188 JB/GJF, 2018 WL 2206880, at *2 (D.N.M. May 14, 2018), aff'd, 327 F.R.D. 454 (D.N.M. 2018).

**B.     The Court Should Deny Plaintiff's Motion in its Entirety Because Plaintiff's Requested ESI Document Production Is Burdensome, Oppressive, and Irrelevant to Plaintiff's Claims.**

In this case, the Court should deny Plaintiff's motion to compel in its entirety and hold that DTR need not conduct any further ESI discovery because Plaintiff demands burdensome and expensive ESI that is not relevant to her claims. Plaintiff's NMUPA claims require she establish she suffered "a loss of money or property, real or personal, *as a result of* any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act." (Emphasis added.) N.M.S.A. § 57-12-10. In her Complaint, Plaintiff alleges she "was misled and deceived by the representations made by Whole Foods and [DTR] regarding the rating

system for animals sold at Whole Foods and the rating on the actual product." ECF No. 1, ¶20. She claims she suffered a loss of money because if she "had known the truth about Whole Foods animal rating system and [DTR's] turkeys, Plaintiff would not have bought [a DTR turkey] at all or would not have paid as much as she did for [a DTR turkey]." *Id.*, ¶21.

While Plaintiff's Complaint references many representations and many different advertising media, Plaintiff admitted at deposition that she only viewed GAP signage in a Whole Foods Market grocery store and the label on the DTR turkey she purchased. Plaintiff further admitted that she never saw any representations made on DTR's brochures, website, social media, or mailing lists. Because she never viewed DTR's brochures, website, social media, or mailings, DTR's statement through those advertising mediums could not have misled her nor caused her alleged injury. Accordingly, DTR's statements in its brochures, website, social media, and mailing lists are irrelevant to Plaintiff's claims and theory of liability.

Plaintiff may argue that because she does not need to show reliance on DTR's alleged misrepresentations, even alleged misrepresentations she has never viewed are relevant. While Plaintiff does not need to show reliance, she does need to show a *causal* connection between the allegedly false and misleading statements and her losses. As one court explained, "it is difficult to conceive of a false or misleading statement resulting in damages when the statement is not believed or relied on." *Lee v. Gallup Auto Sales, Inc.*, No. CV 96-1525 WWD/LCS, 1998 WL 36029906, at *6 (D.N.M. Dec. 18, 1998).

When balancing a plaintiff's need for discovery with the burdens placed on defendant, it is appropriate to limit plaintiff's discovery to the allegations and theory of liability in her complaint. For example, in *Scales v. J.C. Bradford and Co*., a gender discrimination case, the court limited plaintiff's discovery of employment records to the department and city where she worked. *Scales v. J.C. Bradford and Co*. 925 F.2d 901, 906–907 (6th Cir. 1991). The court observed that while "[i]t is well-settled that information concerning an employer's general employment practices is relevant even to a Title VII individual disparate treatment claim. . . this desire to allow broad discovery is not without limits and the trial court is given wide discretion in

11

balancing the needs and rights of both plaintiff and defendant." *Id.* Because "[t]he focus of plaintiff's complaint was on the treatment she received from Bradford while working in its municipal bond department in Nashville . . .discovery may be properly limited to the employing unit." *Id.* at 907. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (limiting plaintiff's discovery to strike balance between plaintiff's needs and burden on defendant); *Rogers*, 2004 WL 7337534, at *2 (limiting an expensive and time-consuming production request where the burdens, costs, and delays of producing the information outweigh the benefits to plaintiff).

Here, Plaintiff's demand that DTR review 152,674 documents returned through Plaintiff's ESI searches is burdensome, oppressive and not proportional to the needs to the case. Fed. R. Civ. P. 26(b)(1). ESI related to advertising that Plaintiff has never viewed is irrelevant because Plaintiff did not suffer any damages as a result of such advertising. On the other hand, the burden and expense to DTR of providing this information is enormous. DTR estimates that it will take approximately 1,520 hours of review to locate non-privileged, relevant and responsive documents within this data set. This would not only result in staggering costs to DTR, but also be virtually impossible to complete before the January 20, 2023 close of class discovery. Further before DTR even spends a dime on attorneys' fees to review this gargantuan document set, it will be forced to spend approximately $17,991 to upload these documents to its ESI review platform and then pay monthly hosting costs of approximately $1,542.

Given the minimal relevance of any potentially responsive documents, the burden and expense of production far outweighs any benefit. Accordingly, DTR respectfully asks that the Court deny Plaintiff's motion and limit DTR's document production in response to Plaintiff's RFP, Set One to the 9,000 pages of non-ESI documents DTR has already produced in this case, and the 121,880 pages of documents from the DxE Case to which Plaintiff has been granted access.

///

///

## C.     In the Alternative, Diestel's ESI Review Should be Limited to Diestel's Proposed Search Terms and Custodians.

Alternatively, DTR's ESI production for RFP Nos. 7, 9, and 11 should be limited to any non-privileged, relevant and responsive documents located in the documents returned by DTR's proposed search terms, which were crafted to focus on documents regarding product labels (i.e., the material Plaintiff reviewed in making her purchase).

RFP No. 7 seeks documents regarding changes to DTR's labels and advertising, and RFP No. 9 seeks the documents regarding the reasons and motivations for such changes.  RFP No. 11 seeks documents concerning DTR's strategy for marking, advertising, and selling its products.

The parties' search terms for these RFPs are identical, except that Plaintiffs adds additional search terms that expand the scope of each search to include forms of advertising Plaintiff never reviewed[4] and companies that only worked on forms of advertising that Plaintiff never reviewed (Mailchimp [platform used to send emails to DTR's customers], Reach Public Relations, and Access Public Relations).  Adams Decl., at Ex. 2, pp.1-6.  As a result, Plaintiff's overbroad search terms return a total of 124,655 document hits for RFP No. 7, 135,883 document hits for RFP No. 8, and 34,168 document hits for RFP No. 11.  *Id.* ¶10.  The total number of documents, excluding duplicates, and including attachments to responsive emails for all these searches is 152,674.  *Id.* ¶11.

As explained above, the time and cost to upload and review these documents is significant.  These costs are simply not justified given the fact no documents regarding non-label advertising are relevant to Plaintiff's claims or theory of liability.

---

[4] Plaintiffs proposed search terms for RFP Nos. 7 and 8 contain extra search terms for ""PR" or Public Relations or media or Brochure! or Pamphlet! or message! Or sell sheet!" and RFP No. 11 contains extra search terms for "ads or media or pitch or press or press release or public relations or facebook or Instagram or twitter or news or TV or television or brochure! or pamphlet!".  Adams Decl., Ex. 2, pp.1-6.

13

Contrastingly, DTR's search terms are limited to the form of advertising Plaintiff testified she reviewed in making her purchase – i.e, DTR's product labels. *Id*. at Ex. 1, pp 100:21-101:5, 136:12-138:7. The cost to upload and host these documents and review them for privilege, relevance and responsiveness are significantly lower and far more proportional to the needs of this case.

Plaintiff will likely argue that DTR's proposed search terms returned an unreasonably low number of search hits: RFP No. 7 (68); RFP No. 9 (106); RFP No. 11 (15). This argument fails for several reasons. First, DTR's search terms are reasonable regardless of their returned hits because they are targeted at locating the documents relevant to Plaintiff's claims – i.e., documents regarding changes to the advertising Plaintiff actually saw, and the reasons for these changes.

Second, DTR has worked in good faith to refine and expand its search terms for these RFPs. DTR initially proposed *more* constrictive search terms that were limited not only by the type of advertising Plaintiff reviewed (i.e., product labels), but also by the specific statements Plaintiff testified she reviewed on the label of the product she purchased. DTR removed the second limitation from its search terms in an effort to compromise with Plaintiff. DTR's limited search terms thus represent a good faith attempt to conduct reasonable ESI discovery in this case.

Third, Plaintiff's search terms are overly broad and unnecessary in the context of each disputed RFP. As to RFP No. 7, DTR has *already* produced all label approvals in its possession for the products at issue in this case. *See* DTR 008549-8598, DTR 000040-479. Any changes to the product labels responsive to RFP No. 7 are covered in those documents. ESI discovery is not necessary to determine how these labels changed.

As to RFP Nos. 9 and 11, DTR is unlikely to have significant email traffic regarding the reasons for changing product labels and its branding strategy generally because it is a small

family-run company where decisions are not made via a flurry of redundant internal emails between competing department heads and subordinates; rather, they are made in person by the members of the family. For instance, Heidi Diestel has testified in a previous case that the decision to use the phrase "Thoughtfully Raised" in Diestel's branding was made collaboratively by Heidi and her family around the dinner table. Adams Decl., ¶13, Ex.3, pp. 77:22-78:17.[5] In short, DTR's search terms for RFP No. 9 and 11 are fair, proportional, and return the expected number of hits for responsive content given the circumstances.

Further DTR has already produced numerous non-ESI documents in response to this RFP No. 11 such as statements issued by DTR on its website and other platforms (DTR 000001-32), promotional videos produced in native form (DRT 000033-39), summaries of relevant media activity and 51 press releases, many of which list the date and contact information for the applicable media contact responsible for issuing the release (DTR 000626-797), 66 emails sent to DTR's website mailing list (DTR 000805-1054), copies of all point of sale materials, including brochures and flyers (DTR 001055-1257), press releases and other miscellaneous promotional materials (DTR 001259-1314), archived images of DTR's website (DTR 001318-1404), various power point presentations (DTR 005902-6011), and the contracts and documents related to various brand strategy projects (DTR 008599-8927). Adams Decl., ¶¶3-4. That is in addition to the thousands of pages of ESI documents, much of which concern DTR's advertising strategy, produced in the DxE Case to which Plaintiff has access. *Id.* ¶4. ESI discovery is not necessary.

Plaintiff also contends that Amber Baily is a proper custodian and that the parties should run their proposed search terms in her email files to return potentially responsive documents.

---

[5] Ms. Diestel's testimony from the DxE Case – in which the plaintiffs were represented by one of Plaintiff's attorneys in the present matter - is not inadmissible hearsay for purposes of this motion. *Amaya v. Bregman*, No. 14-CV-0599 WJ/SMV, 2016 WL 10516103, at *2 (D.N.M. Mar. 7, 2016) (hearsay evidence admissible in discovery disputes);

15

Not so. Amber Baily is a sales representative who interfaces with retailers and distributors, not end consumers. Adams Decl. ¶13. Plaintiff does not attach any evidence to support the inference that Ms. Baily's correspondence involves complaints or feedback from DTR's consumers, and therefore fails to carry her burden on this point.[6] Further, such correspondence would not even be responsive to RFP Nos. 7, 9 or 11 because it would not involve a label change, the reasons for a label change, or DTR's advertising strategy. Indeed, Ms. Baily is clearly *not* in a position to possess documents regarding DTRs label changes, the reasons supporting them, of DTR's advertising strategy because DTR's targeted search terms for responsive documents to RFP Nos. 7, 9, and 11 returned zero (0) document hits within Amber Baily's custodian file.

## IV.   CONCLUSION

For the reasons stated herein, DTR asks the Court deny Plaintiff's Motion to Compel, or in the alternative, issue an order only requiring DTR to review and produce ESI in accordance with its proposed search terms for RFP Nos. 7, 9, and 11.

Dated:  January 3, 2023

BLAXTER | BLACKMAN LLP

*/s/ David P. Adams*

BRIAN R. BLACKMAN
DAVID P. ADAMS
610 Montgomery Street, Suite 1110
San Francisco, California 94111
Tel: (415) 500-7704
Email:  bblackman@blaxterlaw.com;
dadams@blaxterlaw.com

*Attorneys for Defendant Diestel Turkey Ranch*

---

[6] Plaintiff possesses numerous pieces of correspondence between Ms. Baily and DTR from the *DxE Case* production. Had this correspondence supported Plaintiff's argument she could have attached it in support of her motion. She chose not to. Adams Decl. ¶14.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY, that on January 3, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Gretchen Elsner<br>ELSNER LAW & POLICY, LLC<br>314 South Guadalupe Street, Suite 123<br>Santa Fe, NM 87501<br>Telephone: (505) 303-0980<br>Email: gretchen@elsnerlaw.org | Timothy L. Sifers<br>Nathaniel K. Scearcy<br>THE POTTS LAW FIRM, LLP<br>1901 W. 47th Place, Suite 210<br>Westwood, KS 66205<br>Telephone: (816) 931-2230<br>Email: tsifers@potts-law.com<br>nscearcy@potts-law.com |

      I declare under penalty of perjury under the laws of the United States of America that the above it true and correct. Executed on January 3, 2022, in San Francisco, California.

                                            */s/ DAVID P. ADAMS*
                                            DAVID P. ADAMS