UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **DIESTEL TURKEY RANCH,** <br><br> Defendant. | Case No.: 20-cv-1213 DHU-KRS <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF CYNTHIA WETZEL'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

COMES NOW, Plaintiff Cynthia Wetzel, by and through counsel, and responds in opposition to Defendant Diestel Turkey Ranch's Motion for Protective Order and states the following in support:

**Introduction**

This is a consumer class action case in which Plaintiff brings claims against Defendant Diestel Turkey Ranch ("Diestel" or "DTR") for its deceptive and misleading marketing, advertising, and labeling of its turkey products. Simply, Diestel makes representations regarding the characteristics of its turkey products that are not accurate and mislead consumers into purchasing its products. Plaintiff, as one of those consumers, initiated the current action bringing claims for violations of the Unfair Practices Act, False Advertising Law, breach of warranties, and unjust enrichment.

The dispute at issue involves the production of electronically stored information ("ESI") by Defendant. Specifically, the parties have reached an impasse as to the scope and degree of the search responsive to Plaintiff's First Requests for Production of Documents Nos. 7, 9, and

11.[1] The Requests and proposed terms are as follows:

**REQUEST NO. 7:** All DOCUMENTS CONCERNING any contemplated, potential, or actual changes, revisions or modifications to the PRODUCTS' LABELS or ADVERTISEMENTS during the CLASS PERIOD, including drafts of such DOCUMENTS.

\*\*\*

Plaintiff's Search Terms -–[label! or advertis! or packag! or box! or "PR" or Public Relations or media or Brochure! or Pamphlet! or message! Or sell sheet!] /7 [change! or new or update or alter or modify or correct or fix]; Centric; Moxie; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations

Plaintiff's Custodians – Heidi Diestel; Jared Orrock; Amber Bailey

\*\*\*

Diestel's Search Terms – [label! or packag! or box! or message!] /7 [change! or new or update or alter or modify or correct or fix] /7 [Centric or Moxie]

Diestel's Custodians – Heidi Diestel; Jared Orrock

---

**REQUEST NO. 9:** All DOCUMENTS CONCERNING the reasons for, plans, proposals, and motivations for any change to the LABEL or ADVERTISING of any PRODUCT.

\*\*\*

Plaintiff's Search Terms -[label! or advertis! or packag! or box! or "PR" or Public Relations or media or Brochure! or Pamphlet! or message!] /7 [change! or new or update or alter or modify or correct or fix or plan!]; Centric; Moxie; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations

Plaintiff's Custodians – Heidi Diestel; Jared Orrock; Amber Bailey.
\*\*\*

Diestel's Search Terms – [label! or or packag! or box! or message!] /7 [change! or new or update or alter or modify or correct or fix or plan!] /7 [Centric or Moxie]

Diestel's Custodians – Heidi Diestel; Jared Orrock

\*\*\*

---

[1] Defendant's Motion seeks a protective order from all ESI searches responsive to Plaintiff's Requests. However, not only has Diestel indicated that an ESI search will be conducted in its responses to Plaintiff's Requests, but its counsel's December 16, 2022 email indicates that the parties are not in dispute as to the terms and custodians to be used for Requests Nos. 8, 12, 13, and 18. See Ex. A.

**REQUEST NO. 11:** All DOCUMENTS CONCERNING YOUR strategy for MARKETING, ADVERTISING, or selling the TURKEY PRODUCTS in the United Sates and New Mexico during the CLASS PERIOD.

***

Plaintiff's Search Terms - [consumer* or ads or media or pitch or press or press release or public relations or facebook or Instagram or twitter or news or TV or television or brochure! or pamphlet!] /5 [strategy or approach or plan or message or convey or presence or reflect]; market!; advertis!; Centric; Moxie; Mail Chimp; Mailchimp; Reach Public Relations; Access Public Relations

Plaintiff's Custodians – Heidi Diestel; Jared Orrock; Amber Bailey.

***

Diestel's Search Terms – [consumer* (and label or package)] /5 [strategy or approach or plan or message or convey or presence or reflect] /5 [market! or advertis! or Centric or Moxie]

Diestel's Custodian – Heidi Diestel; Jared Orrock

Plaintiff's search proposal is narrow and tailored to seek discoverable information related to the claims and defenses in this lawsuit. Meanwhile, Diestel's search terms are inappropriately limited given what Plaintiff has the burden to prove and therefore inadequate for the needs of the case. Diestel's contention that Plaintiff's proposed terms are prohibitively costly is both exaggerated and, if anything, a consequence of its own ESI vendor preference. Plaintiff's proposal correctly seeks information relevant to the proposed class in advance of the class certification motion, and not just information that pertains to Plaintiff's individual experience. Finally, New Mexico case law addressing the Unfair Practices Act (UPA) confirms that what Plaintiff relied on when making her purchase is inconsequential to the resolution of any UPA claims, whether the claims are individual or for the class. However, especially in a class case, what Plaintiff individually relied on is not a basis for narrowing discovery into Defendant's deceptive practices to an entire consumer class.  For these reasons, Diestel's Motion for Protective Order should be denied.

**Legal Standard and Argument**

A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed for pretrial discovery purposes. As a general proposition, "[a] request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *In re Urethane Antitrust Litigation*, 261 FRD 570, 573 (D. Kan. 2009).

The Federal Rules of Civil Procedure give courts the discretion, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden of demonstrating good cause for its entry. *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005). Good cause requires "a showing of particular and specific facts pointing to the need for a protective order, not just stereotyped and conclusory statements or ordinary garden variety boilerplate good cause facts which will exist in most civil litigation." *Laul v. Los Alamos Nat'l Laboratories*, 1:16-cv-1017 JAP/KBM, 2017 WL 5129002, at *1 (D.N.M. Nov. 3, 2017) (internal quotation marks and citation omitted). Further, the party seeking the protective order must show "that disclosure will result in a clearly defined and serious injury[.]" *Aguilar v. New Mexico*, 1:14-cv-572 JAP/GBW, 2015 WL 13662790, at *1 (D.N.M. June 26, 2015).

B. Cost

Diestel's unsubstantiated cost estimates appear much higher than industry standard considering the amount of data in dispute. Diestel alleges that it will be prohibitively expensive

to search using Plaintiff's terms. Diestel estimates that just to upload these documents will cost approximately $16,450 with additional hosting costs of $1,410 per month. *See Adams Declaration*; ECF 78-2 at 4.

Using Diestel's estimated data, Plaintiff's counsel reached out to their own ESI vendors for estimates. GoldFynch, for example, quoted $600 per month to host 95 gigabytes of data with no uploading or processing fee.  See Ex. B. DTR or its counsel may have a preferred ESI vendor, but DTR's bloated cost does not constitute good cause for issuing a protective order when other reasonable alternatives exist to comply with discovery obligations. Accordingly, cost is a red herring in this analysis and Defendant's contentions on this point should be disregarded.

Diestel's time and costs estimates also appear to be a problem of its own making. Plaintiff sought ESI from only three custodians: Heidi Diestel Orrock, Jared Orrock and Amber Bailey. Diestel fails to advise the court that its estimate of 94 GB of data and the attendant time and cost estimate is based on the entire company's email accounts, not just the three custodians Plaintiff sought.[2] Diestel's expansion of the number of custodians does not constitute good cause for granting a protective order for the narrow set of ESI sought by Plaintiff.

    C. <u>Relevancy</u>

Diestel bases the majority of its argument around relevancy. Diestel contends that because Plaintiff did not view every single advertisement and piece of marketing that DTR produced about its turkey products, any ESI pertaining to those mediums is irrelevant. For

---

[2] Plaintiff is unclear as to which custodians' emails are being searched in Diestel's proposal. DTR initially pulled over 270 gigabytes of data from the company's entire server, not just the custodians sought by Plaintiff. Plaintiff does not know if the estimated 94 gigabytes encompass a search of the entire archive or is limited to the three custodians that Plaintiff is seeking. Plaintiff bases this response contention on Diestel searching the entire archive unrestricted by custodians.

example, DTR seeks to avoid producing any ESI about its substantial online marketing by arguing that the individual Plaintiff did not rely on DTR's online marketing.

First, Diestel's argument ignores that this is a class action matter, and any inquiry into relevancy is based on the class and not the individual named plaintiff. Defendant seeks to limit the scope of discovery that Plaintiff is entitled to based on her own individual experience purchasing Diestel's products. However, this is a class action, and when the court evaluates Plaintiff's motion to certify the class, the court must do so based on information about the class, not solely about Plaintiff's individual experience. *See generally Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004)). While Plaintiff purchased DTR's products in part due to GAP (Global Animal Partnership) signage in the Whole Foods store and on the product label, the same representations were used across DTR's various marketing platforms. As such, discovery into the vehicles for these representations is relevant here because it goes the number of consumers impacted, if their claims encompass common questions of law and fact, and whether Plaintiff's experience is typical of other consumers. Therefore, it is not appropriate to limit Plaintiff's discovery into these class-wide matters. Instead, discovery into what impacted the class is appropriate, and Plaintiff's proposed ESI search terms are narrowly tailored in that respect.

Second, Diestel's relevancy contention ignores that reliance is not a requirement for recovery under the Unfair Practices Act and, as such, discovery related to Diestel's full marketing and advertising scheme is relevant. Diestel's contentions on these points miss the mark and its Motion should be denied. Diestel's proposed limitations on the scope of discovery fly in the face of what is required to bring a valid Unfair Practices Claim. The UPA provides a

statutory right for consumers who claim losses due to an unfair trade practice to bring a claim for actual or statutory damages. Section 57-12-10(B). In relevant part, the UPA states:

> Any person who suffers any loss of money or property, real or personal, *as a result of* any employment by another person of a method, act or practice declared unlawful by the [UPA] may bring an action to recover actual damages…

*Id.*

What is not required to bring a claim under the UPA is reliance. The *Lohman* case that Diestel cites stands for the exact proposition. *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, 142 N.M. 437, 166 P.3d 1090, cert. denied, 2007-NMCERT-005, 141 N.M. 762, 161 P.3d 259 (A viable UPA claim need not allege a direct representation by the defendant to the claimant or to the public, a commercial transaction between the claimant and the defendant, or detrimental reliance by the claimant on a deceptive statement by the defendant). The UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only "tends to deceive." *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 21, 135 N.M. 265, 270, 87 P.3d 545, 550. Accordingly, whether Plaintiff viewed every single piece of marketing or advertisement is immaterial. Plaintiff, and the purported class, can still hold Diestel accountable under the UPA for its false and misleading representations even if the individual Plaintiff did not rely on every representation. As such, discovery into all the deceptive marketing is proper and relevant to the matter at hand.

## CONCLUSION

Diestel failed to meet its burden to establish good cause for granting a protective order. For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Protective Order and compel Defendant to search and produce ESI responsive to Requests 7, 9, and 11, using Plaintiff's proposed search terms and custodians, and for any other relief the Court deems just and proper.

Dated: January 3, 2023

**ELSNER LAW & POLICY, LLC**

By: *Gretchen Elsner*
Gretchen Elsner
Gretchen@ElsnerLaw.org
314 South Guadalupe Street
Santa Fe, New Mexico 87501
Telephone: (505) 303-0980

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: /s/ *Timothy L. Sifers*
Timothy L. Sifers
Nathaniel K. Scearcy
1901 W. 47th Place, Suite 210
Westwood, KS 66205
Telephone: (816) 931-2230
Facsimile: (816) 931-7030
Email: tsifers@potts-law.com
nscearcy@potts-law.com

*Counsel for Plaintiff & the Proposed Class*