# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**CYNTHIA WETZEL**, on behalf of herself )
and all other New Mexico consumers )    **Civil Action No. 20-cv-1213DHU/KRS**
similarly situated, )
)
       Plaintiff, )
)
**v.** )
)
**DIESTEL TURKEY RANCH,** )
)
       Defendant. )

## REPLY IN SUPPORT OF DIESTEL TURKEY RANCH'S MOTION FOR PROTECTIVE ORDER

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 2

    A.   Updated Procedural Background. ................................................................ 2

    B.   Updated Cost Estimate................................................................................ 3

III.  LEGAL ARGUMENT ........................................................................................... 4

    A.   Plaintiff Has Waived Any Challenge to DTR's Proposed Search Terms as to RFP Nos. 8, 12, and 18. ................................................................................................ 4

    B.   Good Cause Exists to Issue a Protective Order Because Plaintiff's Requested ESI is Burdensome, Oppressive, and Irrelevant to Plaintiff's Claims. .......................... 4

        1.   The Cost of Plaintiff's Requested ESI Production is Unreasonably High................ 5

        2.   The Burden of Locating Responsive Documents Using Plaintiff's Search Terms Is Not Proportional to Their Marginal Relevance............................................................. 6

    C.   The Court, in the Alternative, Should Only Require DTR to Review and Produce Documents Pursuant to its Proposed ESI Search Terms. ...................................... 10

IV.  CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Allen v. Mill-Tel, Inc.*
283 F.R.D. 631 (D. Kan. 2012).................................................................. 9

*Buscema v. Wal-Mart Stores E. LP*
485 F. Supp. 3d 1319 (D.N.M. 2020) ..................................................... 10

*Doebele v. Sprint/United Mgmt. Co.*
342 F.3d 1117 (10th Cir. 2003) ................................................................. 3

*Hylton v. Bd. of Cnty. Commissioners for Cnty. of Dona Ana*
2021 WL 1128051 (D.N.M. Mar. 24, 2021)............................................. 4

*Lee v. Gallup Auto Sales, Inc.*
1998 WL 36029906 (D.N.M. Dec. 18, 1998) .......................................... 7

*Palmer v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*
72 F. Supp. 2d 1237 (D. Kan. 1999)......................................................... 4

*Rock Roofing, LLC v. Travelers Cas. & Sur. Co. of Am.*
413 F. Supp. 3d 1122 (D.N.M. 2019) ....................................................... 4

*Sloan v. State Farm Mut. Auto. Ins. Co.*
360 F.3d 1220 (10th Cir. 2004) ................................................................. 8

*UNS Energy Corp. v. Shiver Constr. Co.*
2022 WL 17581450 (D.N.M. Dec. 12, 2022)........................................... 8

*Warth v. Seldin*
422 U.S. 490 (1975)................................................................................. 10

*Woodward v. GEICO Advantage Ins. Co.*
2022 WL 2953053 (D. Md. July 25, 2022)............................................... 7

## STATE CASES

Page

*Lohman v. Daimler-Chrysler Corp.*
142 N.M. 437 (N.M. Ct. App. 2007) ........................................................ 7

*Sangre de Cristo Dev. Corp. v. City of Santa Fe*
84 N.M. 343 (1972) ................................................................................... 8

*Smoot v. Physicians Life Ins. Co.*
135 N.M. 265, 268 (N.M. Ct. App. 2004) ............................................. 8, 9

## **STATUTES**

                                                                                    Page

N.M.S.A. § 57-12-10 ........................................................................................ 7, 8

N.M.S.A. § 57–12–10(B)................................................................................... 9

## **RULES**

                                                                                    Page

Fed. R. Civ. P. 26(b)(1).................................................................................... 6

## I.      INTRODUCTION

Plaintiff agues that that DTR should review almost 500,000 documents returned by Plaintiff's proposed ESI search terms to locate documents responsive to Plaintiff's Requests for Production, Set One.[1]  Plaintiff's search terms, however, are overly broad and unduly burdensome because they are not tailored to search for documents related to the advertising that Plaintiff reviewed before purchasing DTR's products – i.e., the product label.  Other forms of advertising (social media, brochures, web advertising, publications materials, and customer mailing lists) are irrelevant because they bear no causal relation to Plaintiff's alleged damages as required by the NMUPA.

Plaintiff argues that the issue of whether Plaintiff relied on a specific medium of advertising is irrelevant under the NMUPA.  Plaintiff's argument, however, ignores that while reliance may not be required under the NMUPA, causation unquestionably is.  Advertising statements cannot cause a consumer to purchase a product if that consumer never saw them.  Thus, these other advertising mediums are irrelevant to Plaintiff's claims because they did not cause Plaintiff to take any action nor her alleged injuries.

There are limits to discovery.  Notably, the federal rules require that the discovery Plaintiff demands must be "proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1).  The massive expense associated with processing, uploading, reviewing and producing documents related to these irrelevant advising mediums is simply not justified.  Plaintiff claims that DTR exaggerates the cost of review by providing a low-cost quote from Plaintiff's discovery vendor to host and upload a comparable amount of documents on its platform.  Plaintiff, however, fails to provide any foundation to suggest that Plaintiff's vendor's quote covers necessary services comparable to those provided by DTR's vendor.  Importantly, Plaintiff fails to address the staggering cost in time and attorneys' fees to review 500,000 documents for production.

---

[1] All capitalized and defined terms from DTR's moving papers are given the same definition herein.

Finally, Plaintiff's opposition only addresses DTR's motion as to several of the disputed RFPs (Nos. 7, 9, and 11). Plaintiff has thus waived any challenge as to DTR's motion with regards to RFP Nos. 8, 12, and 18.

## II.     STATEMENT OF FACTS

### A.     Updated Procedural Background.

The same day DTR filed the present motion seeking a protective order preventing further ESI discovery regarding Plaintiffs RFP Nos. 7, 8, 9, 11, 12, 13, and 18, Plaintiff filed a motion to compel ESI discovery regarding RFP Nos. 7, 9, and 11 only. ECF No. 77. Plaintiff's opposition to the present motion, similarly, only addresses RFP Nos. 7, 9, 11. ECF No. 80, at pp. 2-3. Plaintiff explains this limited scope by claiming that DTR's "counsel's December 16, 2022 email indicates that the parties are not in dispute as to the terms and custodians to be used for Requests Nos. 8, 12, 13, and 18." *Id.* at p.2, fn. 1. Not so.

Plaintiff fundamentally misunderstands the clear and explicit scope of the present motion, which seeks first to foreclose all further ESI discovery or, in the alternative, to require DTR to use its *own separate* search terms for RFP Nos. 7-9, 11-13, and 18. ECF No. 78-1, at p.5, fn. 2 (expressly listing the RFPs in dispute and clarifying in a foot note that the only RFP for which the parties agree on ESI search terms is RFP No. 13).

Plaintiff's confusion seems to come from DTR's counsel's December 16, 2022 email, where DTR explained that it would not limit its proposed search terms based on the specific statements Plaintiff reviewed on the product label, because, after testing proposed search terms with this limitation, the searches returned an unreasonably low number of document hits. ECF No. 78-5 [Parties' Meet and Confer Correspondence], at pp. 1-3. In that email, DTR's counsel listed its proposed search terms and proposed custodians for each RFP in dispute. *Ibid.* While these search terms were not limited based on the statements Plaintiff viewed on the product label, they *were* limited based on the medium of advertising Plaintiff viewed (i.e., the search terms differed from those proposed by Plaintiff by removing terms and connectors searches for "PR" or "public relations ", media, "brochure", "pamphlet,", "sell sheet", etc.). *Ibid.*

2

Plaintiff sent DTR her proposed search terms in a September 23, 2022 email. *Id.* at pp. 14-17 (showing Plaintiff's proposed terms in red with DTR's proposed revisions from a September 30, 2022 email reflected in strike through). A comparison between Plaintiff's proposed search terms sent on September 23, 2022, and those proposed by DTR on December 16, 2022, shows that the parties' proposed terms and custodians for RFP Nos. 8, 12, and 18 are plainly *not* the same.

**B.    Updated Cost Estimate.**

DTR stated in its moving papers that the 469,820 document hits returned by Plaintiff's search terms for RFP Nos. 7-9, 11-13, and 18 (i.e., the search terms at issue in the present motion), which comprised approximately 94 gigabytes of data. ECF No. 78-2, ¶8. This figure was provided before these documents had been uploaded and analyzed by DTR's discovery vendor, and thus the approximate gigabyte amount was arrived at by employing the industry standard assumption that there are 5,000 documents per gigabyte. Reply Declaration of David Adams ("Adams Reply Decl."), ¶2.[2] Having now uploaded and analyzed the document hits returned by Plaintiff's proposed search terms, DTR's vendor has determined that these 469,820 documents actually comprise 268.14 gigabytes. *Ibid*. DTR's discovery vendor estimates the processing costs to upload these documents for review and, where appropriate, production would be approximately $46,924 with associated hosting costs of roughly $4022/month. *Ibid*. It would take several months to review and locate relevant and responsive documents in the more than 460,000 documents returned by Plaintiff's proposed search terms. *Ibid.*

//

//

---

[2] A court can consider recently obtained evidence on reply so long as the opposing party has an opportunity to respond. *Doebele v. Sprint/United Mgmt. Co*., 342 F.3d 1117, 1139 (10th Cir. 2003). Plaintiff was provided with these figures in DTR's opposition to its motion for protective order (ECF No. 79-1, ¶8) and thus has been provided with an opportunity to respond.

### III.    LEGAL ARGUMENT

**A.    Plaintiff Has Waived Any Challenge to DTR's Proposed Search Terms as to RFP Nos. 8, 12, and 18.**

A party consents to all relief that is unopposed in its response to a motion.  D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."); *Hylton v. Bd. of Cnty. Commissioners for Cnty. of Dona Ana*, No. 2:19-CV-01155-KWR-CG, 2021 WL 1128051, at *2 (D.N.M. Mar. 24, 2021) ("The Court generally considers unaddressed arguments or motions to be unopposed."); *Rock Roofing, LLC v. Travelers Cas. & Sur. Co. of Am.*, 413 F. Supp. 3d 1122, 1128 (D.N.M. 2019) ("Plaintiff fails to substantively respond to this issue in either its response or its surreply and has, therefore, waived the issue."); *Palmer v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999) ("[T]he court deems plaintiff's failure to respond to an argument raised in defendants' papers tantamount to an express abandonment of any such claim.").

Here, Plaintiff does not oppose DTR's request that, should the Court not foreclose ESI altogether, that the Court should only require DTR to employ its own search terms as to RFP Nos. 8, 12, and 18.  ECF No. 80, at pp. 2-3.  Plaintiff, instead, only opposes DTR's proposed search terms as to RFP Nos. 7, 9, and 11.  *Ibid.*  Plaintiff has thus waived any arguments in opposition to DTR's proposed search terms as to RFP Nos. 8, 12, and 18.

**B.    Good Cause Exists to Issue a Protective Order Because Plaintiff's Requested ESI is Burdensome, Oppressive, and Irrelevant to Plaintiff's Claims.**

There is good cause to foreclose ESI discovery regarding Plaintiff's Requests for Production, Set One because Plaintiff's requested ESI is unduly burdensome in terms of time and cost, is irrelevant, and because DTR has already made a substantial production of the material documents relating to its marketing and advertising and Plaintiff's claims.

//

//

4

1.      **The Cost of Plaintiff's Requested ESI Production is Unreasonably High.**

Plaintiff argues that the cost of reviewing the 469,820[3] documents returned by Plaintiff's

proposed search terms is not unreasonably high because Plaintiff's ESI vendor quotes a lower

cost than DTR's vendor.  This argument fails for three reasons.

First, Plaintiff's burden argument only takes into account ancillary discovery vendor

costs and does not address the staggering amount of attorney time required to review 469,820

documents for privilege, relevance and responsiveness.  DTR estimates that reviewing these

documents will require 4,700 hours (i.e., 146 days of four attorneys reviewing documents for

eight hours a day) of review time.  ECF No. 78-2, ¶10.  The cost of such a review would be

staggering.  Assuming DTR's reviewers on average charged $400 an hour for their time, the cost

of this review time would be $1,880,000.[4]

Second, Plaintiff does not provide any evidentiary foundation to support a finding that

her discovery vendor's low-cost services are comparable to those provided by DTR's vendor.

For instance, it is unclear whether Plaintiff's counsel is required to engage in time consuming

manual document uploads, the extent of the vendor's ability to run targeted search term reports

(as Plaintiff seeks DTR to do here), the ability to review, redact and analyze documents once

selected. *See* ECF No. 80-2.  Thus, it is unclear if the Court can make an apples-to-apples

comparison between the services offered by the parties respective discovery venders.

Ultimately, the task of reviewing and producing hundreds of thousands of documents is complex

---

[3] Plaintiff speculates that these documents could represent search term hits from *all* potential DTR custodians, not just those at issue in this motion: Heidi Diestel Orrock, Jared Orrock and Amber Bailey.  *See* ECF No. 80, p. 5.  Not so, these hits were returned based on running Plaintiff's proposed search terms against emails sent to and from the email addresses of Heidi Diestel Orrock, Jared Orrock, Amber Bailey, and DTR's customer service email address. Adams Reply Decl., ¶3.

[4] The estimated review time for only the documents returned by the RFP Nos. 7, 9, and 11 (i.e., the RFPs that Plaintiff's Opposition addresses and for which she has not waived her arguments), is high. These RFPs alone return a total of 152,674 documents with families.  ECF No. 79-1 [Adams Decl. in Opposition to Plaintiff's Motion to Compel], ¶11.  DTR's counsel estimates that locating non-privileged, relevant, and responsive documents within these documents would take approximately 1,520 hours of review time.  *Ibid.*

and painstaking.  Plaintiff's suggestion that the Court should ignore the cost of retaining reputable vendor to undertake this important process is questionable.

Third, the quote Plaintiff's discovery vendor provided was based on an outdated gigabyte estimate.  Although DTR stated in its moving papers that the 469,820 document hits returned by Plaintiff's search terms comprised approximately 94 gigabytes of data, this figure was provided before these documents had been uploaded for analysis and arrived at by employing the industry standard assumption that there are 5,000 documents per gigabyte.  Adams Reply Decl., ¶2.  After having uploaded and analyzed the documents returned by Plaintiff's proposed search terms, DTR's vendor has determined that the 469,820 documents returned by Plaintiff's proposed search terms actually comprise 268.14 gigabytes of data.  *Ibid*.  Thus, DTR's vendor's estimated cost to upload ($46,924) and host ($4022/month) these documents is actually far higher than initially anticipated.[5]

 These costs are simply not justified considering the marginal relevance of the documents sought, and DTR's already substantial production of the material documents and advertising statements in this matter.

## 2.    The Burden of Locating Responsive Documents Using Plaintiff's Search Terms Is Not Proportional to Their Marginal Relevance.

Plaintiff's demand that DTR review almost 500,000 ESI documents is burdensome and oppressive and not proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).  ESI related to advertising statements and mediums (e.g., social media, videos, website marketing, etc.) that Plaintiff has never saw or did not use are irrelevant to her claims because the advertising did not and could not cause Plaintiff to take any action nor suffer any injury.

To state a claim under NMUPA, Plaintiff must establish she suffered "a loss of money or property, real or personal, *as a result of* any employment by another person of a method, act or

---

[5] The cost of processing and hosting only documents returned by the RFP Nos. 7, 9, and 11, is also still high. These RFPs alone return a total of 152,674 documents with families, which is approximately 102.81 gigabytes of data. ECF No. 79-1, ¶8.  DTR's ESI vendor estimates that processing costs necessary to upload these documents into DTR's review platform are approximately $17,991 with additional hosting costs of $1,542 per month.  *Ibid.*

practice declared unlawful by the Unfair Practices Act."  (Emphasis added.) N.M.S.A. § 57-12-10.  Because Plaintiff never viewed DTR's brochures, website, social media, or mailing lists, DTR could not have misled her with representations made in those materials, nor could she have suffered damages as a result of DTR's alleged misrepresentation in those materials.  Thus, Plaintiff's ESI seeking documents relating to these forms of advertising is overly broad and burdensome and not proportional to the needs of this case.

Plaintiff relies on *Lohan v. Daimler-Chrysler Corp*., 142 N.M. 437, 444 (N.M. Ct. App. 2007) to argue that she need not have relied on a particular form of advertising to challenge it. As explained in DTR's moving papers, however, *Lohman* is distinguishable.  In Lohman, plaintiff alleged that because defendant fraudulently certified that its seatbelts met safety standards, those defective seatbelts were installed in vehicles, including plaintiff's truck. *Lohman v. Daimler-Chrysler Corp*., 142 N.M. 437, 444 (N.M. Ct. App. 2007).  While defendant's fraudulent statements were not communicated to plaintiff, plaintiff was damaged as a result of defendant's fraudulent statements because those fraudulent certifications allowed it to bypass safety regulations and install its seatbelts in plaintiff's truck.  Importantly, this is *not* Plaintiff's theory of DTR's liability.  In contrast to *Lohman,* Plaintiff claims that DTR's alleged misrepresentations cause her alleged injury because she purchased a DTR turkey that she would not have bought, or else paid too much for a DTR turkey based on DTR's alleged misrepresentations.  *See* ECF No. 1, ¶¶ 20, 21.

Although Plaintiff does not to need show reliance to establish her NMUPA claim, she **does** need to show a causal connection between DTR's allegedly false and misleading statements and her alleged injury.  As one court explained, "it is difficult to conceive of a false or misleading statement resulting in damages when the statement is not believed or relied on."  *Lee v. Gallup Auto Sales, Inc.,* No. CV 96-1525 WWD/LCS, 1998 WL 36029906, at *6 (D.N.M. Dec. 18, 1998); *Woodward v. GEICO Advantage Ins. Co.*, No. CV GLR-21-952, 2022 WL 2953053, at *9 (D. Md. July 25, 2022) ("One way [Plaintiff] may have satisfied [the NMUPA's causation requirement] would have been by alleging reliance—i.e., that he relied on the website

definition of "claim" in deciding to make the deductible inquiry that ultimately led to the disputed report. But [Plaintiff]) makes no such allegation."); *UNS Energy Corp. v. Shiver Constr. Co.*, No. 1:22-CV-00087-KG-LF, 2022 WL 17581450, at *5 (D.N.M. Dec. 12, 2022) (Plaintiffs "relied on [Defendant]'s representations" and thus defendant's "false and misleading statements deceived plaintiffs into reasonably believing that they would receive the completed O&M Building free of any liens, in violation of Section 57-12-2(D)(2) of the UPA.")

Plaintiff relies on *Smoot v. Physicians Life Ins*. Co., 2004-NMCA-027, 135 N.M. 265, 268 (N.M. Ct. App. 2004) to argue that Plaintiff does not need to prove causation since the NMUPA only requires that a defendant's conduct "tend[] to deceive" consumers. *Smoot*, however, is distinguishable because the actual issue considered and decided by the court was reliance, not causation. *See Smoot*, 135 N.M. at 267 ("We also determine … that detrimental reliance is not an essential element of the relief provided for violations" of the NMUPA.) It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. "[C]ases are not authority for propositions not considered." *Sloan v. State Farm Mut. Auto. Ins. Co*., 360 F.3d 1220, 1231 (10th Cir. 2004), quoting *Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 84 N.M. 343, 348 (1972).

The holding in *Smoot* was limited to considering the trial court's refusal to dismiss Plaintiff's NMUPA claims at the pleading stage based on Plaintiff's failure to expressly allege reliance in her complaint. *Smoot*, 135 N.M. at 270-71. The court declined to overturn the trial court's decision, reasoning that Plaintiff was not required to expressly plead reliance in her complaint. *Id.* at 271. ("Because Plaintiff has alleged sufficient facts to state a claim for relief under the UPA and the UIPA, neither of which requires a specific allegation of detrimental reliance for the relief provided, we affirm the denial of Defendant's motion to dismiss Plaintiff's claims for violation of the [NMUPA].") Thus, *Smoot* does not address the issue actually before this Court (i.e., causation) and does not stand for the proposition that Plaintiff does not need to show causation. Indeed, such a holding would be contrary to the express language of the NMUPA. *See* N.M.S.A. § 57-12-10 (plaintiff must show "a loss of money or property, real or

personal, *as a result of* any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act.") (Emphasis added).

Moreover, the *Smoot* court expressly noted that "is true that both the UPA and the UIPA require proof of a causal link between conduct and loss…" *Id.* at 270, citing N.M.S.A. § 57–12–10(B). Although the court qualified this statement by explaining that "we find nothing in the language of [Section 57-12-10(B)] requiring proof of a link between [defendant's deceptive] conduct and purchase or sale," that only means reliance is not required. *Id.* It does not mean that causation is not required. Causation must be examined under Plaintiff's theory of liability. In this case, Plaintiff contends she was injured because DTR's advertising statement caused her to purchase its product and/or caused her to purchase it at a higher price than she would have paid. *See* ECF No. 1, ¶¶8, 21-22. Plaintiff's alleged injury, therefore, is the purchase itself that resulted from the advertising statements that caused her purchase. *Ibid.* This is distinguishable, from the situation in *Smoot* where plaintiff alleged that defendant "failed to disclose fully the additional cost of her paying insurance premiums monthly rather than annually." *Id.* at 267. In *Smoot*, the harm (Plaintiff's higher premium payments) was not tethered to the point of sale, whereas in the present case, Plaintiff's alleged harm (the sale or price premium charged by DTR based on its branding statements) is.

Finally, Plaintiff relies on *Allen v. Mill-Tel, Inc*., 283 F.R.D. 631, 633–35 (D. Kan. 2012) to argue that discovery regarding advertising materials that Plaintiff did not view is appropriate because this Court's class certification determination will turn on the experience of the unnamed class members, not just Plaintiff herself. *Allen*, however, does not stand for this proposition. Although *Allen* concerned the proper scope of discovery prior to class certification, the case did not address a named plaintiff's ability to represent a class regarding claims for which the named plaintiff does not have standing, and/or how this issue affects the scope of discovery. *Allen,* therefore, does not support Plaintiff's argument.

Instead, Plaintiff "must personally have standing to bring a claim on behalf of absent class members; she cannot rely on potential class members' injuries to establish standing."

9

*Buscema v. Wal-Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1329 (D.N.M. 2020), citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Since Plaintiff cannot state a claim with regards to advertising statements she did not view, she cannot represent a class with regards to this advertising, and discovery regarding such advertising is irrelevant.

Here, the high cost of ESI discovery, its marginal relevance, and DTR's already substantial production of non-ESI documents regarding marketing and advertising weigh in favor of granting DTR's motion and foreclosing ESI discovery.  Accordingly, DTR respectfully asks the Court to grant a protective order limiting DTR's document production in response to Plaintiff's RFP, Set One to the 9,000 pages of non-ESI documents DTR has already produced in this case, and the 121,880 pages of documents from the California false advertising case to which Plaintiff has been granted access.

**C.     The Court, in the Alternative, Should Only Require DTR to Review and Produce Documents Pursuant to its Proposed ESI Search Terms.**

If this Court does not foreclose ESI discovery altogether, it should, in the alternative, only allow ESI discovery pursuant to DTR's proposed search terms.  DTR's search terms are proper because they are tailored to locate relevant responsive documents, and the burden and cost of review is far more proportional to the needs of this case.

Here, DTR's proposed search terms provide Plaintiff with ESI discovery regarding changes to DTR's label and packaging advertising (RFP No. 7), the reasons for these changes (RFP No. 9), information about where DTR's label and packaging advertising was viewed in New Mexico during the class period (RFP No. 8), DTR's strategy for label and packaging advertising (RFP No. 11), and complaints from New Mexico consumers (RFP Nos. 12 and 18). ECF No. 78-5, at pp. 1-3.

As explained above, limiting these searches based to DTR's product labels is proper. Further, limiting RFP Nos. 12 and 18 to complaints made by New Mexico consumers only, by requiring that all responsive documents contain a search term hit for NM or "New Mexico", is a reasonable way to limit the excessive burden of these search terms to the relevant issue in this

case – the impressions of the putative New Mexico class as opposed to all DTR consumers nationwide.

Importantly, although DTR limits its proposed search terms on RFP Nos 7-9, 11-12, and 18 based on the advertising mediums Plaintiff saw and based on complaints by New Mexico consumers (as opposed to consumers nationwide), it has agreed to Plaintiff's proposed search terms for RFP 13 which seeks documents related to DTR's marketing and labeling claims that Plaintiff challenges in her Complaint. *Ibid.* Thus, although DTR has sought to impose reasonable limitations on discovery to correspond with the relevance of these issues, it has agreed to Plaintiff's proposed terms regarding the issue at the heart of this case.

The cost of reviewing the 14,364 documents returned by DTR's proposed search terms is far more in line with the importance of these documents in this action. DTR's ESI vendor estimates the processing costs for the documents returned by DTR's search terms are approximately $3,600, and the hosting costs are approximately $308 per month. DTR's counsel estimates that reviewing these 14,364 documents returned from DTR's search terms would take approximately 144 hours of review time.

## IV.    CONCLUSION

For the reasons stated herein, DTR asks the Court to grant its Motion for Protective Order.

Dated:  January 17, 2023

BLAXTER | BLACKMAN LLP

*/s/ David P. Adams*

BRIAN R. BLACKMAN
DAVID P. ADAMS
610 Montgomery Street, Suite 1110
San Francisco, California 94111
Tel: (415) 500-7704
Email:  bblackman@blaxterlaw.com

*Attorneys for Defendant Diestel Turkey Ranch*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on January 17, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Gretchen Elsner
ELSNER LAW & POLICY, LLC
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone:  (505) 303-0980
Email:  gretchen@elsnerlaw.org

Timothy L. Sifers
Nathaniel K. Scearcy
THE POTTS LAW FIRM, LLP
1901 W. 47th Place, Suite 210
Westwood, KS 66205
Telephone:  (816) 931-2230
Email: tsifers@potts-law.com
           nscearcy@potts-law.com

I declare under penalty of perjury under the laws of the United States of America that the above it true and correct.  Executed on January 17, 2023, in San Francisco, California.

*/s/ DAVID P. ADAMS*
DAVID P. ADAMS