UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CYNTHIA WETZEL**, on behalf of herself and all other New Mexico consumers similarly situated**,**<br><br>Plaintiff**,**<br><br>v.<br><br>**DIESTEL TURKEY RANCH,**<br><br>Defendant. | Case No.: 20-cv-1213 DHU-KRS<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CYNTHIA WETZEL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

COMES NOW, Plaintiff Cynthia Wetzel, by and through counsel, and for her Reply in Support of her Motion to Compel states as follows:

**Introduction**

Plaintiff seeks a Court Order compelling Defendant to conduct an ESI search and produce documents responsive to three Requests for Production.[1] This lawsuit concerns Defendant Diestel Turkey Ranch's ("DTR" or "Diestel") misleading and deceptive marketing and advertising of its turkey products. The Requests and Plaintiff's search proposal are narrowly tailored to gather information and documents pertaining to Diestel's marketing and advertising, any changes made to the same, and its overall strategy for the promotion of its products to the public. Not only is this information discoverable but it is directly related to the claims and defenses in this lawsuit.

Despite agreeing to conduct an ESI search in its discovery responses and exchanges

---

[1] The Requests at issue are Nos. 7, 9, and 11 of Plaintiff's Requests for Production of Documents, Set one. They are reproduced, along with the Parties' competing search proposals, in Plaintiff's Motion to Compel. See ECF 77 at 4-6.

with counsel, DTR now contends that no ESI search should be conducted because Plaintiff largely relied on signage in the Whole Foods store and the label concerning the turkey product's GAP (Global Animal Partnership) rating. It asserts that this is the only issue relevant to the lawsuit, and therefore no discovery into broader topics concerning its advertising and marketing are relevant. In the alternative, Diestel states that if it must conduct an ESI search is should be done under its own proposal, one that is aggressively limited and not proportional to the needs of the case.

Diestel's position ignores that this is a class action lawsuit, and accordingly what matters is what is relevant to the proposed class, not just the individual Plaintiff. Furthermore, Plaintiff's proposal is tailored and limited to seeking only information relevant to the claims and issues pertinent to this suit. Therefore, Defendant should be ordered to conduct its ESI search using Plaintiff's proposal and produce documents responsive to Request Nos. 7, 9, and 11.

## **Argument**

### A. Plaintiff's Requests and Search Proposal are Relevant to the Claims and Defenses in this Lawsuit.

This is a consumer class action case in which Plaintiff, on behalf of the class, has brought claims against Diestel for its deceptive and misleading marketing, advertising, and labeling of its turkey products. In doing so, Plaintiff has alleged violations of the Unfair Practices Act, False Advertising Law, breach of warranties, and unjust enrichment. Diestel's overall marketing scheme is at the heart of this lawsuit. Understanding Diestel's overall marketing strategy, including any contemplated or realized changes to it, is critical to knowing how consumers, and the class, viewed the brand and its products and advertisements. The Requests and Plaintiff's proposed search terms are tailored to accomplish just that.

Initially, Diestel argues that the information sought goes outside the scope of what Plaintiff, individually, viewed and relied on when purchasing her turkey product. As such, it contends that the disputed search terms are irrelevant to the case. However, Diestel ignores that this is not a case concerning one individual and is instead a class action. As such, what the class viewed and understood about the products is what is relevant, not just what the named plaintiff relied on. When the court evaluates Plaintiff's motion to certify the class, the court must do so based on information about the class, not solely about Plaintiff's individual experience. *See generally Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004)). Further, while Plaintiff purchased DTR's products in part due to GAP signage in the Whole Foods store, the same GAP rating was reproduced and marketed on the labeling of DTR's turkey products. See Exhibit A. Not only that, but DTR used the same representations across multiple marketing platforms. Discovery into this marketing and the mediums used goes directly to class issues, such as the number of consumers impacted, if their claims encompass common questions of law and fact, and whether Plaintiff's experience is typical of other consumers. Therefore, it is not appropriate to limit Plaintiff's discovery into these class-wide matters.

Furthermore, what Plaintiff relied on when purchasing her product is inconsequential to resolving her claims. Reliance is not a requirement for recovery under the Unfair Practices Act. As such, discovery related to Diestel's full marketing and advertising scheme is relevant regardless of what Plaintiff herself viewed. The UPA provides a statutory right for consumers who claim losses due to an unfair trade practice to bring a claim for actual or statutory damages. Section 57-12-10(B). In relevant part, the UPA states:

> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the [UPA] may bring an action to recover actual damages…

*Id.*

A viable UPA claim does not require a direct representation by the defendant to the claimant or to the public, a commercial transaction between the claimant and the defendant, or even detrimental reliance by the claimant on a deceptive statement by the defendant. *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, 142 N.M. 437, 166 P.3d 1090, cert. denied, 2007-NMCERT-005, 141 N.M. 762, 161 P.3d 259. The UPA does not even require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only "tends to deceive." *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 21, 135 N.M. 265, 270, 87 P.3d 545, 550. Accordingly, what Plaintiff herself viewed is immaterial to the resolution of this claim. Plaintiff, and the purported class, can still hold Diestel accountable under the UPA for its false and misleading representations even if the individual Plaintiff did not rely on every representation. As such, discovery into all of the deceptive marketing is proper and relevant to the matter at hand.

**B.     Plaintiff's Proposal is Proportional to the Needs of the Case and Not Burdensome or Oppressive.**

Diestel further opposes Plaintiff's discovery proposal as being overly burdensome, oppressive, and not proportional to the needs of the case. This is far from true. Plaintiff's entire proposal seeks information from only three custodians and all of proposed search terms use limiting connectors. The fact that Plaintiff's terms produced approximately 100 gigabytes of e-mails and documents is a red herring. Not only is that what could be expected from a large, national company, but it also comports with the scope of class action discovery. Diestel is correct that in certain situations discovery can be limited. However, none of the cases cited for Diestels proposition were class actions. *See generally Scales v. J.C. Bradford and Co.*, 925 F.2d 901, (6th Cir. 1991); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511 (10th Cir. 1995); *Rogers v.*

*Regents of University of New Mexico*, 2004 WL 7337534 (D.N.M., Oct. 22, 2004). Instead, these cases involved individual plaintiffs that had singular experiences. Frankly, the scope of class action will necessarily be broader than individual cases by their nature.

Furthermore, Diestel's cost estimates appear higher than industry standard considering the amount of data in dispute. Diestel estimates that just to upload these documents will cost approximately $17,991 with additional hosting costs of $1,542 per month. *See Defendant's Opposition to Plaintiff's Motion to Compel ESI Discovery*; ECF 79 at 12. Using Diestel's prior estimated data, Plaintiff's counsel reached out to their own ESI vendors for estimates. GoldFynch quoted Plaintiff's counsel $600 per month to host 95 gigabytes of data with no uploading or processing fee. See Ex. B. DTR or its counsel may have a preferred ESI vendor, but DTR's bloated cost does not constitute good cause for denying Plaintiff's motion when other reasonable alternatives exist to comply with discovery obligations.

Similarly, Deistel's estimates for review time and cost are its own doing. Plaintiff is not demanding that Diestel review 152,674 documents. Reasonable alternatives exist to that proposition, such as producing the documents and agreeing to a claw back/return protocol that would force Plaintiff to return, sequester, or destroy privileged material and preserve DTR's right to assert any privilege over the document or communication. Accordingly, Diestel's contentions as to cost and review time should be disregarded.

    **C.**    **Diestel's Proposed Search Terms and Custodians Fail to Satisfy the Needs of the Case.**

If the Court deem ESI necessary, Diestel asks for alternative relief in the form of performing any ESI search and production using its own narrow terms. However, DTR's proposal is far too limited to return a complete result of discoverable information responsive to

Plaintiff's Requests. Diestel's proposal again focuses solely on Plaintiff's individual experience with DTR's products while ignoring issues that are relevant to the proposed class. For example, Diestel omits social media outlets like Facebook or Twitter from their terms because the named Plaintiff did not view DTR's posts on those platforms. This ignores the fact that members of the class certainly did and that Diestel made the same at-issue claims on these platforms and a large variety of other mediums. Relevancy needs to be viewed in terms of the proposed class and not on a strictly individual level.

Diestel further contends that it has already produced many documents, both in this matter and in the Direct Action Everywhere ("DxE") case and that those productions satisfy the Requests. However, while somewhat responsive, these productions do not relieve DTR from its obligations to produce further responsive documents in this matter. Not only that, but the DxE case was filed under California consumer law and was not a class action. Therefore, the ESI search used in the DxE production was not tailored to the needs of this proposed class action or New Mexico statutes. To argue that this production comports with needs of this case is untrue.

Additionally, some of the information Plaintiff seeks is impossible to ascertain from what has been provided by Diestel. For example, Diestel claims that Plaintiff can track changes made to advertising by looking at the examples of advertising that has been produced. However, being able to track changes made does not tell Plaintiff the reason for those changes or the thought process around them. That information is necessary, discoverable, and goes to Diestel's understanding of its messaging and consumer's reception to it.

Diestel also makes the contention that because Diestel is a "small, family run" company it is unlikely to have e-mail traffic related to brand and marketing strategy. Curiously, Diestel has also made the contention that Plaintiff's search proposal aimed at determining Diestel's

brand and marketing strategy produces an impossibly large number of search hits. Plaintiff, with an eye towards class relevancy, created search terms that returned thousands of hits while Diestel's proposal returned a grand total of 189. It is clear that there are responsive documents relating to brand strategy in Diestel's possession and it should be required to produce them.

DTR further disputes that Amber Bailey's is a proper custodian for the basis of Plaintiff's search. It contends that as a sales representative that interfaces with retailers and distributors, she would not have any documents responsive to feedback or complaint from DTR's consumers. However, discovery has shown that retailers would often forward customer feedback, questions, and complaints about Diestel products to Diestel employees. As the only Diestel employee with a relationship with certain retailers or distributors, she would receive some of these complaints or feedback. Further, she would likely relay this customer feedback and thoughts back to DTR. Ms. Bailey's emails and other electronic documents should be included in any search pertaining to these Requests.

## Conclusion

For the reasons stated herein, Plaintiff asks the Court to grant Plaintiff's Motion to Compel, and for such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: January 17, 2023 | Respectfully submitted, |
| **ELSNER LAW & POLICY, LLC** | **THE POTTS LAW FIRM, LLP** |
| By: /s/ *Gretchen Elsner* <br> Gretchen Elsner <br> Gretchen@ElsnerLaw.org <br> 314 South Guadalupe Street <br> Santa Fe, New Mexico 87501 <br> Telephone: (505) 303-0980 | By: /s/ *Timothy L. Sifers* <br> Timothy L. Sifers <br> Nathaniel K. Scearcy <br> 1901 W. 47th Place, Suite 210 <br> Westwood, KS 66205 <br> Telephone: (816) 931-2230 <br> Facsimile: (816) 931-7030 <br> Email: tsifers@potts-law.com <br> nscearcy@potts-law.com |

*Counsel for Plaintiff & the Proposed Class*