IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CYNTHIA WETZEL, on behalf of
herself and all other New Mexico
consumers similarly situated,

      Plaintiffs,

v.                                                           No. 1:20-cv-1213 DHU/DLM

DIESTEL TURKEY RANCH,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This is a putative consumer class action brought by Plaintiff Cynthia Wetzel against Defendant Diestel Turkey Ranch (DTR), which markets and sells premium-priced turkey products. In November 2018, Wetzel bought a DTR turkey at a Whole Foods grocery store. She chose the turkey based on information she read on its packaging and on in-store signage that advertised the bird as thoughtfully raised with high animal welfare standards. Wetzel alleges that DTR's advertising is false and misleading, and she brings a putative class action on behalf of similarly situated consumers.

Wetzel defines the class to include New Mexico consumers who bought a DTR turkey on or after November 19, 2016. The parties have been engaging in discovery relevant to class certification and the merits. Wetzel moves to compel electronically stored information (ESI) concerning DTR's marketing and advertising across a variety of platforms, such as its website, social media, and brochures. DTR opposes the motion and moves for a protective order. It contends that because Wetzel only claims an injury based on information she read in the store, she lacks Article III standing to bring claims on behalf of consumers who saw advertisements outside of a store. DTR made this same argument in a motion to dismiss that is still pending.

Because the issue of standing is central to both the dispositive and discovery motions, the Court finds it appropriate to stay discovery pending a decision on DTR's motion to dismiss.

I.   **Background**

A.   **Relevant Procedural History**

Wetzel filed her Class Action Complaint on November 19, 2020. (Doc. 1.) DTR filed a motion to dismiss on April 14, 2021. (Doc. 7.) Because this matter has necessitated reassignment to four presiding judges, DTR's motion to dismiss is still pending.

The parties filed a Joint Status Report and Provisional Discovery Plan (JSR) on March 18, 2022.[1] (Doc. 42.) The minutes from the Rule 16 Scheduling Conference indicate Wetzel's preference to begin discovery immediately, while DTR preferred to wait until the Court rules on the motion to dismiss. (*See* Doc. 43.) The Court decided to "enter a scheduling order *for purposes of class discovery*" and noted that it would "set a second scheduling conference after the class certification motion and Motion to Dismiss are ruled on." (*Id.* (emphasis added).) The Scheduling Order reflects this decision and provides that it governs "discovery deadlines for class certification purposes at this time . . . ." (Doc. 45 at 1.) The Order set a briefing schedule for the motion for class certification and makes clear that "[a]fter the motion for class certification is decided, the Court will set a new scheduling conference." (*Id.*) Since that time, the parties have engaged in some discovery, and the Court has mediated several discovery disputes. (*See, e.g.*, Docs. 49; 51; 56; 65; 75–76.)

---

[1] On November 22, 2021, this matter was assigned to United States District Judge James Browning, who entered an Initial Scheduling Order and set a motion hearing and scheduling conference to be held January 5, 2022. (*See* Docs. 28–31.) At the hearing, Judge Browning stated that the Court "will set dates for some discovery deadlines." (*See* Doc. 34 at 2.) Before Judge Browning could enter a scheduling order, however, the case was reassigned to United States District Judge David Urias. (Doc. 40.) Shortly thereafter, United States Magistrate Judge Kevin Sweazea entered a second Initial Scheduling Order, the parties filed a second Joint Status Report, and Judge Sweazea filed a Scheduling Order. (*See* Docs. 41–45.) The parties have never objected to Judge Sweazea's Scheduling Order, which superseded any deadlines the parties and the Court discussed at the hearing in January 2022. The deadlines have since been extended (Doc. 86) and vacated (Doc. 91) and will be reset after the Court rules on DTR's motion to dismiss.

B.	**Pending Motions**

1.	**Motion to Dismiss**

DTR filed its motion to dismiss on April 14, 2021. (Doc. 7.) It argues that because Wetzel asserts she purchased the turkey based on information on the packaging and on signage in Whole Foods, she has not sufficiently alleged an injury arising from advertising on other platforms. (*See* Doc. 8 at 2, 6–8.) DTR contends that Wetzel "lacks both Article III and statutory standing to assert false advertising claims based on advertisements that she does not allege she ever saw and DTR products she never purchased." (*Id.* at 2.)

2.	**Discovery Motions**

"On February 8, 2022, [Wetzel] served DTR with her opening Interrogatories and [RFPs]." (*See* Doc. 77 at 1.) At issue are RFPs 7–9, 11–13, and 18:

> **[RFP] 7**: All documents concerning any contemplated, potential, or actual changes, revisions or modifications to the products' labels or advertisements during the class period, including drafts of such documents.
> **[RFP] 8**: All documents sufficient to show when and where each statement advertisement, or label related to the turkey products appeared.
> **[RFP] 9**: For documents concerning the reasons for, plans, proposals, and motivations for any change to the label or advertising of any product.
> **[RFP] 11**: All documents concerning your strategy for marketing, advertising, or selling the turkey products in the United Sates [sic] and New Mexico during the class period.
> **[RFP] 12**: All documents referencing or reflecting any call center feedback for the turkey products.
> **[RFP] 13**: All documents that discuss the challenged statements.
> **[RFP] 18**: Any communication between you and any customer in response to any complaint about the ingredients or processing of the products.

(Doc. 78-1 at 5 (capitalization omitted).)

Wetzel defines the proposed class as: "All persons in New Mexico who purchased one or more of Diestel's Turkey Products on or after November 19, 2016." (Doc. 1 ¶ 95.) She moves to compel the use of specific ESI search terms that will return documents concerning DTR's

3

marketing that all potential class members may have seen during the class period across all advertising platforms (*i.e.*, social media, website, brochures, etc.). (*See* Doc. 77 at 4–6.) She would like to review all responsive documents before deposing DTR's representative and drafting the motion for class certification. (*See id.* at 3.)

In each of its responses to RFPs 7, 9, and 11, DTR objects in relevant part on the basis that the RFPs seek information that "is not tailored" to Wetzel's claims or "tied to the product(s) [she] purchased, [to] products DTR sold or were available for purchase in New Mexico," or to "marketing or advertising DTR undertook in New Mexico." (*See* Doc. 77-1 at 3–8.) DTR asks the Court for a protective order that limits the ESI search terms and responsive documents to those directly related to the signage and labeling that Wetzel saw in Whole Foods. (*See* Doc. 79 at 1–2.) It argues again that Wetzel lacks standing to bring her claims. (Doc. 78-1 at 9–10.)

**II.     The Court will deny the discovery motions without prejudice and stay discovery in this matter pending a ruling on the motion to dismiss.**

   **A. Standard of Review**

"The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Rule 1 of the Federal Rule of Civil Procedure requires the Court to proceed in a manner that will lead to an inexpensive determination of each matter. Rule 26 allows the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Indeed, a court has wide discretion to manage its docket, which includes decisions concerning issuing stays for all or part of the proceedings. *See Clinton v. Jones*, 529 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay [proceedings as an incident to its power to control its own docket.") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also M.G. v. Scrase*,

4

No. CV 22-325 MIS/GJF, 2022 WL 5242610, at *2 (D.N.M. Oct. 6, 2022) ("A court's authority to stay discovery is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (*quoting Doe v. Jones*, 762 F.3d 1174, 1178 (10th Cir. 2014)) (emphasis omitted).

Because district courts must exercise restraint in issuing stays, there are no strict rules for the court to apply, because "[s]uch a formula . . . is too mechanical and narrow." *See Landis*, 299 U.S. at 545.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can be best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* at 545–55. In determining whether a stay should be issued, the Court considers the following factors: (1) the plaintiff's interest in proceeding swiftly "with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest." *See, e.g.*, *Mestas v. CHW Grp. Inc.*, No. CV 19-792 MV/CG, 2019 WL 5549913, at *1 (D.N.M. Oct. 28, 2019) (quoting *Todd v. Montoya*, No. CIV 10-0106 JB/RLP, 2011 WL 13286329, at *1 (D.N.M. Jan. 18, 2011)).

"A stay of all discovery is generally disfavored." *Silver v. City of Albuquerque*, No. CV 22-400 MIS/GBW, 2022 WL 9348637, at *2 (D.N.M. Oct. 14, 2022) (citation omitted). Yet, "[w]hen a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved." *Id.* (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999)); *see also* 8 Charles Alan Wright & Richard L. Marcus, Federal Practice and Procedure § 2040, at 521 (2d ed. 1994).

5

**B. Analysis**

DTR contends that Wetzel lacks Article III or statutory standing to bring a class action complaint on behalf of other consumers. (*See* Doc. 8 at 6–8.) "Article III standing is an essential ingredient for subject matter jurisdiction in federal court"; without it, the Court may not proceed. *See C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *1 (D. Kan. Mar. 31, 2022); *see also Penteco Corp. P'ship-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (noting that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action") (quotation omitted). "Moreover, where the defendant challenges standing, a court must presume lack of jurisdiction 'unless the contrary appears affirmatively from the record.'" *Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1199 (D.N.M. 2022) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

DTR makes identical arguments concerning standing in its motion to dismiss and in its motion for protective order. It contends that because Wetzel claims an injury based on information she read in the store, she lacks Article III standing to bring claims on behalf of consumers who saw advertisements on other platforms (i.e., DTR's website or social media) before purchasing a DTR turkey. (*See* Docs. 8 at 2, 6–8; 78-1 at 9–10.) DTR further asserts that Wetzel's requested discovery will result in significant costs and attorney fees. (*See* Doc. 78-1.)

After considering the relevant factors, the Court finds that a stay of all discovery pending a ruling on the motion to dismiss is appropriate.

    **1.    Wetzel's Interests and the Potential Prejudice of a Delay**

Wetzel undoubtedly has an interest in the quick resolution of her case. However, a delay of discovery at this juncture does not delay Wetzel's ability to move forward with the matter once

DTR's motion to dismiss is resolved. The parties concede that they have engaged in a significant amount of discovery. (*See, e.g.*, Doc. 78-1 at 3–4.) To be sure, despite United States Magistrate Judge Kevin Sweazea limiting discovery to matters related to class certification (*see* Doc. 43), the parties informed the Court that they have also undertaken discovery related to the merits (*see* Doc. 90). Thus, Wetzel has information that will not only will help her begin to identify the class, but also will assist her in prosecuting her case or in positioning the matter for settlement.

This is not a situation where the plaintiff has been denied an opportunity to build a case because no discovery has occurred. As of August 19, 2022, DTR has produced 130,880 pages of documents. (*See* Doc. 78-1 at 11.) If DTR's motion to dismiss is denied, the parties can pick up class discovery where they left off, and the undersigned will be in a better position to rule on any remaining discovery motions.

## 2. Burden on DTR

DTR contends that Wetzel's discovery requests will require DTR to incur significant attorney fees and costs.[2] (*See* Docs. 8 at 2, 6–8; 78-1 at 6, 9–10.) DTR's counsel asserts that using Wetzel's search terms will produce 469,820 documents, requiring 4,700 hours and $1,880,000 in attorney fees to review, $46,924 for the vendor to upload, and $4,022 per month to host the documents. (*See* Doc. 81 at 3, 5–6.) In contrast Wetzel asserts that DTR's cost estimates are "a red herring . . . [and] should be disregarded." (Doc. 80 at 5.) She acknowledges that while there is *some* cost to host the ESI, DTR's estimates "appear much higher than industry standard[s] . . . ." (*Id*. at 4.)

Because there is a possibility that a ruling on the motion to dismiss will result in dismissal of this lawsuit, the Court finds a stay of discovery furthers the purpose of the Federal Rules of

---

[2] Counsel for DTR stated at the May 2, 2023 status conference that if the Court does not stay discovery sua sponte, DTR will file a motion to stay. (*See* Doc. 93.)

7

Civil Procedure, which are to be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.; *cf. String Cheese Incident, LLC*, 2006 WL 894955, at *2 ("find[ing] that subjecting a party to discovery when a motion to dismiss for lack of personal jurisdiction is pending may subject him to undue burden or expense, particularly if the motion to dismiss is later granted"). A stay is particularly appropriate in this case where there is a pending motion to dismiss that involves a jurisdictional question, where there are discovery motions that hinge on the same question, and where further discovery would create a significant burden on at least one party.

### 3.     Convenience to the Court

DTR argues in both its motion to dismiss (Doc. 7 & 8) and motion for protective order (Doc. 78 and 78-1) that Wetzel's lack of standing requires dismissal and obviates the need for much of the information sought in discovery. The resolution of this issue bears directly on whether the Court has subject matter jurisdiction to hear the case. The Court cannot rule on the pending discovery motions until the question of standing is resolved.[3] *Cf. C.C.*, 2022 WL 970862, at *2 (finding that the court must address issues of standing before it can examine the merits of a claim). Moreover, counsel for Wetzel agrees that if the Court grants any part of the motion to dismiss, she will need to reassess her discovery requests. (*See* Doc. 93.) As the question of standing is properly before the presiding judge in DTR's motion to dismiss, the undersigned will deny the discovery motions without prejudice with leave to refile after the Court has ruled on the motion to dismiss. *See, e.g.*, *Dunham v. Coffeyville Res., LLC*, No. 07-1186-JTM-DWB, 2007 WL 2403689, at *3 (D. Kan. Aug. 20, 2007); *cf., e.g.*, *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (discussing the authority of magistrate judges to issue orders on non-dispositive pretrial

---

[3] Wetzel has not argued that her requested discovery bears on the jurisdictional issue.

matters pursuant to 28 U.S.C. § 636).

In making this ruling, the Court notes that a trial date has yet to be set in this matter, and discovery deadlines have been extended twice already at the request of the parties. (*See* Docs. 63–64; 85–86.) Indeed, the parties acknowledged that further extensions were needed for both discovery and for briefing on the motion for class certification, even if the Court were to rule on the pending discovery motions. (*See* Doc. 90 at 1.) Thus, delaying this matter until the motion to dismiss is resolved serves to preserve court resources by not requiring the court to rule on matters that may ultimately be determined to be moot should the Court grant the motion to dismiss.

### 4.  Interests of Third Parties and the Public

The Court does not believe a stay of discovery impacts the interests of third parties. The same, however, cannot be said with respect to the interest of the public. Plaintiff's complaint asserts that other members of the purchasing public were affected by the deceptive practices of DTR. Because the discovery sought encompasses identifying the putative class, the public interest here is relevant. (*See* Docs. 77 at 4–5; 80 at 3; 83 at 3.)

The Court recognizes that a stay of discovery is generally disfavored. However, based on the Court's review of the above factors, the discretion afforded by Rule 26 to allow a stay where a dispositive motion is pending, and the Court's authority to manage its docket, staying discovery in this matter is appropriate.

Finally, the Court declines to reset deadlines for Wetzel's motion for class certification until all dispositive pre-certification matters have been resolved. *See Anderson Living Tr. v. XTO Energy, Inc.*, No. CV 11-959 JH/LFG, 2012 WL 13001855, at *1 (D.N.M. May 15, 2012) ("Efficiency and economy are strong reasons for a court to resolve challenges to personal or subject matter jurisdiction before ruling on certification.") (quoting Manual for Complex Litigation,

§ 21.133, at 253–54 (4th ed. 2004)). The Court will reconvene with the parties to discuss resetting discovery deadlines and a briefing schedule after the motion to dismiss has been decided.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel ESI Discovery (Doc. 77) and DTR's Motion for Protective Order (Doc. 78) are **DENIED** without prejudice and with leave to refile, as appropriate, after the Court has ruled on DTR's motion to dismiss;

**IT IS FURTHER ORDERED** that discovery in this matter is **STAYED** pending a ruling on DTR's motion to dismiss. (Doc. 7.)

**IT IS SO ORDERED.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE