# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**CYNTHIA WETZEL, on behalf of
Herself and all other New Mexico
consumers similarly situated,**

   **Plaintiffs,**

v.                                                    **No. 1:20-cv-1213 DHU**

**DIESTEL TURKEY RANCH,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Diestel Turkey Ranch's ("Defendant") Motion to Dismiss. Doc. 7. Defendant filed a Memorandum of Law in Support of its Motion to Dismiss, as well as a supporting Judicial Notice Packet. Docs. 8, 9. Plaintiff Cynthia Wetzel ("Plaintiff") filed a Response to the Motion to Dismiss, as well as a Notice of Supplemental Authorities. Docs. 16, 27. Defendant then filed its Reply in Support of its Motion to Dismiss. Doc. 24. Having reviewed the briefing, the relevant caselaw, and being otherwise fully informed, the Court GRANTS Defendant's Motion to Dismiss as to Count 2 of the complaint, Violation of New Mexico's False Advertising Law, and Count 3 of the complaint, Unjust Enrichment. The Court DENIES the Motion to Dismiss as to Count 1, Violations of the New Mexico Unfair Practices Act.

# I.

## BACKGROUND

Plaintiff alleges that she went to a Whole Foods Market in Santa Fe, New Mexico in November 2018, to purchase a turkey for her Thanksgiving dinner. Doc. 1 at ¶ 11. Though she did not have a particular turkey product in mind, she desired to purchase a turkey that "had been humanely raised, …that had been happy in its life, and…raised in a good environment. *Id.* at ¶ 13. Plaintiff purchased a turkey produced and marketed by Defendant. *Id.* at ¶ 19.  A photograph of the turkey, with its labeling, is shown in her complaint. *Id*. Plaintiff claims that she also considered less expensive turkeys she saw at Whole Foods but paid more for Defendant's product because of the representations about the turkey that she saw on the package and on the signage in the store. *Id.* at ¶¶ 21-22. Plaintiff does not specify the price she paid for her turkey or the price of other available turkeys.

Plaintiff does not allege that she sought or received any information about Defendant's business practices or its products prior to her trip to Whole Foods that day. She points to two sources of information that contributed to her purchase. *Id.* at ¶¶ 18, 19. First, she saw the labels on the turkey itself, including the product label and an additional sticker with a Global Animal Partnership rating. *Id.* at ¶ 19. Second, she claims she "relied on both Whole Foods and Diestel's representations regarding high animal welfare standards" that she saw in the Whole Foods Market. *Id.* at ¶ 18. Plaintiff subsequently came to believe that she was "misled and deceived" by statements of the Defendant regarding Defendant's business practices and the raising of its turkeys. *See id.* at ¶ 20. She subsequently brought this suit.

Plaintiff's complaint includes three claims. First, that Defendant made false or misleading statements or representations in violation of the New Mexico Unfair Trade Practices Act (NMUPA), NMSA 1978, § 57-12-1 et seq. Doc. 1 at 38. Second, Plaintiff claims that Defendant

falsely advertised its turkey products in violation of the New Mexico False Advertising Act (NMFAA), NMSA 1978, § 57-15-1 et seq. Doc. 1 at 40. Third, if she is unsuccessful in her claims at law, Plaintiff asks for equitable relief for Unjust Enrichment. *Id*. For each claim Plaintiff seeks relief for herself and to certify a class of similarly situated plaintiffs. *Id*. at 41.

In support of her claims, Plaintiff reproduced and described many statements and representations of Defendant that she claims are false or misleading. *Id.* ¶ 34. Plaintiff points to statements such as "slow grown turkeys from the Diestel Family Ranch," "plenty of room to roam," "fresh air," and "Family Secret #1 [is to] Walk the flock each day." *Id*. ¶ 32. Her complaint also includes disturbing images presented to show that Defendant's claims that its turkeys are "humanely raised" on a "family farm" and other claims are not accurate representations of Defendant's production practices. *Id*. ¶ 51.  A GAP rating of "2" was visible on Plaintiff's turkey. *Id*. ¶ 19. Plaintiff alleges that Defendant's turkeys are raised under conditions that do not merit a GAP "step 2" rating. *Id.* ¶ 68. Plaintiff does not claim that each of the allegedly false or misleading statements and representations affected her purchase. Rather, she claims that many of the statements and representations would deceive reasonable consumers. *Id*. 16.

## II.
## LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Defendant's Motion to Dismiss alleges that Plaintiff's complaint fails to meet the threshold requirements of Rule 12(b)(6). Rule 12(b)(6) requires a plaintiff to make sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a complaint, the court must determine whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). In testing the sufficiency of the complaint, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). The court must make all reasonable inferences in favor of the non-moving party. *Id*.

**B.  Heightened Pleading Standard Under Federal Rule of Civil Procedure 9(b)**

Defendant argues that Plaintiff's claims should be reviewed under Rule 9(b)'s heightened pleading standard. Doc. 8 at 8. Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiff points to a statement in an unreported case, *Woodard v. Fidelity Nat. Title Ins. Co.*, that the "Tenth Circuit does not impose [Rule 9(b)'s] heightened pleading statement to trade practices claims." No. CIV 06-1170 RB/WDS, 2007 WL 5173415, at *6 (D.N.M. Dec. 4, 2007). Unfortunately, the opinion does not provide any citation to support this statement. Defendant concedes that the case law is not consistent on the question of whether Rule 9(b) should apply to these claims. Doc. 8 at footnote 5; *see, e.g.*, *Two Old Hippies, LLC v. Catch the Bus LLC,* 784 F.Supp.2d 1200, 1214 (D.N.M. 2011) (applying Rule 9(b) pleading standard to case governed by NMUPA); *see contra Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, 879 F.Supp.2d 1228, 1272 (D.N.M 2012) ("[Rule]9(b)'s heightened pleading standard do[es] not apply [to a claim under the UPA]."). Here, the Court is inclined to follow those cases that apply Rule 9(b) to consumer fraud claims to guarantee that allegations of fraud are pled with sufficient specificity to save defendants and courts from factual "scavenger hunt[s]." *See Pnmr Servs. Co. v. Marketsphere Consulting, LLC*, No. 12-852 LFG/KBM, 2012 WL 12892781, at *3 (D.N.M. Dec. 20, 2012)

(granting dismissal where "[p]laintiff asks Defendant and the Court to attempt to piece together allegations from the Complaint with excerpts and quotations from later-attached voluminous documents. To do so requires jumping back and forth between the Complaint and allegations incorporated by reference, and to the 70 and then 138 pages of attached documents contained in separately filed appendices").

The Tenth Circuit has held that "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.,* 232 F.3d 902, *3 (10th Cir. 2000) (unpublished table decision). The heightened pleading standard of Rule 9(b) was recently applied in *Choq, LLC v. Holistic Healing, LLC*, No. 20-CV-00404, 2020 WL 8175553, *6 (D. Wyo. July 28, 2020). Plaintiff Choq brought a NMUPA claim against a competitor, Holistic Healing, alleging that the defendant made false statements about the plaintiff's herbal supplement products. *Id.* *1. The court dismissed the NMUPA claim, finding that while the plaintiff had sufficiently designated the false or misleading statements and the maker of the statements, it had not pled *when* those statements had been made as required by Rule 9(b). *Id.* at *6.

Rule 9(b) was also applied to address a NMUPA claim in *Two Old Hippies, LLC v. Catch the Bus, LLC*. 784 F. Supp. 2d 1200, 1214 (D.N.M. 2011). The plaintiff, Two Old Hippies, claimed that the defendant had violated the NMUPA by misrepresenting the condition of buses purchased by the plaintiff. The court found that the plaintiff had alleged fraud with sufficient specificity because the plaintiff had stated "who said the misrepresentations at issue, what those misrepresentations were, approximately when they were made, and in what context." *Id.* at 1214.

Each count brought by Plaintiff Wetzel is rooted in fraud. Count I alleged that Diestel "made false and misleading oral or written statements…or representations in connection with the

sale of goods." Doc. 1 at ¶ 109. Count II alleged that Defendant's advertising "was and is false and misleading in material respects."  Doc. 1 at ¶ 120. Count III alleged that "it would be unjust for Diestel to retain these benefits because Diestel obtained these benefits by misleading and deceiving Plaintiff…" Doc. 1 at ¶ 127. Rule 9(b) is properly applied to the claims now before the Court.

### III.
### DEFENDANT'S MOTION TO DISMISS

Defendant points to several alleged defects that it claims merit the dismissal of all of Plaintiff's claims. Defendant first contends that Plaintiff did not plead the facts with sufficient particularity to support her claims under Rule 9(b). Doc. 8 at 6, 8. Defendant concedes that Plaintiff reproduced and explained numerous public representations made by the Defendant in her complaint. *See id.* But, Defendant suggests that Plaintiff's claimed connections between those public representations and her injury, her purchase of a turkey based on false or misleading claims of the Defendant, are too vague to support a claim for relief. Doc. 8 at 6 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Defendant argues that Plaintiff failed to suggest that most of the public representations she reproduced affected her alleged injury, leaving the "when, where, and how" of her claim to mere speculation. Doc. 8 at 9 (discussing Fed. R. Civ. P. 9(b).  Defendant also urges that any of Plaintiff's claims based on the labeling on Defendant's products is preempted by federal law. Doc. 8 at 10.

Because Plaintiff's three causes of action present distinct factual requirements, Defendant's sufficiency arguments must be analyzed separately for each claim. Defendant also makes other arguments specific to each of Plaintiff's three claims. Defendant's additional arguments for dismissal will be addressed in the context of the claim they affect.

### A. Preemption Analysis

### 1.  Defendant's Preemption Argument

Defendant Diestel claims that the Poultry Products Inspection Act (PPIA), 21 U.S.C. Section 451 et seq., preempts any claims based on Defendant's product labeling that have been approved by a Food Safety and Inspection Service (FSIS). Doc. 8 at 10-11. If the labels are preempted, the sufficiency of Plaintiff's complaint will need to be assessed excluding any preempted labels, which could affect the disposition of each of her claims. *See id.* at 10-14. Plaintiff's complaint presented numerous non-label advertising and media statements of the Defendant. *E.g.*, Doc. 1 at ¶ 33. However, Plaintiff does not claim that she saw the advertisements or that that these statements affected her purchase. In explaining her purchase, Plaintiff primarily relied on statements she saw on Defendant's product labels. Doc. 1 at ¶ 22. Defendant contends that this evidence must be barred because the statements on its product label are preempted by federal law. Doc. 8 at 10.

Defendant claims that the specific label on the product purchased by the Plaintiff had been approved by FSIS and provides documents to that effect. Doc. 8 at 10; *See* Doc. 9 at 1. Defendant's Exhibit 2 included reproductions of the FSIS approval of Defendant's labeling, specifically noting some of the statements disputed by Plaintiff, such as "thoughtfully raised on sustainable family farm." Doc. 9 at 36. Plaintiff never disputed that the label has been approved by FSIS in her Response to the Motion to Dismiss. *See* Doc. 16. The FSIS approval document refers only to the primary label on the turkey, not to the GAP sticker also seen on Plaintiff's turkey. *See* Doc. 8 at 10-12. Defendant has not provided evidence that FSIS has approved the GAP label on the turkey purchased by Plaintiff.

### 2.  Plaintiff's Explanation of Her Purchase

Plaintiff claimed in her complaint that her purchase decision was based entirely on information she found at Whole Foods Market. Doc. 1 at ¶¶ 11-24. She did not claim that she reviewed any statements of Defendant before entering the store. Complaint, Doc. 1 at ¶¶ 11-24. In explaining her purchase, Plaintiff listed several representations attributed to Defendant and to Whole Foods Market but did not clarify which statements she attributed to Defendant and which she attributed to Whole Food Market. Complaint, Doc. 1 at ¶ 22.

Plaintiff conceded in her complaint that her purchase decision was based partially on statements made on Defendant's product label. Doc. 1 at ¶ 22.  She emphasized several claims on the label, including that the turkey was "thoughtfully raised" on a "small, family-run ranch." Doc. 1 at ¶ 22. These statements can be seen in the photograph of her turkey shown in the Complaint. Doc. 1 at ¶ 19 (image of turkey). Defendant concedes the statements on the label to be its own statements. *See* Doc. 8 at 10.

Plaintiff also attributed her purchase to statements not found on Defendant's product label. She explained that she "viewed the signs in the Whole Foods Meat Department" regarding animal welfare standard. Doc. 1 at ¶ 12.  The turkey purchased by Plaintiff bore a sticker reflecting a Global Animal Partnership rating of "2." *See* Doc. 1 at ¶ 19.  Plaintiff believed that her turkey was "humanely, happily raised" based on the sticker she saw on her turkey and the GAP rating system used by Whole Foods. Doc. 1 at ¶¶ 16-18. Plaintiff did not make specific allegations about Defendant's role in the product's GAP rating or make specific allegations as to Defendant's role in determining the ranking. Doc. 1 at ¶ 12. However, Plaintiff attributed the GAP rating sticker to both Defendant and Whole Foods Market. Doc. 1 at ¶¶ 18, 63, 68.

**3.  The GAP Rating Sticker**

An issue of fact exists regarding the origins of the GAP rating sticker seen on the turkey purchased by Plaintiff. Plaintiff alleged that the GAP rating represents statements by both the Defendant and Whole Foods. Defendant addressed the GAP rating in its reply. Doc. 24 at 2. Defendant wrote, "Tellingly absent from [Plantiff's allegations regarding the] rating system number applied to the turkey…is any factual statement that Plaintiff reviewed DTR signage…or anything else DTR published prior to going to Whole Foods Market or making her purchase." Doc. 24 at 2. Defendant suggested that the GAP ratings sticker is irrelevant to this suit because it was a statement of Whole Foods, which is not a party to this suit. *See* Doc. 8 at 5. However, Defendant never directly disclaimed any role in the rating process. When Plaintiff purchased her turkey she saw the GAP ratings sticker on top of Defendant's label. The ratings sticker did not include either the Whole Foods name or Defendant's, so the origins of the sticker and its meaning are a contested issue of fact in this case.

### 4. Preemption of Defendant's Product Label

Defendant claims that the label on the turkey purchased by the Plaintiff had been approved by FSIS and is therefore preempted by the PPIA. Doc. 8 at 10; *See* Doc. 9 at 1. Defendant included reproductions of the FSIS approval of Defendant's labeling explicitly approving some of the statements that Plaintiff claims are false or misleading, such as "thoughtfully raised on sustainable family farm." Doc. 9, Ex. 2 at 36. Plaintiff never disputed that the label has been approved by FSIS in her Response to the Motion to Dismiss. *See* Doc. 16.

The PPIA regulates many aspects of poultry production, including labeling. Congress' stated purpose was to require that poultry was "properly marked, labeled, and packaged." 21 U.S.C. § 451. The PPIA forbids a party to "sell" or "offer to sell" poultry products that are "misbranded at the time of sale" or "offer to sale." 21 U.S.C. § 458(a)(2). The Act states that a

poultry product is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 453(h). The PPIA forbids any state to impose any "[r]equirements within the scope of [the Act] with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter." 21 U.S.C. § 467(e). That provision specifically refers to additional "marking, labeling" and "packaging" requirements as impermissible. *Id.*

The PPIA gives authority to the USDA and FSIS to create and conduct a process for approving poultry product labels, including the turkey purchased by Plaintiff. 21 U.S.C. §§ 451, 457. The statute requires the FSIS to review and approve all special claims, including the "raising of animals." 9 C.F.R. § 412.1(a), (c), (e). The PPIA disallows state law claims that would impermissibly "impose additional requirements above and beyond those already imposed by the U.S. Dept. of Agriculture (USDA) and the Food Safety and Inspection Service (FSIS)." 21 U.S.C. § 467(e). The PPIA does allow the states "concurrent jurisdiction" to enforce the provisions of the Act or other non-conflicting state law claims. 21 U.S.C. § 467(e). The statute also states that it does not "preclude any State...from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter." 21 U.S.C. § 467(e).

In March of 2023, shortly after the briefing on this issue was filed, the Tenth Circuit issued a holding in a similar case, *Thornton v. Tyson Foods, Inc.* 28 F.4th 1016 (10th Cir.), *cert. denied*, 214 L. Ed. 2d 31, 143 S. Ct. 118 (2022). In *Thornton*, the plaintiff challenged a label on beef products that read "Product of the USA," alleging that the products were not produced in the United States as stated on the label. *Id.* at 1020. The label was challenged under the Federal

Meat Inspection Act (FMIA). *Id.* The 10th Circuit said in a footnote that the FMIA can be considered "substantially identical" to the PPIA for preemption purposes. *See Id.* at fn. 5.

The court held that the preemption requirements prescribed by Section 623 of the FMIA "sweep widely" and "prevent[] a state from imposing any additional or different—even if nonconflicting—requirements." Id. at 1024. The court stated categorically that Section 623 of the FMIA, parallel to the Section 467 of the PPIA, "plainly preempts plaintiffs' labeling claims." *Id.*

The Ninth Circuit made a parallel holding in a case directly involving the PPIA. In *Webb v. Trader Joe's Co.*, 999 F.3d 1196 (9th Cir. 2021), the Ninth Circuit held that the PPIA's preemption provision preempts state law claims based on poultry product labels approved by the FSIS. The plaintiff's claim was based on retain-water labels on poultry products. *Id.* at 1198. The court held that the changes the plaintiff sought would represent "additional label requirements" and would "necessarily be different than those required by the PPIA. *Id*.

Although preemption is an affirmative defense, a motion to dismiss may be granted based on preemption where no material facts are at issue. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Defendant claims that its label on the turkey purchased by turkey had been approved by the FSIS and Plaintiff has never disputed that fact. Although Plaintiff does not concede that all of Defendant's labels have been approved by FSIS, Plaintiff does not directly dispute the approval offered in Defendant's exhibits. *See* Doc. 16 at 13.

Based on the 10th Circuit holding in *Thornton*, 28 F.4th 1016, the Court finds that any allegations of fact based on representations on Defendant's product labels approved by FSIS are preempted and should not be considered as support for Plaintiff's claims for relief. Because Defendant has presented undisputed evidence that the primary label on the purchased turkey was

approved by FSIS, any assertions based on representations of that label will not be considered in assessing the sufficiency of Plaintiff's complaint.

### 5. Preemption of the GAP Rating System

The Court has already established that an issue of fact exists as to whether the GAP rating sticker on the turkey derives from representations of Defendant or Whole Foods. Defendant does not argue that the GAP sticker had been approved by FSIS and therefore is preempted by federal law. Because Defendant does not press the issue that the GAP rating label was preempted the Court will consider Plaintiff's allegations of fact based on the GAP sticker seen on the turkey she purchased. In the remaining analysis the Court will credit the Plaintiff's claims of fact regarding the GAP sticker but will not consider the Defendant's product label because state law claims based on that label have been preempted by federal law.

## B. Plaintiff's Cause of Action under the NMUPA

### 1. The NMUPA

The NMUPA makes unlawful any unfair or deceptive trade practices and any unconscionable trade practices. NMSA 1978, § 57-12-3. To prove a claim under the NMUPA for an unfair or deceptive trade practice, "a successful plaintiff must prove: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person. *Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 14, 356 P.3d 531, 537 (citing NMSA 1978 § 57-12-1 et. seq.). *See Diversey Corp. v. Chem-Source Corp.,* 1998-NMCA-112, ¶ 17, 125 N.M. 748, 965 P.2d 332 ("The gravamen of an unfair trade practice is a

misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services.").

The NMUPA also provides a cause of action for unconscionable trade practices. NMSA 1978, § 57-12-3 (1971). To prove an unconscionable trade practice under the NMUPA, a plaintiff must allege either procedural or substantive unconscionability. *Id.*; *see Cordova v. World Fin. Corp. of NM,* 2009-NMSC-021, ¶ 24, 208 P.3d 901, 908. Procedural unconscionability is found by proving that the practice "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree. § 57-12-2(E). Substantive unconscionability is found where a practice "results in a gross disparity between the value received by a person and the price paid. *Id.*

The NMUPA grants several categories of private remedies in Section 57-12-10. Sub-Section A provides for injunctive relief where a plaintiff is "likely to be damaged" by the contested business practices of a defendant. This cause of action does not require proof of damage to the plaintiff or any person. NMSA 1978, § 57-12-10(A) (2005) ("Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required.").

Section 57-12-10(B) outlines a private right of action for damages. Where a plaintiff has suffered "loss of money or property" due to the conduct of the Defendant, the plaintiff may seek her actual damages or $100, whichever is greater. NMSA 1978, § 57-12-10(B) (2005). Where the trier of fact finds that a defendant "has willfully engaged in the trade practice" the court may grant treble damages. In a class action, the named plaintiff is entitled to damages under Section 57-12-10(B) but other class members may receive only their actual damages. NMSA 1978, § 57-

12-10(E) (2005). The statute also allows the court to grant fees and costs to the prevailing party. NMSA 1978, § 57-12-10(C) (2005).

The NMUPA does not require that a plaintiff prove that she was injured by the practices of the defendant. The statute states that "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." NMSA 1978, § 57-12-3. The plain meaning of the provision is that a claim can be based on statements that "tend to or [do] deceive or mislead any person" is that the Legislature intended to allow plaintiffs to being claims regardless of whether the plaintiff herself had been injured by the defendant's statements or practices. *See* NMSA 1978, § 57-12-2(D).

This interpretation is supported by New Mexico case law. In *Lohman v. Daimler-Chrysler Corp.*, the New Mexico Court of Appeals considered a case in which the defendant had made false or deceiving claims about defective seatbelts. 2007-NMCA-100, 142 N.M. 437. The plaintiff brought suit seeking to certify a class but did not claim to have made a purchase or to have sustained any injury related to the claim. *Id.* The court allowed the class to be certified, rejecting the defendants' position that "'connection with the sale of goods' requirement can only be satisfied upon a showing that the defendant made a misrepresentation when selling a product to the plaintiff." *Lohman*, 2007-NMCA-100, ¶ 28. Analyzing the statutory text, legislative history, and caselaw of the NMUPA, the court held that "a commercial transaction between a claimant and defendant need not be alleged in order to sustain a UPA claim." *Id.* at ¶ 33. The court further held that a suit should not be dismissed because the plaintiff has not suffered damages, reasoning that "even if Plaintiff fails ultimately to prove that he and his putative class members have suffered economic loss, they may nevertheless seek the statutory $100 minimum." ¶ 47. In *Maese v. Garrett,* the New Mexico Court of Appeals held that misrepresentations made

14

after the sale of goods and services could support a claim under the UPA, rejecting previous decisions suggesting that the alleged misrepresentation had to be made in the course of selling a product or services to the plaintiff. 2014-NMCA-072, ¶ 18.

The New Mexico Supreme Court has interpreted Section 57–12–10(B) as allowing an award of the statutory $100 minimum, even in the absence of proof of economic or property loss. *Lohman*, 2007-NMCA-100, ¶ 44; *See Page & Wirtz Const. Co. v. Solomon*, 1990-NMSC-063, ¶¶ 22-23, 110 N.M. 206, 211–12, 794 P.2d 349, 354–55, *abrogated on other grounds by Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶¶ 22-23, 453 P.3d 434 (stating that the claimant was entitled to recover the statutory one hundred dollars, despite his failure to produce evidence showing that the defendant's deceptive practice caused loss of money or property); *Jones v. General Motors Corp*, 1998–NMCA–020, ¶ 23, 124 N.M. 606, 953 P.2d 1104.

The New Mexico Supreme Court recently revisited the question of who may bring a cause of action under the NMUPA in *Gandydancer*. 2019-NMSC-021, ¶ 1. In that case, the issue was whether a plaintiff could bring suit against a competitor for lost profits where the competitor misrepresented itself in the marketplace. *Id* ¶ 4. In holding that the NMUPA does not allow for competitor suits, the New Mexico Supreme Court reaffirmed its prior holdings regarding consumer suits under the NMUPA. *Id.* ¶¶ 30-36 (collecting cases). The court specifically limited the holding of *Page and Wirtz Const. Co.* to the context of consumer suits but did not otherwise question its holding. *Gandydancer*, 2019-NMSC-021, ¶ 36.

### 2.  Plaintiff's Cause of Action

Plaintiff alleged that Defendant violated the NMUPA through unfair or deceptive trade practices by "knowingly ma[king] false and misleading oral or written statements…in

connection with the sale of goods in the regular course of [Defendant's] trade…[that] may tend to or do deceive or mislead any person." Doc. 1 at ¶¶ 109, 112 (citing § 57-12-2(D)). Plaintiff also alleged that Defendant engaged in unconscionable trade practices. Doc. 1 at ¶ 109 (citing § 57-12-2(E)).

Plaintiff has stated facts sufficient to state a claim of unfair or deceptive trade practices under the NMUPA. The NMUPA first requires Plaintiff to plead facts showing that Defendant has made statements or representations "of any kind that w[ere] either false or misleading." *Dollens*, 2015-NMCA-096, ¶ 14, 356 P.3d at 537 (citing NMSA 1978 § 57-12-1 et. seq.). Plaintiff's complaint included numerous representations and statements of Defendant that Plaintiff claims are false or misleading. These include statements that Defendant's turkeys are "slow-grown," that they are grown on a "sustainable ranch," that they are "locally raised in Sonora, CA," and that they are "range grown, never caged." Doc. 1 ¶¶ 34, 35. Plaintiff alleged that these claims are false or misleading. *Id*. ¶ 84. She claimed that less than 1% of Defendant's turkeys are raised at its ranch in Sonora, CA. *Id*. Plaintiff has named the alleged false statements with clarity and specificity, often reproducing Defendant's own published materials.

The statements and representations alleged to be false or misleading were "knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business." *Dollens*, 2015-NMCA-096, ¶ 14, 356 P.3d at 537. In her complaint, Plaintiff provides numerous examples of Defendant's labels, advertisements, and other media materials. Even excluding the labels that Defendant alleged to be preempted, Plaintiff has provided many manifestations of Defendant's advertising statements regarding its production methods. *See* Complaint, Doc. 1 ¶¶ 34, 35.

Plaintiff also sufficiently alleges that the challenged representations of the defendant were "of the type that may, tends to, or does deceive or mislead any person." *Dollens*, 2015-NMCA-096, ¶ 14, 356 P.3d at 537. If Defendant's representations were found to be false or misleading they surely would tend to deceive any person. Ordinary consumers may be deceived by claims such as "slow grown," "thoughtfully raised" or "locally raised in Sonora, Ca" because consumers would lack any means to independently verify those claims.

These statements cannot be considered mere puffery. The Tenth Circuit has defined puffery as "those vague generalities that no reasonable person would rely on as assertions of particular facts." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009). The statements alleged by the Plaintiff are not "vague generalities," and most are statements of fact, not opinion. Whether a turkey is "thoughtfully raised" may be considered a vague generality, but "locally raised in Sonora, CA" is not. While some of Defendant's statements may be shown at trial to be puffery, the statements are sufficiently fact-bound to meet the pleading requirements of Rule 12.

Even if Plaintiff's claims as to her own turkey purchase prove to be preempted by federal law, Plaintiff still states a viable cause of action under New Mexico law. New Mexico law would allow Plaintiff to claim $100 statutory minimum, as well as her attorney's fees and costs for the alleged NMUPA violation. *Lohman*, 2007-NMCA-100, ¶ 44. *See also Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 708 F. Supp. 2d 1209, 1256 (D.N.M. 2010) (interpreting New Mexico state law held that "even where a jury concludes that the UPA violation did not cause damages to plaintiff, that the plaintiff is nevertheless entitled to $100.00) (citation omitted). The other class members could claim only their actual damages, along with fees and costs. NMSA 1978, § 57-12-10(E) (2005).

Plaintiff has also alleged facts sufficient to support a claim of an unconscionable business practice. Under NMSA 1978, Section 57-12-2(E), an unconscionable trade practice means an act or practice in connection with the sale…or in connection with the offering for sale…of any goods or services…that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid. Plaintiff has alleged that she and other potential class members have relied on Defendant's representations regarding its production methods. Plaintiff has plausibly alleged that she and other plaintiffs "lack knowledge, ability, experience, or capacity" to evaluate Defendant's production methods apart from its own representations. Plaintiff alleged a "gross price disparity" between the turkey she purchased and the true value of the turkey. Doc. 1 at ¶ 100(b). Although Plaintiff is not able to establish the extent of the price disparity created by Defendant's alleged false advertising, the Plaintiff has sufficiently alleged that one exists.

### 3. Safe Harbor Provision

The NMUPA includes a provision that the parties call a "safe harbor provision." NMSA 1978, § 57-12-7 (1999). That provision states that "[n]othing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act." If Plaintiff's claims were based entirely on Defendant's preempted product labeling, as was true in *Thornton*, the safe harbor provision may apply to her claim. *Thornton v. Tyson Foods*, Inc.¸ 482 F.Supp.3d 1147, 1154 (D.N.M. 2020), *aff'd*, 28 F.4th 1016 (10th Cir.

2022). But here, where Plaintiff presents information other than Defendant's product label, the safe harbor provision does not operate.

### 4.   Statute of Limitations

Defendant alleges that some of the statements and representations claimed by Plaintiff to be false or misleading were made outside of the applicable statutes of limitations. Plaintiff's claims are subject to a four-year statute of limitations. *See* NMSA 1978, Section 37-1-4 (1953). Defendant rightly points out that Plaintiff does not attach a date to each of the statements and representations that she claims to be false or misleading. Doc. 8 at 21. Defendant is also correct that Plaintiff will not be able to make claims based on a version of its website that did not exist after 2015, so long as Defendant has not repeated the disputed statements since that year. *See id.* However, plaintiff's claims are based, at the very least, on the statements and representations that motivated her purchase at Whole Foods in 2019. Those statements were clearly made within the time period mandated by the statute, and that alone is sufficient to meet the threshold requirements of Rule 12(b)(6). If plaintiff intends to base her claims on other statements of the Defendant, she will need to prove that those statements were made within the statutory period.

### 5.   Plaintiff's Request for Injunctive Relief

Defendant asks that Plaintiff's claims to injunctive relief be denied because she cannot be deceived again by the alleged misrepresentations of the Defendant. Doc. 8 at 20. The Court agrees with Defendant that Plaintiff has not pled that she could be deceived again by statements she already believes to be false. However, injunctive relief is only one of several forms of relief Plaintiff requests on behalf of herself and potential class members. *See* Doc. 1 at ¶ 116. Because Plaintiff's claim is based on alleged violations of the NMUPA, it is sufficiently pled to survive

Defendant's Motion to Dismiss, the Court is not inclined to dismiss any form of relief at this stage.

### C. Plaintiff's Claims under the NMFAA

Plaintiff's second claim for relief alleges a violation of New Mexico's False Advertising Act. Doc. 1 at 40. The NMFAA makes unlawful any false or misleading advertising in the State of New Mexico and creates rights of action both for the Attorney General and private citizens. NMSA 1978 Sections 57-15-1, 57-15-5 (1965). Defendant argues that plaintiff's claim must be dismissed because she failed to explain the violation with particularity. Defendant also contends that Plaintiff lacks Article III standing because she did not claim to have been injured by the advertising. Doc. 8 at 8. Plaintiff did not claim to have seen any of Defendant's advertising before making her purchase. *Id.*

The NMFAA specifically "empowers private individuals to bring rights of action in the name of the state and for 'all others similarly situated.'" *See Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 10, 144 N.M. 464, 468, 188 P.3d 1215, 1219 (quoting NMSA 1978 Section 57-15-5). Although New Mexico law allows a plaintiff to bring a cause of action on behalf of others, a plaintiff in federal court must also meet the minimum requirements for federal standing under Article III. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975). In *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.* the United States Supreme Court found standing in a case in which a non-profit organization brought suit against a corporation under the Clean Water Act. The defendant had polluted a river used recreationally by the plaintiff's members. 528 U.S. 167, 181, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000). The defendant claimed that the suit must be dismissed because the plaintiff had failed to show that its members had suffered any concrete injury sufficient to meet the threshold standings requirements of Article III. *Id.* at 181. The

district court had found that plaintiff lacked standing because although the defendant had violated the Clean Water Act, the plaintiffs had not demonstrated harm to the environment sufficient to harm the members of the plaintiff's organization. *Id.* The Supreme Court reversed, explaining that "[t]he relevant showing for purposes of Article III standing, however, is not injury to the environment but injury to the plaintiff. *Id.* The court listed numerous injuries suffered by the plaintiff's members that could be redressed, at least indirectly, by the civil penalty awarded in the case. *Id.* For example, one defendant "would like to fish, camp, swim, and picnic in and near the river…as he did when he was a teenager, but would not do so because he was concerned that the water was polluted by Laidlaw's discharges. *Id.* at 181–82.

On the other hand, in *Buscema v. Wal-Mart Stores LLP* the court did not find standing in a class action suit for injunctive relief brought under state consumer protection laws. 485 F. Supp. 3d 1319, 1331 (D.N.M. 2020). Although the plaintiff alleged that the defendant's violations of the state statutes were ongoing, the court could not find standing because the plaintiff herself could not be deceived by the Defendant's conduct of which she was already aware. The court reasoned that the plaintiff was not at risk of being harmed again by Defendants because she "is now aware" of their "false and deceptive conduct." *Id.* The plaintiff, who herself lacked standing, could not be permitted to bring the suit on behalf of unnamed class members who might have standing. *Id. See Warth, 422 U.S. at 502, 95 S.Ct. 2197 ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").* Even where state law would allow a plaintiff to act as a "private attorney general, in federal court the plaintiff must demonstrate some injury to herself to satisfy the standing

requirements. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 661, 123 S. Ct. 2554, 2557, 156 L. Ed. 2d 580 (2003) (Stevens, J., concurring).

Unlike the NMUPA which creates a $100 minimum award for any successful plaintiff, the NMFAA does not create a mandatory minimum award of damages for a successful claim. The NMFAA does create a minimum civil penalty for each infraction, but that penalty is awarded to the State, and the Act does not award a share to the plaintiff acting as a private attorney general. *See* NMSA 1978, § 57-15-4. An injured plaintiff would have standing because she would be awarded her own damages, but a plaintiff with no injury would only be awarded fees and costs. *See* Section 57-15-5. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 1255, 108 L. Ed. 2d 400 (1990) ([Plaintiff's] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.); *Diamond v. Charles,* 476 U.S. 54, 70–71, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1986).

Because Plaintiff Wetzel did not allege in her complaint that she saw any of Diestel's advertising before purchasing her turkey, she has no injury under the NMFAA sufficient to support standing under Article III. Though New Mexico law may allow her to bring a suit as a private attorney general to enforce the NMFAA, she may not do so in federal court. In *Friends of the Earth,* the court credited the plaintiffs with tangential injuries caused by the actions of the defendant. 528 U.S. at 181-182. Plaintiff Wetzel is unable to claim even an attenuated injury from advertising she never claims to have seen.

Plaintiff also made a claim for injunctive relief in her complaint. Doc. 1 at 41. Defendant argues that Plaintiff cannot seek injunctive relief because she cannot be deceived again by claims she knows to be false or deceptive. Doc. 8 at 20. In the Complaint, Plaintiff claims that she

"would be interested in buying another [of Defendant's products] that is truthfully advertised with animal welfare claims consistent with not being from a factory farm." Doc. 1 at ¶ 22.

Claims for prospective relief require a continuing injury or risk of injury. *See PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). Though New Mexico law may allow Plaintiff to bring her claim for injunctive relief on behalf of all reasonable consumers, she herself must have a continuing risk of injury to meet the threshold requirements for Article III standing in federal court. *See Buscema,* 485 F.Supp.3d at 1329. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *see PeTA,* 298 F.3d at 1202.

In *Buscema,* the court analyzed whether a plaintiff who had already suffered an alleged monetary injury still faced a risk of further injury from the same false or deceptive statements. *See Buscema,* 485 F.Supp.3d at 1331. In that case the plaintiff brought a class action under the NMUPA and NMFAA alleging that a coffeemaker she purchased at Wal-Mart had been advertised and labeled as a Black & Decker product but was, in fact, the product of a different company. *Id.* at 1323. The court allowed the plaintiff's suit for money damages to move forward, but held that she was "not at risk for being harmed again because she is now aware of [the defendants'] false and deceptive conduct." *Id.* at 1331 (internal quotations omitted).

Similarly, Plaintiff's present claim that she could be deceived in the future is simply not plausible based on the allegations found in her complaint and other pleadings. Plaintiff herself will not purchase another product of Defendant at an inflated price based on the same statements and representations of Defendant. Being deceived by false or misleading statements is the

gravamen of a complaint under the NMFAA. Because she faces no threat of harm, Plaintiff's claim for injunctive relief must be dismissed for failing to present a case or controversy as required by Article III.

### D.  Plaintiff's Claims for Unjust Enrichment

Defendant argues that Plaintiff's claim for unjust enrichment must be dismissed because she has a sufficient remedy at law. Doc. 8 at 18. Defendant also urges that Plaintiff does not adequately explain why she lacks a remedy at law. *Id.* at 19. Plaintiff responds that she does not yet know whether her legal claims will succeed, and she has the right to plead equitable claims in the alternative to legal claims. Doc. 16 at 20.

Unjust enrichment is an action in equity, the remedy for which is restitution. *See Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, 129 N.M. 200, 203, 3 P.3d 695, 698. A plaintiff will not succeed with a claim in equity if she has an adequate remedy at law. *See Sims v. Sims,* 1996–NMSC–078, ¶ 29, 122 N.M. 618, 930 P.2d 153.  Fed. R. Civ. P. 8(d)(3) does allow a plaintiff to "state as many separate claims or defenses as it has, regardless of consistency."

Plaintiff correctly argues that her unjust enrichment claim can be plead in the alternative to her statutory claims under the NMUPA and NMFAA. However, whether equity will act does not depend on whether a plaintiff succeeds in the actions she chooses to bring. Equity acts where a plaintiff has no remedy at law at all. *See Sims v. Sims,* 1996–NMSC–078, ¶ 29.

In addition to Plaintiff's present claim under the NMUPA, her most obvious remedy at law would be a suit against the party from whom she purchased her turkey, Whole Foods Market. New Mexico courts "disfavor an unjust enrichment claim against a third party when that claim involves the same subject as a contract, unless there is something preventing the plaintiffs from pursuing the contract claims." *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244,

1276 (D.N.M. 2014). Plaintiff has not explained why she is unable to bring suit against the party with whom she is in privity of contract, Whole Foods Market. In this case, Plaintiff has not explained why she has chosen to skip over Whole Food Market and move directly to a suit in equity against Diestel, a stranger to the contract.

*Ontiveros Insulation Co. v. Sanchez* presents an instructive situation. 2000-NMCA-051, ¶¶ 2-6. In *Ontiveros* a sub-contractor sought to bring an unjust enrichment action against a homeowner, bypassing the general contractor with whom both parties were in privity of contract. *Id.* at ¶ 6. The court expressed a general reluctance to allow a sub-contractor to bring a suit against the third-party homeowner. *Id.* at ¶ 12. However, in *Ontiveros* the court allowed the suit to proceed because the sub-contractor could not recover from the general contractor, which had filed for bankruptcy. *Id.* at ¶ 3.

The *Ontiveros* case can be contrasted with a case more similar to the instant case, *Thornton v. Tyson Foods, Inc.*, 482 F.Supp.3d 1147 (2020). There the plaintiff brought an action for unjust enrichment against Tyson Foods based on an allegation of false labeling. *Id.* at 1161. The plaintiff did not name as defendants the retailers from whom she purchased the food products at issue. *Id.* at 1161. The court dismissed the unjust enrichment claim, reasoning that New Mexico law required the plaintiff to first bring a suit against the retailers "unless there is something preventing the plaintiff[] from pursuing the contract claims." *Id.* (citing *Abraham v. WPX Energy Prod., LLC.*, 20 F.Supp.3d 1244, 1276 (D.N.M. 2014).

Plaintiff's claim for unjust enrichment must then be dismissed without prejudice and Plaintiff is granted leave to amend to explain why she has no remedy at law under her contract.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss as to Count 2; violation of New Mexico False Advertising law, and Count 3; Unjust Enrichment. The Court **DENIES** Defendant's Motion to Dismiss as to Count 1; violations of the New Mexico Unfair Practices Act.

**IT IS SO ORDERED.**

DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE